62,970-06

APPLICATION FOR WRIT OF

MANDAMUS FROM <u>GREGG</u>

COUNTY, 188th District Court

MICHAEL DEAN PERRY

TRIAL COURT WRIT NO. 42,139-A

CLERK'S SUMMARY SHEET

RECEIVED IN
COURT OF CRIMINAL APPEALS
OCT 12 2015

Abel Acosta, Clerk

APPLICANT'S NAME : MICHAEL DEAN PERRY

OFFENSE : CT. 1-ASSAULT FAMILY VIOLENCE WITH PRIOR CONVICTION
CT. II-AGGRAVATED ASSAULT WITH A DEADLY WEAPON

CAUSE NO. : 42139-A

PLEAD : ;    NOT GUILTY TO JURY

This document contains some
pages that are of poor quality
at the time of imaging.

SENTENCE :    (60) SIXTY YEARS CONFINEMENT  TDCJ

TRIAL DATE : February 28, 2013

JUDGE'S NAME: David Brabham

APPEAL NO : 06-13-00051-CR

CITATION TO OPINION : MEMORANDUM OPINION

HEARING HELD : NONE

FINDINGS & CONCLUSIONS FILED : NONE

RECOMMENDATION : NONE

JUDGE'S NAME : DAVID BRABHAM

# INDEX

1    COVER PAGE-------------------------------------------------------------------    1

2    INDEX------------------------------------------------------------------------------    2

3    APPLICATION FOR WRIT OF MANDAMUS----------------------------------    3    27
       FILE DATE JULY 22, 2015

4    SUPPLEMENT WRIT OF MANDAMUS--------------------------------------    28    39
       FILE DATE JULY 24, 2015

5    MOTION FOR CHANGE OF VENUE-------------------------------------------    40    56
       FILE DATE AUGUST 4, 2015

6    LETTER----------------------------------------------------------------------------    57
       FILE DATE SEPTEMBER 10, 2015

7    ORDER-----------------------------------------------------------------------------    58 59
       FILE DATE SEPTEMBER 10, 2015

8    DISTRICT CLERK'S RESPONSE TO WRIT MANDAMUS---------------------    60 176
       FILE DATE  OCTOBER 7, 2015

9    INDICTMENT---------------------------------------------------------------------    177 178

10    JUDGMENT OF CONVICTION BY JURY------------------------------------------    179 182
       FILE DATE FEBRUARY 28, 2013

11    JUDGMENT FROM COURT OF APPEALS-----------------------------------    183
       DATE AUGUST 15, 2014

12    OPINION--------------------------------------------------------------------------    184 222
       FILE DATE AUGUST 15, 2014

13    MANDATE------------------------------------------------------------------------    223
       FILE DATE FEBRUARY 16, 2015

14    CERTIFICATE SHEET------------------------------------------------------------    224

Cause No. 42,139-A-W-1
Court I and Court II paragraph B

FILED
GREGG COUNTY, TEXAS
JUL 22 2015
3:[illegible] O'CLOCK M
BARBARA DUNCAN, DISTRICT CLERK
BY _____ DEPUTY

Michael Dan Perry, TDCJ No. 1838827        In The 188th Judicial

Vs.                                          District Court of

Barbara Duncan                               Gregg County Texas

Gregg County District Clerk, et al;

A. __Plaintiffs Original Application for Writ of Mandamus__

To The Honorable Judge of said Court:

Comes now, Michael Dan Perry, Relator, pro se, in the above styled and numbered cause of action and files this original Application for Writ of Mandamus, pursuant to Article 11.07 Section 3(c) of the Texas Code of Criminal Procedures, and would show the court the following;

B. Relator

101. Michael Dan Perry, TDCJ No. 1838827 is an offender incarcerated in the Texas Department of Criminal Justice and is appearing pro se, who can be located at the Ellis Unit, 1697 FM 980, Huntsville, Tx 77343, 24 hours a day, 7 days per week, for the next 60 years.

102. Relator has exhausted his remedies and has no other adequate remedy at law.

103. The act sought to be compelled is ministerial, not discretionary in nature. TCCP Art. 11.07 Section 3(c) requires Respondent to immediately transmit to the Court of Criminal Appeals a copy of the application for Writ of habeas corpus, any answers filed, and a certificate reciting the date upon

1.

3

Which That Finding was made, if The convicting Court decides That There are no issues to be resolved. No copy of The application for writ of habeas corpus, any answers Filed, and a Certificate reciting the date upon which That Finding was made have been Transmitted to the Court of Criminal Appeals. Had such documents been Transmitted to the Court of Criminal Appeals by Respondent as required by statute, Relator would have received notice from the Court of Criminal Appeals.

## II.

## C. Respondent

2.01 Respondent, Barbara Duncan, in her capacity as District Clerk of Gregg County, Texas has a ministerial duty to receive and file all papers in a criminal proceeding, and perform all other duties imposed on the clerk by law pursuant to TCCP Art. 2.21, and is responsible under TCCP 11.07 Sec. 3(c) to immediately Transmit to the Court of Criminal Appeals a copy of The application for writ of habeas corpus, any answers filed, and a Certificate reciting The date upon which That Finding was made if The convicting court decides That There are no issues to be resolved Barbara Duncan, District Clerk, Gregg County may be served at her place of business at Gregg County Courthouse, 101 E. Methvin St., 334 Courthouse, Longview, Tx 75606 (903)237-2663, Fax 236-8474 E-mail: barbara.duncan@co.gregg.tx.us

## III.

(Habeas Corpus ad Subjiciendum)

D. Violation of Article 11.07 of the Texas Code of Criminal Procedures

3.01 The Respondent violated Article 11.07 Section 3(c) of the Texas Code of Criminal Procedure by failing to provide a copy of the application for a Writ of habeas corpus, any answers filed, and a certificate reciting the date upon which that finding was made to the Court of Criminal Appeals within the time prescribed by law and within a reasonable time from the date on which the documents were presented and requested to be transmitted.

3.02 Requests for the transmittal of the application for writ of habeas corpus, any answers filed, and a certificate reciting the date upon which that finding was made were made by Relator to Barbara Duncan, District Clerk, Gregg County, by certified mail, return receipt requested letters dated to wit: June 1, 2015 and June 12, 2015. pursuant to Art. 11.07 Sec. 3(c) of the T.C.C.P.

True and correct copies of the above letters are attached hereto as Exhibits "A" Through "C" and are incorporated by reference herein for all purposes.

3.03 To date, Relator has received no response from Respondent regarding Relators request for transmittal of a copy of the application for writ of habeas corpus, any answers filed, and a certificate reciting the date upon which that finding was made to the Court of Criminal Appeals.

3.04 As is clear from Relators letters, Relator has repeatedly put the Respondent on notice that Relator seeks the transmittal of a copy of the application for writ of habeas corpus, any answers filed, and a certificate reciting the date upon which that finding was made to the Court of Criminal Appeals and that such records are required by the Court of Criminal Appeals to act on Relators writ of habeas corpus. Relator has gone well beyond any requirement or obligations imposed upon him

(See also letter to Judge Brabham Exhibit C )(Mandamus filed 9/27/2013 6th Court of Appeals)

3.

5

by the Texas Code of Criminal Procedures. In Contrast to Relators efforts, Respondent has wholly failed to comply with the Texas Code of Criminal Procedure, Art. 11.07 Sections 3(a)(b)(c), is acting in bad faith, and has also failed to afford Relator the professional and common courtesy of timely filing his application in the Court of jurisdiction, the Court of Conviction, returnable to the Court of Criminal Appeals of Texas at Austin, Tx. 3.05 Art. 11.07 Sec. 3(a) Clearly states that after final conviction in any felony case, the writ must be made returnable to the Court of Criminal Appeals of Texas at Austin, Texas.

Furthermore, Art. 11.07 Sec. 3(b) Clearly states that An application for Writ of habeas Corpus filed after conviction in a felony case, other than a case in which the death penalty is imposed, must be filed with the Clerk of the Court in which the conviction being challenged was obtained (Emphasis added) and the Clerk shall assign the application to that Court. When the application is received by that Court, a writ of habeas Corpus, returnable to the Court of Criminal Appeals, shall issue by operation of law. The clerk of that Court shall make appropriate notation thereof, assign to the case a file number (ancillary to that of the conviction being challenged), and forward a copy of the application by certified mail, return receipt requested, by secure electronic mail, or by personal service to the attorney representing the state in that Court, who shall answer the application not later than the 15th day after the date the copy of the application is received. Matters alleged in the application not admitted by the state are deemed denied.

Relator avers that the Court Clerk has failed to follow the rules as stated aforesaid Whereas, the Clerk assigned (3) Three different cause numbers towit: Cause No. 42,139 A-W-1 was assigned to both of

4.

the writ applications, Count I, and Count II paragraph 13. Then Cause Number 42,139-B-H-1 was assigned to the States response of which was filed in the wrong court, the 124th District Court. Then Cause Number 42,139-A-H-1 was assigned to the Courts order denying the writ, but in the 188th District Court of Gregg County, Texas. Even the Judges signature is questionable!

1. First of All, Relator avers that he filed the writ of habeas Corpus on the 1st day of June, 2015 by placing the writ application in the Prison Mailing System, envoking the mailbox rule whereas, the writ, and/or motion is considered filed on that date! The law is well established! However, as according to the stamp filed mark of the Clerk, the application was not filed until June 15, 2015. The State was required to file a response within 15 days! However, the states dubious motion that was filed in the 124th District Court, (wrong court) wasn't filed until June 23, 2015. Wholly exceeding the required time limit to respond as according to statute! Even considering the fact that the state never really responded to the grounds in the application; the merits thereof, only making a frivolous excuse why they failed to timely respond whereas, the State blames Relator for its failure to respond within the 15 day time limit, erroneously citing rule Number 6. on the application form stating, interalia, that Michael Dean Perry's application for writ of habeas Corpus be returned for non compliance with the "form" (Emphasis added on "form) Instructions, item 6: Each ground shall begin on a new page, and the recitation of facts supporting each ground shall be no longer than the two pages provided for the claim in the form.

Lets examine this statement first, the State only uses an excerpt from item 6. as listed among the 10 items on the cover sheet of the Application!

5.

7

Whereas, item 6. actually begins to wit: You must include all grounds for relief on the application form as provided by the instructions under item "17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item "17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

2. The State completely leaves out item 17, making it appear that Relator is only permitted to raise (4) four grounds because thats all theres room for on the application form. But see item(17) page 5 of the 11.07 Application Form. To wit: (17) Beginning on page 6, state "Concisely" every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. If your grounds and brief summary of the facts have not been presented on the form application, the court will not consider your grounds. If you have more than four grounds, use pages 14 and 15 of the form, "which you may copy as many times as needed to give you a seperate page for each ground, with each ground numbered in sequence". The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

3. Relator avers that he followed the rules to the letter. The State goes on to state that Perry has written one hundred and two pages on each of two counts. Relator avers that thats not true either. Whereas, ground No. 43 and 49 only contain one page of facts supporting the ground instead of the two pages that are permitted by the rules, item(17). The two applications are essentially the same, with very few minor differences. Relator avers that theres a simple explanation for this that the State has overlooked because the State is using subterfuges in misdirection in order to cover up all of the misconduct and malicious prosecution. Whereas,

Not only did Trial Counsel, Tim Cone request that a lessor-included offense instruction be included in the Courts charge instruction to the jury due to the fact that the alleged assault, and or assaults were committed against the same victim and at the very same time, simple assault with an aggravating factor, Raising a Double Jeopardy issue. In fact, Relators Appellate Counsel, Len Dunn raised this very issue in his Motion for New Trial and again on Direct Appeal in Appellates Brief. Relator also raised these issues in his Writ of habeas corpus on both Counts. Of course, the facts are going to be the same, with very few, minor differences. The state should not act so surprised, they knew that from the very beginning of this case. The state goes on to say that Relator has included 49 grounds for relief on each count and each of the 49 grounds has multiple issues, many of which are repeated in other grounds. In the fifteen days given the state to respond, it would be impossible to address each of the "multifarious" grounds in an organized manner.

Websters Dictionary: Multifarious; having or occurring in great variety. Relator asserts that the state and the Police should have considered this fact long before they committed all of their wrongful and un constitutional Acts. The state goes on to state that Perry's "oops" excuse, Mr. Perry's applications includes one-hundred two pages: each ground contains multiple issues. Relator avers that that statement is not true either. Whereas, its obvious if one actually reads the entire two applications, that as according to the states own motion, several of the grounds only contain one issue. For example: Violation of Protective Order #3 (Ground) 32, No Jurisdiction (Ground) 29, Refusal to grant this Trial (Ground) 47, Payment of Court Costs/Fines (Ground) 48, Juxtaposition (Ground 49) of which is only one page long. The state only erroneously uses for an Example, Ground for relief Number 1 alleges, illegal search and seizure/police misconduct/prosecutorial misconduct, failure to

admonish applicant and victim of rights, violating instruction 6. The state claims that they have found thirty-plus separate issues, and many are discussed multiple times in different grounds, further violating instruction 6, because illegal search and seizure is combined with police misconduct, prosecutorial misconduct, and failure to admonish applicant and victim of rights all in ground one, but illegal search and seizure is mentioned not only in ground one, but also in grounds 3, 4, 2, 8, 9, 12, 13, 26, 28, 29, 30, 49 And again, the state only repeats an excerpt from instruction 6. Not the entire instruction. Relator avers that the issues concerning the illegal search and seizure of not only his back pack and person, but his home as well, permeated and perniciously effected the entire arrest and subsequent trial! Fruit of the Poisonous Tree Doctrine! The illegal search and seizure of evidence from Relators Home was never even disclosed to him until trial, and after trial! Even the fact that his niece, the alleged victim was under indictment at the time of his arrest! The Police used coercion and covert threats to convince the victim and the other eye witness-the grandmother, Wilma Mckinney to search theirs and Relators home, all without a valid search warrant! No body was admonished of their rights or the fact that they did not have to consent to the illegal search and seizure of evidence from Relators home! Like the actual knife that Relator dropped during the struggle! The one the police took with them that they never bothered to disclose! Of course this issue is going to come up in almost all of the other issues and or grounds, how could it not? Of course, the police committed misconduct, look at Wilma Mckinney's affidavit. Of course prosecutors committed misconduct on many issues as a result of the illegal search and seizure, and of course, all of the Brady violations, failure to disclose! Relator avers and maintains that he did in fact also separate each of these grounds on a New page! Thats why there are so many grounds! 49!!

8.

4. Relator asserts that if the illegal search and seizure of his home, and his backpack, and his person would have been disclosed to him long before his erroneous Trial, he would have required his initial Court appointed Attorney to move to dismiss all the charges, Michael B. Lewis! Certainly the police told the District Attorney about the illegal search of Relators Home, And the fact that the police took all of those pictures? Picked up the Actual KNIFE that Relator dropped on the floor in his home? And took it with them? In fact, there was so much this conduct in this case, that 49 grounds barely covers all of them! Relator maintains, that if this Court does not grant the Relator Mandamus relief and he is required to rewrite both of his Applications, he will raise at least twice as many grounds and also move for a change of venue, and or recusal of the Judge! Obviously, Relator cannot receive a fair and impartial Trial, and or adjudication of his Writ of habeas Corpus in the Gregg County Court house - "Thorn in Governments Side Indeed! The Writ of Habeas Corpus Shall Never Be Suspended!

Relator would point out this fact; the exhibits that were returned to Perry arrived in one envelope, on or about June 29, 2015. All of the staples were in fact missing, and all of the exhibits were mixed up - out of order! On or about June 30, 2015 the next envelope arrived at Perry's Prison! This envelope did in fact contain the two Writ of habeas Corpuses! Said envelope was only held together by duck tape in a haphazardly fashion! In other words, the envelope was destroyed! The Applications were damaged, the envelope was wide open! Pages are missing, staples were missing! Unbelievable! the Mailroom Supervisor, Mrs. English will verify these facts! At this point, Relator does not know what all is missing and or destroyed! Relator has been really busy trying to stay alive! Prison officials have continued their campaign of retaliation and harassment on a daily basis! Impeding his

access to courts. Prison officials have again removed Relators disabilities restrictions and are trying to force him to work at hard labor in the fields! In violation of the Americans with Disabilities Act. Whereas, Relator has many disabilities including, but not limited to one leg shorter than the other requiring him to wear prostetics/medical boots! No climbing, limited squating, No reaching over shoulder, No repetitive use of hands! Refusing to work in the fields caused the Relator to receive two disciplinary cases that will result in sever punishments, including but not limited to Solitary Confinement and No access to the law library! Oh, Commissary restriction, Loss of Good Time, Loss of Custody status, cell restriction, No recreation, No visitation, etc. etc.! All of this will seriously impede Relators ability to process his appeal/writ of habeas corpus! Expeditionally!

5. The State filed its motion in the 124th Judicial District Court. Relator avers that he was tried and convicted in the 188th Judicial District Court in and for Gregg County, Texas. The Court of Jurisdiction! Whereas, the District Attorney failed to timely file their response and or objection in the Court of Competent Jurisdiction! The State even used an incorrect Cause Number on its motion to wit: Cause No. 42,139-B-H-1. See the cause number affixed to both habeas corpus applications to wit: 42,139-A-W-1 Not only that, See the Court Order issued on June 23, 2015 filed in the 188th Judicial District Court in and for Gregg County, Texas. Also with a different Cause Number to wit: No. 42,139-A-H-1. So, here we have two different courts and three different cause numbers! Even the Judges Signature is questionable Whereas, at first glance, Relator thought that a visiting Judge signed the order, even after comparing the signature with prior signatures of the Judge, Relator continues to have doubts about the authenticity of that signature!

Considering the aforesaid, if the 124th District Court lacked Jurisdiction, then the State has failed to timely file an answer within 15 days!

Not only That, but The Clerk didn't Certify The Court Order until June 24, 2015, a full day after the Judge allegedly signed it. Furthermore, There is no Certificate of Service with This Order; The Clerk states That There are 8 pages, but That's Not True either; The Court Order is only 1 (one) page long; If you Consider The States objection, it's only 6 (six) pages long. Where's The missing page and Certificate of Service? Even if you combine both of These documents, They only add up to 7 (seven) pages.

9. Let's look at Appellate's Brief Whereas, Lew Dunn included several issues Together in one ground; See ground Six and Seven in Appellate's Brief for just one example; page 67 and 68 (Foot Note[8] Appellant combines These two Issues for argument for purposes of judicial economy since They arise out of The same factual and legal contexts.)

In fact, Appellate Counsel done The same Thing with respects To The Twelfth ground of ineffective assistance of Counsel - AT several key Points Indeed. Lew Dunn included several grounds of ineffective assistance of Counsel in one ground. Multifarious, Right. Of course, That didn't bother The State Then. Considering The Sixth Court of Appeals claims That The objection or grounds on appeal do Not Comport with The objections made at Trial, preserving Nothing for Their review. Indeed. No error preserved.

10. Art. 11.07 Sec. 3 (c) Within 20 days of The expiration of The Time in which The State is allowed to answer, it shall be The duty of The Convicting Court to decide whether There are Controverted, previously unresolved facts material to The legality of The applicants Confinement. Confinement Means Confinement for any offense or any Collateral Consequence resulting from The Conviction That is The basis of The instant habeas Corpus. If The Convicting Court decides That There are no such issues, The clerk shall immediately Transmit To The Court of Criminal Appeals a copy of The application, any

11.

13

answers filed, and a certificate reciting the date upon which that finding was made. Failure of the court to act within the allowed 20 days shall constitute such a finding." (Emphasis added) Section (d) does not even apply, at this point since the court rejected the application without Jurisdiction.

11. Relator avers that the state and the court further violated numerous other provisions under Chapter Eleven, Habeas Corpus of the Texas Code of Criminal Procedures. See also Article 11.02 to whom directed: It shall fix the time and place of return, and be signed by the Judge, or by the clerk with his seal, where issued by a court. Note: The Judges order has the seal, but not the states motion or Relators Application. ("Never Suspended", Right?) See also Article 11.03 Want of Form; The Writ of habeas corpus is not invalid, nor shall it be disobeyed for any want of form, if it substantially appear that it is issued by competent authority, and the writ sufficiently show the object of its issuance. ("Never Suspended", Right?) See also Article 11.04 Construction; Every provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it." (Emphasis Supplied) ("Never Suspended", Right?) See also Article 11.60 Refusing to execute writ; Any officer to whom a writ of habeas corpus, or other writ, warrant or process authorized by this Chapter shall be directed, delivered or tendered, who refuses to execute the same according to his directions, or who wantonly delays the service or execution of the same, shall be liable to fine as for contempt of court. "Writ of Right That Shall Never be Suspended" (Emphasis Supplied.) also see Article 11.61 Refusal to obey writ; Anyone having another in his custody, or under his control, power, or restraint who refuses to obey a writ of habeas corpus, or who evades the service of the same, or places the person

(2)

14

illegally detained under the control of another, removes him, or in any other manner attempts to evade the operation of the Writ, Shall be dealt with as provided in Article 11.34 of this Code. Disobeying the Writ. Also see Article 11.35 Further penalty of Disobeying the Writ.

Or See Article 11.40 Prisoner Discharged; The Judge or Court Before whom a person is brought by Writ of habeas Corpus Shall examine the Writ and papers attached to it; and if no legal cause be shown for the imprisonment or restraint, or if it appear that the imprisonment or restraint, thought at First legal, cannot for any cause be lawfully prolonged, the applicant Shall be discharged.

Again, The Relator would point out that the State filed its Motion in the 124th District Court of Gregg County and Not in the Court that the Relator was Convicted in, The Court of Competent Jurisdiction. Relator was in fact Convicted in the 188th District Court of Gregg County, Tx. The State even included the incorrect Cause number on Their Motion to wit: No. 42,139 -- B-H-1 Furthermore, the Court order denying the Relator relief and refusing to obey the Writ of habeas Corpus also has the incorrect Cause Number to wit: No. 42,139-A-H-1 In fact, the Writ of habeas Corpus has a Completely different Cause Number to wit: 42,139-A-W-1. See also Article 11.42 If Court has No Jurisdiction; If it appear by the return and papers attached that the Judge or Court has no Jurisdiction, such Court or Judge shall at once remand the applicant to the person from whose custody he has been taken. Article 11.35 Further penalty for disobeying Writ;

Any person disobeying the Writ of habeas Corpus shall also be liable to a Civil Action at the suit of the party detained, and shall

13.

15

pay in such suit fifty dollars for each day of illegal detention and restraint, after service of the Writ. It shall be deemed that a person has disobeyed the Writ who detains a prisoner a longer time than three days after service thereof, unless where further time is allowed in the Writ for making the return thereto."

E.                    Prayer For Relief

Wherefore, premises considered, Relator, Michael Dean Perry, pro se, herein respectfully prays and request a finding that the Respondent did not transmit documents to the Court of Criminal Appeals within a reasonable time after the date they were requested and that Relator brought this litigation in good faith and has substantially prevailed. Relator prays for an order directing Respondent to transmit a copy of the Application for Writ of habeas corpus, any answers filed, including all exhibits, and a certificate reciting the date upon which that finding was made to the Court of Criminal Appeals as directed in Article 11.07 Sec.3(c) of the Texas Code of Criminal Procedures as requested in Relators letters (Exhibits A through C, and now the subsequent Mandamus, and such other, and further relief to which he may be justly entitled, at law and equity, or Just cause be shown. Or Bench Warrant Relator for a Hearing.

Respectfully Submitted,

Relator x _Michael Dean Perry_

TDCJ No. 1838527

Executed on this the 9th day of July 2015

E.                         Unsworn Declaration

I, Michael Dean Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Ellis Unit, 1697 Fm 980, Huntsville, Tx 77343 Declare under penalty of perjury That the above and foregoing Writ of Mandamus is True and Correct.

Executed on This The 9th day of July        2015

By the Relator x Michael Dean Perry TDCJ No. 1838827


                    Certificate of Service

I, Michael Dean Perry TDCJ No. 1838827 do hereby Certify That a True and Correct copy of the above and foregoing Writ of Mandamus, Certificate of Service, and unsworn declaration have been served by placing same in The U.S. Mail, First Class service prepaid on This The 9th day of July   2015

By the Relator x Michael Dean Perry TDCJ No. 1838827

Return Receipt Requested; Michael Dean Perry TDCJ No. 1838827
                            Ellis Unit
                            1697 Fm 980
                            Huntsville, Tx 77343


15.

17

Cause No. _____

Michael Dean Perry TDCJ No. 1838827      In the 188th Judicial District
v.                                        Court of
Barbara Duncan, District Clerk of         Gregg County, Texas
Gregg County, Texas
In her Official Capacity

## Order

On this day, came on to be heard the foregoing Relators Application for Writ of Mandamus and it appears to the Court that the same should be:

## Granted

It is Therefore Ordered that, the District Clerk shall immediately Transmit to the Court of Criminal Appeals a Copy of the application for Writ of habeas corpus, any answers filed, and a certificate reciting the date upon which that Transmittal was made.

Signed on this the _____ day of _____ 2015

_____
Presiding Judge

16.

Dear Clerk Barbara Duncan,

Greetings:

The reason for my inquiry is to ascertain whether you received the Writ of Habeas Corpus Art. 11.07 that I mailed to the 188th Judicial District Court on June 1st, 2015 whereas, I presented my legal mail to Prison Officials to mail to the Court on June 1st, 2015. Commonly referred to as The mailbox rule; Spotville vs. McCain. However, I have not received confirmation from you, the District Clerk, that you have received my Writ of Habeas Corpus Art. 11.07, and filed it. Also, that you have assigned a cause number. I also included an explanation letter of why I had to mail the writ in (4) Four seperate envelopes. Surely you can understand my trepidation concerning the processing of my Writ of Habeas Corpus A.T. 11.07 Application. I even wrote a letter to Judge Brabham explaining just some of the trouble I've had trying to mail the writ application to the Court. I'm sorry if I seem to be a little impatient, but in my defense, you've had ample time in order to acknowledge the receipt and filing of my Habeas Corpus Art. 11.07. Please contact me as soon as possible and give notice. It cost me 31 postage stamps to mail it, 32 counting the letter to the Judge, 33 counting this letter. How many more letters must I write? What say you Barbara Duncan?

Respectfully yours,

Michael Dean Perry

June 12, 2015

1 of 2

## Un sworn Declaration

I, Michael Dean Perry TDCJ# 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Ellis Unit, 1697 FM 980, Huntsville, Tx 77343 Declare under penalty of perjury that the above and foregoing is True and Correct.

Executed on this the 12th day of June, 2015

By the Appellant: Michael Dean Perry TDCJ# 1838827

## Certificate of Service

I, Michael Dean Perry TDCJ# 1838827 do hereby Certify That a True and Correct copy of the above and foregoing letter to the District Clerk, un sworn declaration and Certificate of Service have been served by placing same in the U.S. Mail, First Class postage prepaid on this the 12th day of June, 2015

By the Appellant: Michael Dean Perry TDCJ# 1838827

Return Receipt Requested: Michael Dean Perry 1838827
Ellis Unit
1697 FM 980
Huntsville, Tx 77343

2 of 2

Dear Clerk Barbara Duncan,

Greetings:

Please except and file my Application for a Writ of Habeas Corpus Art 11.07 C.C.P. Due to the Arbitrary acts of Prison Officials I had to find another way to Mail my Habeas Corpus to the Court. Please bare in Mind that the Application and all of the Exhibits in Support there of had to be Shipped in Seperate envelopes as opposed to one Large box. There are in Fact (4) Four Seperate envelopes that are numbered 1 through 4. Please make note that the exhibits are contained in envelopes 1 through 3, and with the Habeas Corpus 11.07 is in envelope Number 4. The exhibits are listed in an exhibit list and are stacked in sequence as according to their order in the envelopes. Furthermore, I've included Ground Number 49, but was not able to actually attach it to the Application because it was inadvertently over looked by me in my haste to get the Application mailed before Prison officials figured out another way to impede my Access to Courts. If there is any problems whatsoever with my Writ of Habeas Corpus, please dont hesitate to inform me of the defect so I that I can correct the error. Thank you for your time and consideration in the filing of my Habeas Corpus. Please pardon my grammar.

Respectfully yours,

Michael Dean Perry 1838827
June 1, 2015

1 of 2

<u>Unsworn Declaration</u>

I, Michael Dean Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Ellis Unit, 1697 FM 980 Huntsville, Tx 77343 Declare under penalty of perjury that the above and foregoing letter to Clerk Barbara Duncan concerning the filing of the Writ of Habeas Corpus 11.07 and exhibits is True and Correct.

Executed on this the 1st day of June 2015

By the Applicant/Appellant: <u>Michael Dean Perry TDCJ No. 1838827</u>

<u>Certificate of Service</u>

I, Michael Dean Perry TDCJ No. 1838827 do hereby certify that a True and Correct copy of the above and foregoing letter to Clerk Barbara Duncan concerning the filing of the Writ of Habeas Corpus 11.07, exhibits, unsworn declaration, and Certificate of Service have been served by placing same in the U.S. Mail, First Class postage prepaid on this the 1st day of June 2015.

By the Applicant/Appellant: <u>Michael Dean Perry TDCJ No. 1838827</u>

Return Service Request: Michael Dean Perry TDCJ No. 1838827
                        Ellis Unit
                        1697 FM 980
                        Huntsville, Tx 77343

2 of 2

22

Cause No. 42,139 A-W-1

Judge Brabham Sir,

Exhibit C
Access To Courts

The reason for my correspondence at this time concerns my rights to file my Writ of Habeas Corpus Art. 11.07 C.C.P. I wasn't sure if I should file a Motion or Writ or just a simple letter to you, the presiding Judge! After all, the Writ of Habeas Corpus must first be filed in your Court, right!

Pardon my manners Judge! I hope you or yours are doing fine or you are in good health! Me? Just another day in paradise! However, I would be a little happier if I could file my Writ of Habeas Corpus Art. 11.07. Let me explain briefly! I've been trying to prepare and then file my Writ for months now, especially since the Court denied my PDR! However, Prison officials have continued to impede this process! I do in fact have the Writ ready to be mailed to your Court, however, Asst. Warden Gorsuch and the Property Officer and the Law Librarian Ms. Chenevert will not allow me to mail the Application to the Court! Let me explain briefly, the Writ and exhibits weigh at or about 5lbs to 10lbs, bulk rate! Of which requires the Writ to be mailed out in a priority box! Supposedly, this can only be done by and through the Property Officer A. Scott! Your honor Sir, I've tried repeatedly to accomplish this to no avail! Can you please call the Warden Michael Roesler or his Asst. Keith Gorsuch and have them provide me a way to mail my Writ of Habeas Corpus to your Court. I will be filing a Writ for Time Tolling under (AEDPA) if my Art 11.07 is Not successful! I've kept a record of all the delays that were Not my doing! Thank you Judge Brabham for your consideration with my request!

Respectfully yours,

Michael Dan Perry

Ellis Unit (936) 295-5756
May 28, 2015

1 of 2

23

## Un Sworn Declaration

I, Michael Den Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department Of Criminal Justice at The Ellis Unit. 1697 FM 980 Huntsville Tx, 77343 Declare under penalty of perjury That The above and foregoing is True and Correct.

Executed on This The 28th day of May, 2015

By The Appellant: Michael Den Perry TDCJ No. 1838827

## Certificate of Service

I, Michael Den Perry TDCJ No. 1838827 do hereby Certify That a True and Correct Copy of The above and foregoing letter to The honorable Judge David Brabham has been served by placing same in The U.S. Mail, First Class postage prepaid on This The 28th day of May 2015

By The Appellant: Michael Den Perry TDCJ No. 1838827

Return Service Requested: Michael Den Perry TDCJ No. 1838827
Ellis Unit
1697 FM 980
Huntsville, Tx 77343

CoA No. 06-13-00051-CR
PD-1209-14
Tr. Ct. No. 42,139-A

20f2

24

Ground: 49 No Probable Cause / No Warrant / Police Misconduct /
False Imprisonment / Denial of Due Process! / Illegal Arrest / Detention
Juxtaposition - No Warrant / No Probable cause! / Terry Stop

Facts Supporting ground: 49

Appellant was walking down his driveway, minding his own business, in a small town in America (USA), The Land of The Free! However, Police Officer, Nikkie Williams, upon arrival at Appellants home, saw Appellant walking accross his own driveway, as apposed to running like he had just committed a crime! Without adducing any facts whatsoever That Appellant had committed a crime, Police Officer, Nikkie Williams, restrained The liberty of Appellant by first hand cuffing him behind his back, his (arms/hands), Then also by searching his pockets and removing personal items, Then by placing him in The back seat of her Police cruiser with the doors locked! Furthermore, Police Officer, Nikkie Williams Never Mirandarized (Read Rights) Appellant! Fruit of The Poisonous Tree Doctrine, Exclusionary Rule! Right? At The bare minimum, Police are required to either have a valid arrest warrant, and/or Probable cause before They can arbitrarily restrain the liberty of an American citizen! Or did I miss something? (Terry Stop!) Appellants Subsequent Imprisonment is Illegal! In other words, Nikkie Williams had not first acquired sufficient facts to establish Probable cause and arrested Appellant on Supposition alone! Juxtaposition - No Warrant / No Probable cause.

1 of 1

Ground:49 No Probable Cause/No Warrant/Police Misconduct/
False Imprisonment/Denial of Due Process!/Illegal Arrest/Detention
Juxtaposition - No Warrant/No Probable cause    /Terry STOP

Facts Supportive ground:49

Appellant was walking down his driveway, minding his own business, in a small
town in America (USA), The Land of The Free! However, Police Officer, Nikkie
Williams, upon arrival at Appellants home, saw Appellant walking across his
own driveway, as opposed to running like he had just committed a crime!
Without adducing any facts whatsoever that Appellant had committed a
crime, Police Officer, Nikkie Williams, restrained the liberty of Appellant
by first hand cuffing him behind his back, his arms/hands, then also by
searching his pockets and removing personal items, then by placing him
in the back seat of her Police Cruiser with the doors locked! Furthermore,
Police Officer, Nikkie Williams Never Mirandized (Read Rights) Appellant.
Fruit of The Poisonous Tree Doctrine, Exclusionary Rule! Right?
At the bare minimum, Police are required to either have a valid arrest
Warrant, and/or Probable cause before they can arbitrarily restrain the
liberty of an American Citizen! Or did I miss something?
(Terry Stop!) Appellants subsequent Imprisonment is Illegal!
In other words, Nikkie Williams had not first acquired sufficient facts
to establish Probable cause and arrested Appellant on supposition alone!
Juxtaposition-No Warrant/No Probable cause,

**SUBJECT:** *State briefly the problem on which you desire assistance.*

Ms. English:                    Return Service Requested!           (Copy)

On or about June 30, 2015 I came to the mail room to pick up legal mail! To my surprise and chagrine, my Writ of habeas corpus was all torn open and dyck taped haphazardly back together, but still wide open! Still had torn places all over the envelope! Ms. English swears that the legal package arrived at this unit from the Post Office that way! Personally, I find that very hard to believe! The Post Office Manager would have more than likely, repacked the entire envelope by placing the torn open package in a priority mail box, if for no other reason than to (CYA)! I'm filing a substantial complaint with the District Judge and asking for a restraining order to prevent further tampering of my legal mail! I even wrote to my Attorney Lew Dunn last week with no response - Very unlikely!

Name: Michael D. Penn                  No: 1838827            Unit: Ellis

Living Quarters: B4, 1-11-B           Work Assignment: I/S Medical Squad 4

**DISPOSITION:** (Inmate will not write in this space)

The mail you received back came to me that way torn up so I did try to place tape on it to keep you losing any of it after it was received. So do what you want to. I have no reason to destroy any mail of yours or anyone else.

M.E.

I-60 (Rev. 11-90)

Cause No. 42,139-A-W-1; No. 42,139-B-H-1; No. 42,139-A-H-1

FILED
GREGG COUNTY, TEXAS
JUL 2 4 2015
2:40 O'CLOCK P M
BARBARA DUNCAN, DISTRICT CLERK
BY _____ DEPUTY

Ex parte:

Michael Dean Perry

In The 188th District Court
In And For
Gregg County, Texas

## Relators Supplement To Writ of Mandamus
### In Support of Relators Writ of Habeas Corpus

To The Honorable Judge of Said Court;

Comes now Michael Dean Perry, herein after referred to as Relator, and files this Supplement in Support of his previously filed Writ of Mandamus, and in support of his Application for Writ of Habeas Corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedures and Rule 73.1, and for good cause Relator respectfully shows the Court the following;

1. First of all, the Court may question why Relator has included (3) Three different Cause Numbers. Relator avers that that is because the Clerk, the State, and this Court used, and provided all (3) Three cause numbers herein listed above previously to the Applicant, Appellant, Relator therefore, the Relator was in a quandry, which of these, to quote the State, Multifarious cause numbers should Relator use? In an abundance of caution, less this Writ be rejected by the State for non compliance, Relator decided to be safe and use all three (3). Maybe one of those Multifarious cause numbers is just demonstrative? Unlike the demonstrative knife shown to all the witness before trial, of which there was only one!

1.

28

2. Relator avers that the Application for Writ of Habeas Corpus Art. 11.07 at the time of his arrest and subsequent conviction differs significantly from the new Application that was revised on January 14, 2014. Relator avers and asserts that the rules in effect on the previous Application apply in his case and are not retroactive. Relator also avers that the District Clerk only sent Relator one (1) Form Application with a posted note attached thereto, the old Application form. Relator had no choice but to use the new and revised Application. However, the previous rules apply in the case at bar.

3. Relator avers and maintains that the state continues to use subterfuges in this direction to deny Relator his substantial rights to a Writ of Habeas Corpus and the court continues to follow suit. Whereas, see page/cover sheet/instructions on the Application form prior to 01/14/14. Rule 6. You must include all grounds for relief, and all facts supporting each ground for relief, in the application you file seeking relief from any judgment of conviction.

There is no item 17 instruction in rule 6 on the form. The state failed to even include that portion of rule 6 in their dubious motion to reject and the state, the clerk and the court failed to even inform the Applicant/Relator that he is under the old law. And that the old rules apply in his case, not the newly revised Rules. Sorry, none of these cheap pens will work properly. Pardon my grammar.

4. Also see page 5. of the old form whereas, there is an extensive list of possible grounds for relief (a) through (o) not listed on the newly revised Application form. Also see the cover sheet and Rule 9 the Applicant is

2

29

required to file the original with the clerk of the convicting court. Since Relator has two convictions under two courts he was required to write by hand two Applications and write two by hand for his own records. Relator avers and asserts that he is confined in a Maximum Security Prison in a tiny little Suffocatingly Hot Cell That is 6ft x 4ft and is shared with another grown man. The temperature in the cell stays at or about 100° degrees or higher. The tiny little fan blows hot air around constantly, even our papers are blown around constantly. Earplugs are required because the noise level is so high. The conditions of confinement in the erroneous Texas Prison System are deplorable to be kind. Mere words can not adequately describe the horredous abuses that Relator has been through and suffered during the past (3) three years and continues to suffer. See Also Rule 73.1 (b) The Clerk of the convicting court will make The forms available to applicants on request, without charge.

Barbara Duncan only provided Relator with one Original form that was not yet revised. Relator will use that copy as an exhibit in any future action for relief. Surely this court doesn't expect the Relator to rewrite the entire Applications over again. Especially after They arrived at this Prison Unit from the Clerks office all Torn up. Including his Exhibits. Oh, and Three different Cause Numbers. The cover sheet of both Applications were written on, then whited out. Not only that, but the very same cause Number is assigned to both Applications - Double Jeopardy, right?

Relator Maintains That he is indigent and of limited means, it took 33 Stamps, 4 Writing Tablets, 200 pages of Typing paper, countless sheets of carbon paper, and dozens of cheapass ink pens to prepare and Then 4 Large envelopes to mail the Applications to the court all in one piece - Not Torn up. Including all the Exhibits. Relator avers

that at this time he does not have the funds and/or means to rewrite and then mail to the Court two more revised Writ of Habeas Corpus and all the exhibits. Relator will not be able to go to commissary again until on or about August 22, 2015 due to the restrictions he received as punishment for not being physically capable of preforming hard labor in the fields due to a disability. Lew Dunn can verify these facts by and through the Ombudsman.

5. Relator further avers that the Clerk is also required to furnish the Applicant with the proper form (see the Clerks posted Note attached here to) However, the Clerk only furnished the Relator (1) one of the proper forms that was in effect at the Time of Relators arrest and subsequent conviction. Please be advised, Relator is again requesting that the District Clerk provide him with the proper form that was in effect at the time and date of his erroneous arrest and subsequent erroneous final conviction. Considering the aforesaid, the Relator avers and asserts that if this honorable Court still believes that the Relator did not follow the instructions in item 6. on the proper form, then the Court should consider the fact that Relator was not provided the proper form to begin with. Therefore, the delay in timely filing his Writ of Habeas Corpus was not his fault. Relator is not a trained lawyer. Relator only used the forms that were available to him at the time he filed his Writ of Habeas Corpus as provided by actors working for the State.

6. The Anti Terrorism and Effective Death Penalty Act of 1996 (AEDPA) as contained in 28 U.S.C. § 2244 (d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a Writ habeas corpus by a person in custody pursuant to a state court. The limitation period shall run from the latest of —

4.

31

(A) The date on which the judgment became Final by the Conclusion of direct review or the expiration of the time for seeking such review, (Motions for rehearing, Motion for extensions of time, PDR)

(B) The date of under which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, it the Applicant was prevented from filing by such state action. (The States failure to timely respond to the instant application for a writ of Habeas Corpus, and within 15 days; the states frivolous reason to reject the writ application filed by Relator, and in the wrong court - The 124th District Court, of which had no Jurisdiction; the court order granting the states frivolous motion to reject in the 188th District court, of which lacked Jurisdiction to grant the states motion due to several factors to wit: the states motion not only filed their motion in the 124th District court, but they also used the incorrect cause number and so did the 188th District Court, In fact, there are (3) Three separate and distinct cause numbers. The only cause number that should have any effect is the cause number that the Clerk was required to assign to the Application, see Art. 11.07 Sec. 3(b) "the clerk of that court (188th District court) shall make appropriate notation thereof, assign to the case a file number (ancillary to that of the conviction being challenged" (Emphasis Supplied) That cause Number that is included on both writ applications, Count I, and Count II, paragraph B is court: 42139A-W-1 and No other" (Emphasis supplied) The court order granting the States Frivolous Motion Not only had the incorrect cause Number, it was not mail back to the Applicant until on or about June 29, 2015, and the order arrived with the Applicants torn up writ of Habeas Corpus "Late". Relators Original Application for writ of Mandamus was filed on July 9, 2015.

(C) The date on which the Constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, Relator avers that he was provided with only (1) one of the current Application forms by the District Clerk of which is substantially different from the newly revised Application that Relator was forced to use; of which was revised on January 14th, 2014, and of which the law was not made retroactively applicable to cases on collateral review.

(D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. The Relator avers that due to Police misconduct, Prosecutorial misconduct, (Brady violations) and Ineffective Assistance of Counsel, he was prevented from raising and presenting numerous claims precluding due diligence. (Also see Michael Morton Act and Tim Cole Act.)

2. The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Again Relator avers and asserts that the State is using subterfuges in misdirections to violate Relators substantial Due Process rights under the Fourteenth Amendment to the United States Constitution and the Due Course of Law provisions under Article 1 sec 19 of the Texas Constitution, and Art. 11.07 Writ of Habeas Corpus of the Texas Code of Criminal Procedures.

7. Relator avers and maintains that Prison officials (Employees of the State of Texas - State Actors) Routinely and arbitrarily interfered with, and or

6.

33

impeded Relators ability in the research, preparation, and then the filing of his Application for a Writ of Habeas Corpus. Relator has made a concerted effort to preserve error by filing numerous Step 1 and Step 2 grievances provided to prisoners by Prison Officials, for time tolling purposes. Whereby, preserving error for any possible §2254 or §2255 Habeas Corpus in federal court under the (AEDPA) aforesaid.

8. Relator filed his Original Application for Writ of Mandamus as soon as the conditions of his confinement in Texas Prison would permit him. Relator filed the Mandamus on July 9, 2015 by placing the writ in the prison mailing system. Envoking the Mailbox Rule for Prisoners/Slaves. Let this motion to Supplement Writ of Mandamus be a record for time tolling purposes. On this date, the date of the filing of this Writ herein, the state, the court, nor the clerk have responded in any way to Relators repeated request for the processing of his Writ of Habeas Corpus, and/or his subsequent Writ of Mandamus, violating his substantial Due Process right. Causing Relator irreparable harm.

9. Furthermore, Relators Star witness, the witness that was prevented by the State from testifying at the guilt/innocence phase of Relators Trial, Mrs. Wilma McKinney, whom witnessed the Police search hers and Relators home without a Search Warrant or Probable Cause, retrieve the Actual innocuous knife Relator dropped, that was used to pick the bedroom door lock, and take the innocuous knife with them. Also, that the Granddaughter, the alleged victim, was not Hysterical, Nor did she have any injuries as the Police and Prosecutors claim. Mrs. McKinney has recently had yet another Heart attack (see exhibit A enclosed herein - Hospital Record dated 06/16/15)

7.

34

Relator avers and asserts that his Star Witness, Wilma McKinney, who is now 82 years of age, may not live long enough to testify at any Habeas Corpus hearing, and/or New Trial, some time in the distant future! Especially with all of the erroneous acts - subterfuges in Misdirections perpetrated by the State in order to delay, and/or deny Relator the right of Habeas Corpus and a Speedy and Public Trial! Something Relator has asserted from the very beginning! Relator maintains and alleges that just this one ground is enough to reverse his Conviction! Especially considering the new allegations of Police Misconduct with the Death of a 17 year old or young girl! Whom allegedly pulled a knife! (Demonstrative?) Suppose these are the very same Police Officers involved in the arrest and search of Relator and his home, whom removed THE KNIFE from Relators home? An Evidentiary Hearing would answer some of these questions and bring the truth into the light! Something the Defendant/Relator has been trying to do for almost (3) three years now. Relator hereby request to be brought to the Court to attend any and all hearings involved in this case! Remember, Habeas Corpus literally means-bring the Body to Court, show me the lawfulness of my restraint! Not simply have the attorneys submit their own Affidavits! What on earth would that prove? They're the ones that made most of the errors! The Prosecutor already submitted a false Affidavit to the State Bar of Texas! Relator provided strict proof thereof! Relator avers that this testimony is crucial in determining the truth of the allegations made in his Writ of Habeas Corpus and in explaining the exhibits attached thereto! Some of which weren't made known to the Relator until after he arrived in Prison! Certainly, the State or Relators Court appointed attorneys could not provide information on this Brady Evidence Right?

8.

Of Course, the State does not want the Relator/Applicant to be present at an Evidentiary hearing, They want to limit their liability and cover up the Truth, Notwithstanding all of the 49 grounds that the Applicant raised in his Application for Writ of Habeas Corpus, just one or Two of those grounds are sufficient to warrant Applicant/Relator a New Trial, and/or an Acquittal, Even Considering the recant Affidavits of the alleged victim, Two Affidavits, How long is this Court going to deny the Applicant Habeas Corpus Relief?

## Prayer for Relief

Wherefore, premises considered, Relator, Michael Dean Perry, pro se, here in respectfully prays that the honorable Court include this Supplement to the previously filed Original Application for Writ of Mandamus, and that the Court issue an order thereon the merits contained herein with specificity for any future appellate review and for Time tolling purposes pursuant to the (AEDPA) and that Relator be bench warranted back to any and all Court hearings involving his final felony Conviction, and that the Court Clerk be required to provide Relator with (4) four true and Correct copies of the Application for Habeas Corpus Art 11.07 that was in effect at the Time of Relators arrest and subsequent Conviction, Relator further prays that the Court respond to Relators Mandamus and Supplement thereto, and in a reasonable amount of Time, and such other, and further relief to which he may be justly entitled, at law and Equity, or just Cause be shown,

Respectfully Submitted,

Michael Dean Perry pro se

Relator   July 20, 2015

9.

## Unsworn Declaration

I, Michael Don Perry, TDCJ No. 1838827, being presently incarcerated in the Texas Department of Criminal Justice at the Ellis Unit, 1697 FM 980, Huntsville, TX 77343 Declare under penalty of perjury that the above and foregoing is True and Correct.

Executed on this the 20 day of July 2015

By the Relator x /Michael Don Perry TDCJ No. 1838827

## Certificate of Service

I, Michael Don Perry, TDCJ No. 1838827 do hereby certify that a True and Correct Copy of the above and foregoing Motion to Supplement Mandamus, Unsworn declaration, Certificate of Service, and proposed Court Order have been served by placing same in the U.S. Mail, first class postage prepaid on this the 20 day of July 2015

By the Relator x /Michael Don Perry TDCJ No. 1838827

Return Service Requested: Michael Don Perry TDCJ No. 1838827
Ellis Unit
1697 FM 980
Huntsville, TX 77343

10.

37

Cause No. 42,139-A-W-1; No. 42,139-B-H-1; No. 42,139-A-H-1

Ex parte:                                    In The 188th District Court
                                                 In And For
Michael Don Perry,                          Gregg County, Texas


## Order


On This day, came on to be heard The Foregoing Relators Motion-
Supplement To Writ of Mandamus In Support of Relators Writ of
Habeas Corpus, and it appears to the Court That The same should be:

Granted


IT is Therefore Ordered That, The Clerk shall stamp file The motion,
and include The motion with The record of This case, provide The Relator
with (4) four copies of The Original Application for Writ of Habeas Corpus Art.
11.07 in effect at the time and date of Relators arrest and subsequent con-
viction, and mail them to his place of confinement free of charge and
expeditiously and a Certificate reciting The date upon which all of This
was done and provide Relator with a copy Thereof.


Signed on This The _____ day of _____ 2015


_____
Presiding Judge

L.H.                                              38



*Exhibit A*

## GOOD SHEPHERD
### MEDICAL CENTER

Date: 06/13/15
Acct Num: L00580443664
Med Rec Num: LM00130864
Name: WILMA MCKINNEY
Location: E300N Cardiology - Longview
Primary Provider: Jetty, Maanasa

# Patient Instructions Signature Page

**Patient Name:** WILMA MCKINNEY

**Guardian Name:**

**The above-named patient and/or guardian has received the following patient instructions:**

DI for Heart Attack, Urinary Tract Infection

**on this date:** 06/16/15 - 15:18

**I have read and understand the instructions given to me by my caregivers.**

WILMA MCKINNEY                    Phone (903) 553-9939
_____
Print Patient Name

_____
Patient (or Guardian) Signature                    Date

_____
Caregiver/RN/Doctor Signature                    Date

Cause no. 42,139 A-W-1; No. 42,139-B-11-1; No. 42,139-A-H-1

Ex parte :                    *place in file*        In The 188th District Court
                          *I have seen this D?*      In And For

Michael Dean Perry                              Gregg  County, Texas

FILED
GREGG COUNTY, TEXAS

Motion For Change of Venue         AUG - 4 2015
10:33 O'CLOCK A M
BARBARA CLERK DISTRICT CLERK
BY _____ DEPUTY

To The Honorable Judge of Said Court;

     Comes now Michael Dean Perry, pro se, ex parte;, and in Forma pauperis, and Files This his Motion For a Change of Venue, and For good cause The Petitioner Would show The Court The Following;

1. The Petitioner, and or Michael Dean Perry has been referred to, and or called many names by This Court and members of The Local Government of Gregg County; Towit; Defendant, Appellant, Relator, Petitioner, pro se, Ex parte;, Offender, Inmate, but my Least Favorite was when my Court appointed attorney Told the jury That I was a Thorn in The side of my Local Government, or did he really mean The entire Government? I guess That was for The Fact Finder to determine after all, The skunk had been Tossed into The jury box several Times and The smell remained! Heavy as an engine block, sharp as a razor, like The Mouth of an allegator! From The very beginning of my dubious Trial when Tanya Reed told The jury That I was already guilty of assaulting my dead Sister, The Mother of Alanna Mckinney — The alleged victim — So keep That in Mind

1.

40

When you go back! Indeed! (Emphasis Supplied) Of course, that wasn't good enough for the nefarious and impious Prosecutor, Tanya Reed. She in fact continued on with her campaign of Malicious prosecution and portrayed Perry in the worse possible light to the jury, over and over again. But that didn't even persuade the Judge to grant or order a Mistrial! Not even when the state pulled out the Demonstrative knife, and without any prior notice to the defense or to the Trial Court whatsoever! The Judge knew this was all Misconduct, denying the defendant a fair and impartial Trial, Vitiating the presumption of innocence from the word go and/or from the very beginning of the erroneous Trial! When Tanya Reed told the jury about Perry's prior conviction for assault family violence against his now dead Sister, Roni Mckinney, the mother of the victim and niece of the defendant, Alanna Mckinney! Unbelievable!

Under the Code of Judicial Conduct Cannon D3 (2) the Judge had a duty and responsibility to report the Misconduct to the proper authorities, but the Judge never did! Only the defendant reported the Misconduct. Perry brought all of this up in his Motion for Rehearing in the Sixth Court of Appeals and subsequent Petition for Discretionary Review! All of which were denied! This issue and others concerning the bias and prejudice rulings by the District Judge were explained in great detail in Perry's Writ of Habeas Corpus and Memorandum of Law!

Of which tacitly explains why the Court will not process Perry's Writ of Habeas Corpus and why the Judge continues to rule in favor of the state on every single issue! Even at the costs of defendant Perry's 14th Amendment right to Due Process and Art. I §19 Due Course of Law Provision of the Texas Constitution, and his right to a Habeas Corpus!

2.

41

Petitioner Perry avers that he also filed a Writ of Mandamus seeking to compel the Clerk, Barbara Duncan and/or the Judge to process his Writ of Habeas Corpus and mail it to the Texas Court of Criminal Appeals at Austin, TX. As is required by law. This is all explained in great detail in Relators Original Application for Writ of Mandamus filed on or about July 9, 2015 by placing said writ in the prison mailing system. Addressed to the District Clerk, 188th District Court, Gregg County, Tx. 75601 101, E. Methvin Longview, Tx 75601.

However, the court and/or the clerk have not bothered to respond to the Mandamus whatsoever. Perry has since filed a Supplement to Mandamus on July 20, 2015 and continues to wait for a response.

Be it known that Perry previously filed a Complaint with State Commission on Judicial Misconduct on or about October 20, 2014. Although at the time I was very reluctant to include any names, less I be denied my right to a Writ of Habeas Corpus of which appears to be the case now. Perry will send the original and only copy he has and request that the Judge order Barbara Duncan to return it undamaged. Also, Perry is going to include the original letter that he sent to Barbara Duncan concerning the Writ of Habeas Corpus Form she sent him, the old form from 2012. The one with the posted note stuck to it. Please return that as well, undamaged. These will also be marked as exhibits to be included with the record of this case for any future Appellate Review.
(Exhibit "A" letter to Clerk Barbara Duncan) (Exhibit "B" letter to the State Commission of Judicial Conduct)

Its abundantly obvious that Perry did not receive a fair and Impartial Trial in Gregg County. Perry maintains that due to several factors, he can not get a fair and Impartial Trial in Gregg County, Nor can he receive

3

42

a fair and Impartial adjudication of his Writ of Habeas Corpus! Even considering Perry Sued both Assistant District Attorney's, Brian Lemaire and Jenny Huckle and even Court Appointed Attorney Kevin Settle! Please forgive my very poor penmanship and grammar. The record is well established! In that case, the tampering with physical evidence, That was the result of an illegal arrest and Civil rights Violations, inter alia, Prosecutorial Misconduct, Perry's Sentence was reversed on Appeal. Once back at the Gregg County Jail, Courthouse he was brought before Judge Brabham and District Attorney Carl Dorrough in the Judges private chambers early the next morning and offered a deal That he better not refuse or else; plead guilty for time served on the illegal Tampering with Evidence case and drop the appeal - habeas Corpus, or they were going to bring all of their power and resources to bear on me. Looks like they saved That for This case! They actually used That case to enhance This case! Unbelievable! I didn't even have a lawyer when I entered That plea deal! For over two years of hell, I maintained That I was innocent, Through a Jury Trial and Subsequent Appeal! I only plead guilty under duress and after being abused and Tortured for over 2 years! Who Wouldn't Take That deal?

Perry avers that The Habeas Corpus form Application that was in effect at the time of his conviction applies to his case! Included in that Application are 15 possible grounds for relief to wit: (a) Through (o) For example; Just like Zan Brown's example Whereas; (c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure. and see (d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest. Juxtaposition, right!

Note: Both of these Separate grounds involve several identical issues Whereas, illegal/inadmissible evidence! Police Misconduct, Brady Violations by Failing

4

43

to disclose exculpatory, and of course, impeachment evidence to the defendant before Trial-Prosecutorial Misconduct! All of the evidence aforesaid was obtained in and of both of those seperate Grounds! Of course all of those issues are going to be included in the other grounds! Zan Browns excused reasons for Not answering the Writ of Habeas Corpus is Frivolous! And the Courts granting of the States Frivolous Motion to reject is an abuse of discretion! Just like permitting the State to introduce all of that Tainted evidence at Perrys Trial! And permitting the Prosecutor to Commit all of Those violations, Then Not report it! (Cannon 3D(2))

Look at ground at (F) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant! These Three grounds alone permeated This entire Case! Not-withstanding the ineffective assistance of Counsel or a disability!

For instance, The illegal Search and Seizure, Not only the back pack, but my home as well! The Police who picked up THE KNIFE from inside my Home and took it with them? Who the hell are They? What are Their Names? I cant very Well bring Them up in my Habeas Corpus if you people never tell me who they are! I've requested This Brady evidence over, and over, and over, and over again! Official Oppression in more Ways Than one, look it up, its in the Penal Code! So is abuse of Office! Michael Morton Act! Its abundantly obvious that This Court is going to go along with any-thing the State request! Applicant/Relator Perry cannot possibly receive a Fair and Impartial Trial or any Adjudication of his Habeas Corpus! Not in Gregg County, Therefore to, Perry request a Change of Venue!

How about The Frog Parable?

Drop a Frog into a pot of boiling water, he'll jump out!
Drop a Frog into a pot of Warm Water, stoke The fire slowly, and

The Frog will be dead before he knows there's a problem.' In other words, Perry is jumping out cause the water is boiling- There's a Problem.'
Of course all of the issues are going to be mentioned in the other grounds how could they Not be? Look at Lew Dennis [1] Reply Brief for an example: pp.61-62 'The knife was part and parcel of the evidence on both counts of the indictment; The events were inseparably intertwined throughout The State's case-in-chief.' (Emphasis Supplied) That tacitly concedes That Police Misconduct, and Prosecutorial Misconduct, and Ineffective Assistance of Counsel, oh, and Abuse of Discretion permeated the entire case as well, on both Counts of the indictment! See Grounds Four and Five page 62 of The Reply [1] Brief, specifically the Foot Note [1] 'These Issues are grouped and argued together for the Sake of Judicial Economy and because they arise from a common factual basis.' (Emphasis Supplied)(Sorry Typo [1] Appellates Brief)(But See Reply brief pp.1-3)

The point Perry is Trying to make clear is That his Application for a Writ of Habeas Corpus should be liberally construed to do Substantial Justice; Criminal Law 997.11 Also see U.S. v. Garth 188 F.3d 99 (3rd Cir 1999) 'We have long recognized That a "Pro Se" petitioners pleadings should be liberally construed to do Substantial Justice' see; Lewis v. Attorney General, 878 F.2d 714, 721 (3rd Cir 1989); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3rd Cir 1969) Also see; Bledsoe v. Johnson, 188 F.3d 250 Bledsoe is a "pro se" petitioner, and in this Circuit "pro se" habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.' As according to the aforesaid, Perry is being held to an even stricter standard that his Lawyer, or even the state for that matter, In fact, the States Brief is replete with facts and issues and grounds That

6.

are all grouped together, of which is one of the reasons that Perry's issues are mostly in separably interTwined Throughout, Just like the States Case-in-Chief and Perry's Appellate Attorneys Brief! Not only the aforesaid, but the sixth Court of Appeals Memorandum Opinion is also replete with grounds and issues all grouped together!

Look at Guidroz V. Lynaugh, 852 F.2d 832 (5th Cir. 1988)

In the original petition filed in Federal Court, Guidroz employed a "Standard Form" provided to prisoners in State custody. The form recited Some of the most Common grounds for habeas petitions and Contained space for prisoners to assert four grounds of error along with Supporting facts for each. Perry avers That this is the type of form That he referred to that was in effect at the time of his Conviction, Not the form revised in 2014. Furthermore, Guidroz's petition, considered in its entirety, extensively discussed the facts underlying the claim of improper prosecutorial argument. Heavy as an engine block, sharp as a razor, like the mouth of an Alligator!

However, unlike Guidroz's Application, Perry raised 49 grounds and gave a very detailed account of all of the Constitutional violations for the Appeals Court to Consider. Just like in Guidroz's case, Perry was also denied due process and his Trial was fundamentally unfair and the Trial was not properly Conducted!

Just like in The Case at bar, the State made a stipulation to not use the knife allegedly found in the backpack or refer to it in any way. The State unilaterally breached that agreement without any notice to the defendant whatsoever. Even introducing a demonstrative knife to the jury without any prior notice whatsoever. Also violating the stipulation Agreement. Notwithstanding all of the other Prosecutorial violations.

7.

like the introduction of the prior conviction for Assault Family Violence against his Dead Sister, the Sister who died an untimely death, the Mother of the alleged Victim, so keep that in Mind when you go back. 'That was Tanya Reeds Credo, to prejudice the jury from the word go.' Guidroz argues that he was denied due process because the prosecutor made improper arguments that contradicted the stipulation. When, as here, a prisoner alleges a "generic" due process violation due to improper prosecutorial comments, a reviewing court must determine whether the remarks, in the context of the entire trial, were sufficiently prejudicial to violate defendants due process rights. Donnelly V. De Christoforo, 416 U.S. 637, 94 S.Ct. 1868, 1869 (1974) And Perry avers that in his case, the prosecutor made many remarks that prejudice the jury, not just one isolated remark in fact, Perry's Court Appointed Attorney not only moved for a Mistrial, but also requested a running objection of which was sustained by the Court. However, once all of those prejudicial remarks; the demonstrative knife ruse, informing the jury of Perry's Prior Conviction at Guilt/Innocence, Hearsay testimony from the Police Officer, all of those side bars; Heavy as an engine block, sharp as a razor, like the mouth of an alligator, or as Perry's Appellate Attorney articulated it; the skunk had been tossed into the jury box, and even though the Judge told the jury to disregard the remark, the smell still remained. 'Indeed.' It is not enough that the remarks were undesirable or even universally condemned; a defendant may obtain relief only if the prosecutors comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden V. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 2472 (1986) (Quoting Donnelly

8.

94 S.Ct. at 1871) In This Circuit, the test applied to determine whether a Trial error makes a Trial Fundamentally unfair is whether there is a reasonable probability that the Verdict Might have been different had the Trial been properly conducted. Rogers V. Lynaugh 848 F.2d 606 (5Th Cir 1988)(quoting Kirkpatrick V. Blackborn, 777 F.2d 272, 278-79 (5Th Cir 1985)(per curium); See also Edwards V. Scroggy 849 F.2d 204, 211 (5Th Circuit 1988) In light of all The Brady Violations and the abuse of discretion by the Trial Judge, Notwithstanding Ineffective Assistance of Counsel (Failure to Preserve Error) Perry did Not receive a Fair and Impartial Trial! Perry avers and Maintains that absent all These Violations as Stated aforesaid even some Not mentioned in This Forum, No Conviction Would have occurred! Even President Obama Stated That prior Convictions Would not be used anymore!

The Judge in The Case at bar repeatedly showed bias and prejudice and the end result was denial of a Fair and Impartial Trial and the denial of Due Process of Law under The 14th Amendment to the united STates Constitution and the Due Course of Law Provisions of Art. 1 § 19 of the Texas Constitution. And now due to Prosecutorial Misconduct and abuse of discretion, Perry is being denied his Fundamental Rights to a Writ of Habeas Corpus! A Right That Shall Never be Suspended!! 1.08c.c.P. Applicant Filed his Writ of habeas Corpus on June 1, 2015 Here it is now July 29, 2015. No response from the Texas Court of Criminal Appeals of The receipt of the Writ of Habeas Corpus Application! See; ground (s) on the original Application; Denial of Right of Appeal! (m) Illegal Sentence; (n) Invalid or Defective Indictment.

Be it known, if the Court refuses to respond, and in a Timely Manner, Perry Will File for Mandamus Relief in The Texas

9.

Court of Criminal Appeals in Austin, Tx. Perry will also brief the Court on the Stipulation Made by Miss Reed and the reason for the erroneous Stipulation. See Perry's P.D.R. page 4. Appellant Contended the back pack was illegally Searched; hearing on Suppression had been scheduled for the previous afternoon however, after jury Selection, the States Counsel, namely, Tanya Reed, called Appellants Counsel and indicated that She did not want to agree to a Motion to suppress, However, they would agree not to introduce the Steak knife at Trial or refer to it in any way. In return they asked that Counsel not say anything in argument or ask the <u>Police Officer about; Well, did you find a knife</u>, or argue to the Jury, <u>where is the knife</u>'? Lets Stop right here for a moment. Its know wonder that Tanya Reed didn't want a Suppression Hearing'. The entire time the State knew about the illegal Search of Perry's home the day after his arrest and the fact that the Police picked up the actual innocuous knife Perry dropped on the floor and took it with them'. And Nikkie Williams wasn't alone, but those other Police Officers names were never ever disclosed! Subterfuges in this directions! Umy, umy, the Tangled webs we weave, if its our intent to deceive! Heavy as an engine block, sharp as a razor! But That wasn't enough for Miss. Reed. She brought her very own Demonstrative knife to Trial! Her lies and deception dont stop there either! She states to wit: Although it is — I can tell the Court that its "exact – Similar" except its missing one little silver piece in the handle'. <u>It came from our Investigators Home Mr. Hall Reavis</u>! (Note: Where I come from this is referred to as Manufacturing evidence!) Stipulation Indeed! And the Judge allowed

This Mockery of Justice to continue on all through out the Trial! From the very beginning, until Closing arguments! Even Applicants Court Appointed Attorney told the Jury, That Perry, his Client, was a Thorn in the side of Government (Gregg County) and that the jury should Convict him on this case, not what he done in the past. Perry avers That just like in Guidroz's Case, Perry's Trial so lacked Fundamental Fairness as to deny him due process of Law! The main difference being, That the violations were so many, and so egregious, That Perry Suffered irreparable harm and could Not now receive a fair and Impartial Trial using The same set of facts and the Same witnesses! Who's testimony at Trial was questionable at best and Forever Contaminated by the erroneous acts of the Police and Prosecutors.

## Prayer

Wherefore, premises Considered, Petitioner respectfully prays that he be granted a Change of Venue so that this Application for a Writ of Habeas Corpus will receive a fair and Impartial Adjudication of his Habeas Corpus Appeal, and in a Timely Manner, and Such other, and further relief to which he may be justly entitled, at Law and in Equity. Or just Cause be Shown.

Respectfully Submitted,

Michael Dean Perry, pro se

July 29, 2015

11.                                                                    50

## Unsworn Declaration

I, Michael Den Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Ellis Unit, 1697 FM 980, Huntsville, TX 77343 Declare under penalty of perjury that the above and foregoing is True and Correct.

Executed on this the 29th day of July, 2015

By the Petitioner x Michael Den Perry TDCJ No. 1838827


## Certificate of Service

I, Michael Den Perry TDCJ No. 1838827 do hereby Certify that a True and Correct copy of the above and foregoing Motion for a Change of Venue, unsworn declaration and Certificate of Service have been Served by placing Same in the U.S. Mail, First Class postage prepaid on this the 29th day of July, 2015

Executed on this the 29th day of July, 2015

By the Petitioner x Michael Den Perry TDCJ No. 1838827

Return Service Requested!

12.

Exhibit "B"

To Whom it May Concern,

Received by
OCT 23 2014
State Commission on
Judicial Conduct

October 20, 2014

Greetings:

First of all, please forgive my very poor penmanship, it is very difficult trying to write anything in a prison environment. Especially with these cheap ink pens.

Now, on to the reason for this letter. Please send me the necessary information and/or forms that I will need in order to file a complaint on a presiding State District Court Judge. I've already filed a grievance with the State Bar of Texas on the Prosecutor, using of all things, excerpts from my Appellates Brief. My Appellate Attorney raised Prosecutorial Misconduct in my Appeal Brief. The State Bar was in agreement and ordered the Prosecutor to file an Affidavit in response to my complaint. The Prosecutor inadvertantly admitted committing even more misconduct, unless her narcissitic personality disorder caused her to believe that her ingenuous acts were not illegal. Upon further research, I was able to determine that every Attorney is duty bound to report other Attorney misconduct, to date, I'm the only one that reported this misconduct. See; State Bar rules 8.03 Attorneys must report Attorney Misconduct. Not only that, but according to the Code of Judicial Conduct, Canon 3, D(2) Judges are required to report Attorney Misconduct to the proper authorities. Not my Trial Attorney, Not my Appellate Attorney, or even the State Appellee reported

1063

52

The misconduct. In fact, I'm the only one that reported the Attorney misconduct, and from my prison cell! Oh, and before my direct Appeal was denied! Of course, the Sixth Court of Appeals ruled that my Court Appointed Attorney didn't present this complaints to the Trial Court, the issue of prosecutorial misconduct is not preserved for our review! Are these judges for real? The prosecutor committed numerous violations of the state Bar! Not just one or even two! Egregious harm! My dubious Court appointed attorney did request a Mistrial and a running objection! What was my attorney supposed to do to preserve error, break out his coloring book and crayons and draw the Judge a picture? These acts tacitly concedes that the Appeals Court Judges were required to report the misconduct as well, right?

Please send me the necessary forms and information I need in order to file a formal complaint on the District Judge! You may have noticed, I did not reveal any names! That's right, I don't trust anybody anymore! I'm still on Appeal whereas, I intend to try to file a P.D.R. and if that fails, a Writ of Habeas Corpus Art. 11.07 and if that fails a Federal writ of Habeas Corpus §2254 The Judge in my case showed bias and prejudice by permitting the Prosecutor to commit all that misconduct and denied my Motion for a Mistrial!

Sincerely yours,

Michael Don Perry

2 of 3

53

Unsworn Declaration

I, Michael Dean Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Eastham Unit. 2665 Prison Rd. Lovelady, Tx 75851 Declare under Penalty of Perjury That the above and Foregoing is True and Correct.

Executed on This the 20 day of October 2014

By the Appellant: Michael Dean Perry TDCJ No 1838827

Certificate of Service

I, Michael Dean Perry TDCJ No. 1838827 do hereby Certify That a True and correct Copy of the above and Foregoing letter, to the State Commission on Judicial Conduct, unsworn Declaration and Certificate of Service has been served by placing same in the U.S. Mail, First Class Postage prepaid on This the 20th day of October 2014

By the Appellant: Michael Dean Perry, TDCJ No 1838827

Return Service Requested: Michael Dean Perry TDCJ No. 1838827
                          Eastham Unit
                          2665 Prison Rd #1
                          Lovelady Tx 75851

P. 3 of 3

54

Exhibit A

Ms. Duncan,                                        11-14-14

I am in receipt of your post-it-note attached to my motion for appointment of Attorney on Habeas Corpus Art. 11.07, and a copy of an outdated Application for Writ of Habeas Corpus, under Art. 11.07 Texas Code of Criminal Procedures. (November 1, 2014)

For the record Ms. Duncan, as the District Court Clerk, you are required by Law and your duty as a Licensed District Clerk to file all of my motions with the record of my case for any future Appellate Review. Its the Judges job-duty to either rule on or reject my motions, Not yours! You've been the District Clerk for Gregg County for decades, you know better! Furthermore, the Art. 11.07 form you sent me is outdated and not in compliance as according to the Texas Court of Criminal Appeals! The form was revised on January 14th, 2014.

Furthermore, as you should know, I was convicted under two counts on the same indictment for the same offense, of which constitutes double Jeopardy! Therefore, I am required to file a seperate Application for each erroneous Conviction! And as according to the Rules, whether you choose to comply with them or not, you are required to provide me with two (2) Applications for Writ of Habeas Corpus Art. 11.07 for each convictions! As you also should know, I don't have access to a copy machine like the State furnishes you! I will need to keep a copy for my records, just like this letter! Please provide me with the Art. 11.07 forms! And file this letter with the records of my case for any future legal action!

Michael Dean Perez

1 of 2                                              55

Unsworn Declaration

I, Michael Dean Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Eastham Unit, 2665 Prison Rd #1, Lovelady, Tx. 75851 Declare under penalty of perjury that the above and foregoing is True and Correct.

Executed on This the 14th day of November, 2014

By the Appellant: Michael Dean Perry TDCJ No. 1838827

Certificate of Service

I, Michael Dean Perry TDCJ No. 1838827 do hereby Certify That a True and Correct Copy of the above and foregoing letter to District Clerk Barbara Duncan, P.O. box 711, Longview, Tx 75606, was Served by placing Same in the U.S. Mail First Class postage prepaid on This the 14th day of November, 2014.

By the Appellant: Michael Dean Perry TDCJ No. 1838827

Return Service Requested: Michael Dean Perry, 1838827
                          Eastham Unit
                          2665 Prison Rd #1
                          Lovelady, Tx 75851

20E2

56



**SHARON KELLER**
PRESIDING JUDGE

**LAWRENCE E. MEYERS**
**CHERYL JOHNSON**
**MIKE KEASLER**
**BARBARA P. HERVEY**
**ELSA ALCALA**
**BERT RICHARDSON**
**KEVIN P. YEARY**
**DAVID NEWELL**
JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

**ABEL ACOSTA**
CLERK
(512) 463-1551

**SIAN SCHILHAB**
GENERAL COUNSEL
(512) 463-1597

September 9, 2015

FILED
GREGG COUNTY, TEXAS

SEP 10 2015

____ O'CLOCK ___ M
BARBARA DUNCAN, DISTRICT CLERK
BY _____ DEPUTY

District Clerk Gregg County
Barbara Duncan
P.O. Box 711
Longview, TX 75606
* DELIVERED VIA E-MAIL *

Re: PERRY, MICHAEL DEAN
CCA No. WR-62,970-06
Trial Court Case No. 42,139-A

The Court has this day issued an order for the above referenced cause.

Sincerely,

Abel Acosta, Clerk

cc:    Michael Dean Perry

57

FILED
GREGG COUNTY, TEXAS

SEP 10 2015

O'CLCCK                      M
BARBARA DUNCAN, DISTRICT CLERK
BY                        DEPUT

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. WR-62,970-06

## IN RE MICHAEL DEAN PERRY, Relator

### ON APPLICATION FOR A WRIT OF MANDAMUS CAUSE NO. 42,139-A IN THE 188ᵀᴴ DISTRICT COURT FROM GREGG COUNTY

*Per curiam.*

## ORDER

Relator has filed a motion for leave to file a writ of mandamus pursuant to the original jurisdiction of this Court. In it, he contends that he filed an application for a writ of habeas corpus in the 188th District Court of Gregg County, that more than 35 days have elapsed, and that the application has not yet been forwarded to this Court.

In these circumstances, additional facts are needed. Respondent, the District Clerk of Gregg County, is ordered to file a response, which may be made by submitting the record on such habeas corpus application, submitting a copy of a timely filed order which designates issues to be investigated (*see McCree v. Hampton*, 824 S.W.2d 578, 579 (Tex. Crim. App. 1992)), or stating that

58

Relator has not filed an application for a writ of habeas corpus in Gregg County. Should the response include an order designating issues, proof of the date the district attorney's office was served with the habeas application shall also be submitted with the response. This application for leave to file a writ of mandamus shall be held in abeyance until Respondent has submitted the appropriate response. Such response shall be submitted within 30 days of the date of this order.

Filed: September 9, 2015
Do not publish

NO. 42,139-A

IN RE                                    §        IN THE COURT OF
                                         §        CRIMINAL APPEALS
                                         §
                                         §
                                         §        IN AND FOR
                                         §
MICHAEL DEAN PERRY                       §        THE STATE OF TEXAS

FILED
GREGG COUNTY, TEXAS
OCT - 7 2015
CLERK
BARBARA DUNCAN, DISTRICT CLERK
BY _____ , DEPUTY

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 18 2015

Abel Acosta, Clerk

### DISTRICT CLERK'S RESPONSE
### TO PETITONER'S WRIT OF MANDAMUS

TO THE HONORABLE JUDGES OF SAID COURT:

Barbara Duncan, elected District Clerk of Gregg County, Texas, in opposition

to Petitioner's Writ of Mandamus respectfully states the following to the Court based

on her information and belief:

## I. HISTORY OF THE CASE

Michael Dean Perry was charged by grand jury indictment with assault family

violence with a prior conviction (Count I) and aggravated assault with a deadly

weapon (Count II). CR 3. Aggravated assault was charged in two paragraphs of

Count II. Paragraph A alleged that Perry intentionally, knowingly, or recklessly

caused bodily injury to his victim by hitting her with his hand and in doing so, used

or exhibited a deadly weapon, a knife. Id. Paragraph B of Count II alleged that

Perry intentionally or knowingly threatened his victim with imminent bodily injury

by holding the blade of a knife in her direction and the knife was a deadly weapon.

CR 3. Paragraph A of Count II was abandoned during the trial, and the State elected

1

60

to proceed on Count I, aggravated assault with a prior conviction, and Count II, Paragraph B, aggravated assault by threatening his victim with a deadly weapon. 5 RR 165. On February 25, 2013, the jury returned a verdict of guilty. CR 56, 57. They assessed his punishment at 60 years and $10,000.00 for each count. CR 76, 78. Perry was found guilty by a jury of assault family violence with a prior conviction, aggravated assault with a deadly weapon, felony offenses that occurred on or about October 15, 2012. Perry was sentenced to sixty years on each count to run concurrently in the Texas Department of Justice, Institutional Division, and a fine of $10,000, court costs of $224, and attorney's fees of $5,100. He and his appellate counsel each filed a separate motion for new trial, but the Court, ruling that hybrid counsel was not allowed, asked that he elect between representing himself and being represented by Mr. Dunn, and when he chose to have Mr. Dunn represent him, ruled that only Mr. Dunn's motion would be heard. Perry's pro se filings were accepted, but since he elected to have Mr. Dunn represent him, only Mr. Dunn's motion was argued on May 1, and it was denied. Mr. Dunn then filed an appeal on Perry's behalf and the Sixth Court of Appeals modified the judgment to eliminate the attorney's fee, but affirmed the remainder of the judgment on August 15, 2014. These were the findings of the Sixth Court of Appeals:

1. Sufficient evidence supports Perry's convictions.
2. Perry was not subjected to double jeopardy with the two charges.
3. Perry was not entitled to any lesser-included-offense instruction.
4. Evidence of Perry's prior offense of family violence was admissible.

2

5. Perry was not entitled to a mistrial based on the State's opening statement mentioning his prior family violence conviction.
6. Admitting McKinney's accusatory statement through another witness was not error.
7. No error was preserved regarding the claimed breach of agreement regarding the knife.
8. No error was preserved regarding the lack of a jury instruction regarding the knife.
9. Perry's sentences were not constitutionally excessive.
10. No ineffective assistance of counsel was shown.
11. Attorney fees must be removed from the judgment.

Perry filed a petition for discretionary review with the Court of Criminal Appeals, who refused the petition, and the Court of Appeals issued its mandate on February 13, 2015.

He is confined as inmate number 1878827.

## II. APPLICANT'S ALLEGATIONS

Perry is alleging in his motion for leave to file application for writ of mandamus that the District Clerk failed in her obligation to forward the application to the Court of Criminal Appeals.

## III. THE OFFICE OF THE DISTRICT CLERK FOLLOWED THE ORDER OF THE DISTRICT COURT TO RETURN THE APPLICATION TO PERRY FOR FAILURE TO COMPLY WITH THE INSTRUCTIONS FOR THE APPLICATION.

On June 15, 2015, Michael Dean Perry filed an application for writ of habeas corpus for each count, and a memorandum of law with exhibits to accompany each application. The total number of pages for both applications and both memoranda

and exhibits was 956. The State was notified immediately of the writ. On June 23, 2015, the State filed a written motion to reject and return his applications because he had not followed the instructions which require only one issue per ground, and only two pages of facts to support each issue. See State's Motion to Reject and Return Petitioner's Application for Writ of Habeas Corpus, Appendix A. The trial court judge agreed with the State that the application should be returned and signed an order on June 23, 2015, directing this office to reject and return the applications to Michael Dean Perry. See Order, Appendix B. A deputy in this office (filling in for the vacationing deputy who usually handles the writ paperwork) followed the District Court's order and returned the applications to Perry on either June 23 or 24, 2015. She did not keep copies of the writ applications, memoranda of law, or exhibits, did not note the date in the records, but did attach the District Court's order. She did not attach the State's Motion to Reject and Return Petitioner's Application for Writ of Habeas Corpus.

The assistant district attorney kept a copy of only one of the applications. She discarded the other 800 plus pages because she expected to see them again when Perry refiles his application. See copy of writ application, attached as Appendix C.

Mr. Perry did not mention in his application for writ of mandamus that his documents had been returned to him.

63

4

## IV. CONCLUSION

This office has complied with the order of the 188th District Judge to return

Perry's applications for writ of habeas corpus to Mr. Perry.

BARBARA DUNCAN
District Clerk
Gregg County, Texas

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing "District Clerk's

Response to Applicant's Writ of Mandamus" was on this _15th_ day of

September, 2015, mailed to the Applicant, Michael Dean Perry # 1838827, Ellis

Unit, 1697 FM 980, Huntsville TX 77343.

By:_____
BARBARA DUNCAN
District Clerk

64

5

# APPENDIX A

NO. 42,139--B-H-1

| | | |
|---|---|---|
| **EX PARTE** | § | **IN THE 124th DISTRICT COURT** |
| | § | |
| | § | **IN AND FOR** |
| | § | |
| **MICHAEL DEAN PERRY** | § | **GREGG COUNTY, TEXAS** |

## STATE'S MOTION TO REJECT AND RETURN PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

THE STATE OF TEXAS, by and through the undersigned Assistant District Attorney, responds to MICHAEL DEAN PERRY'S application for writ of habeas corpus and requests that the application be returned for noncompliance with the form. Instructions, item 6: "Each ground shall begin on a new page, and the recitation of facts supporting each ground shall be no longer than the two pages provided for the claim in the form."

Perry has written one hundred two pages on each of two counts. The two applications are essentially the same, with very few, minor differences. He has included 49 grounds for relief on each count and each of the 49 grounds has multiple issues, many of which are repeated in other grounds. In the fifteen days given the State to respond, it would be impossible to address each of the multifarious grounds in an organized manner.

Each of Mr. Perry's applications includes one-hundred two pages; each ground contains multiple issues. For example, Ground for Relief Number 1 alleges "Illegal search and seizure/police misconduct/prosecutorial misconduct failure to admonish applicant and victim of rights," violating Instruction 6. The State has found thirty-plus separate issues, and many are discussed multiple times in different grounds, further violating instruction 6,

1

66

because illegal search and seizure is combined with police misconduct, prosecutorial misconduct, and failure to admonish applicant and victim of rights all in Ground One, but illegal search and seizure is mentioned not only in ground one, but also in grounds 3, 4, 7, 8, 9, 12, 13, 26, 28, 29, 30, 49. See Section II, below, where the list of his allegations appears.

Applicant's writ should be dismissed for failure to comply with the instructions, specifically paragraph 6. Each separate ground shall begin on a new page, and the recitation of the facts supporting that ground shall be no longer than the two pages provided for the claim in the form.

## I. HISTORY OF THE CASE

The applicant, MICHAEL DEAN PERRY, was found guilty by a jury on February 25, 2013, of assault family violence with a prior conviction, aggravated assault with a deadly weapon, felony offenses that occurred on or about October 15, 2012. Perry was sentenced to sixty years on each count to run concurrently in the Texas Department of Justice, Institutional Division, and a fine of $10,000, court costs of $224, and attorney's fees of $5,100. He and his appellate counsel each filed a separate motion for new trial, but the Court, ruling that hybrid counsel was not allowed, asked that he elect between representing himself and being represented by Mr. Dunn, and when he chose to have Mr. Dunn represent him, ruled that only Mr. Dunn's motion would be heard. Perry's pro se filings were accepted, but since he elected to have Mr. Dunn represent him, only Mr. Dunn's motion was argued on May 1, and it was denied. Mr. Dunn then filed an appeal on Perry's behalf and the Sixth Court of Appeals modified the judgment to eliminate the attorney's fee, but

affirmed the remainder of the judgment on August 15, 2014. These were the findings of the Sixth Court of Appeals:

1. Sufficient evidence supports Perry's convictions.
2. Perry was not subjected to double jeopardy with the two charges.
3. Perry was not entitled to any lesser-included-offense instruction.
4. Evidence of Perry's prior offense of family violence was admissible.
5. Perry was not entitled to a mistrial based on the State's opening statement mentioning his prior family violence conviction.
6. Admitting McKinney's accusatory statement through another witness was not error.
7. No error was preserved regarding the claimed breach of agreement regarding the knife.
8. No error was preserved regarding the lack of a jury instruction regarding the knife.
9. Perry's sentences were not constitutionally excessive.
10. No ineffective assistance of counsel was shown.
11. Attorney fees must be removed from the judgment.

Perry filed a petition for discretionary review with the Court of Criminal Appeals, who refused the petition, and the Court of Appeals issued its mandate on February 13, 2015. He is confined as inmate number 1878827.

## II. PERRY'S ALLEGATIONS

For clarity and simplification and to avoid redundance, each issue Perry placed at the top of each ground for relief will be listed only once, with an effort to refer to each ground in which he mentions that issue.

Perry alleges in his application that his conviction and confinement are illegal because

A) the search of his backpack and his home and the seizure of his knife were without warrant or consent. (Grounds 1, 3, 4, 7, 8, 9, 12, 13, 26, 28, 29, 30, 49)
B) Police misconduct (Ground 1, 4, 7, 8, 9, 12, 16, 26, 28, 29, 30, 34, 39, 45, 49)

C) Prosecutorial misconduct (Ground 1, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 22, 24, 26, 27, 28, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41, 43, 44, 45, 46, 47)

D) Failure to Admonish (sic) Applicant and Victim of Rights (Ground 1)

E) Evidence legally insufficient to show:
a. Bodily injury (Ground 2, 10, 18)
b. Victim felt threatened (Ground 5, 19, 23)
c. Knife was a deadly weapon (Ground 5, 16, 19, 23)
d. Demonstrative knife (Grounds 9, 26)
e. Guilt in general (Grounds 39)

F) Hearsay, no recorded statement; Erroneously Admitted/Inadmissible evidence. (Grounds 3, 6, 7, 9, 16, 18, 24, 26, 37, 45)

G) No notice of pending charges against victim, discovery violations (Grounds 3, 6, 37)

H) Ineffective assistance of counsel; Misconduct/Disability (Grounds 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 37, 38, 40, 41, 42, 44, 45, 46, 48)

I) Ineffective assistance for failure to hire private investigator (Grounds 8, 26, 32, 40)

J) Violation of his right to Confrontation (Grounds 4, 8, 31, 40, 44)

K) Violation of his Due Process rights (Grounds 6, 14, 17, 22, 23, 25, 31, 33, 34, 36, 37, 38, 44, 49)

L) Malicious prosecution /Retaliation(Ground 6, 34)

M) Brady violations (Grounds 6, 13, 21, 25, 32, 33, 35, 37, 39, 44, 46)

N) Witness Tampering (Ground 6)

O) Denial of compulsory process for defense witnesses (Grounds 8, 25, 39, 40, 44, 45)

P) Defective Judgment; wrongful conviction (Grounds 10, 14, 22, )

Q) Abuse of Discretion (Grounds 10, 11, 12, 13, 14, 15, 16, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 41, 42, 44, 45, 46, 47, 48)

R) Double Jeopardy (Grounds 10, 15)

S) Doctrine of Carving (Grounds 10, 15)

T) Denial of fair/impartial trial & right to appeal (Grounds 10, 11, 13, 14, 15, 17, 21, 22, 23, 25, 33, 34, 36, 37, 38, 42)

U) Denial of Counsel (Ground 13)

V) Defective Charge (Grounds 14, 15, 16, 17, 25, 41, 42, 46)

W) Defective indictment (grounds 15, 22)

X) Court of Appeals error (grounds 15, 28, 30, 45, 48)

Y) Attorney/Judicial Misconduct (Grounds 20, 21, 43)

Z) Judicial misconduct for Failure to Report Attorney (Grounds 20, 43)

AA) Breach of agreement between state and defendant (Grounds 24, 29, 35)

BB) Failure to disclose "Recant Statements" (Grounds 27)

CC) Right to be Heard Clause (Grounds 31)

DD) Right to Examining Trial (Grounds 31)

EE) Violation of Protective Order #3 (Grounds 32)

FF) No Jurisdiction (Grounds 38)

GG) Perjured Testimony at Trial (Grounds 39)

HH) Refusal to Grant Mistrial (Ground 47)

II) Payment of Court Costs/Fines (Ground 48)

JJ) Juxtaposition (Ground 49)

69

## III. NECESSITY FOR AN EVIDENTIARY HEARING & EXPANSION OF THE RECORD.

If the Court decides to consider this application on the merits, the record needs to be expanded, only to the extent of obtaining affidavits from first trial counsel, Mike Lewis, from trial counsel Tim Cone, and from appellate counsel Lew Dunn with any documentation needed to support their affidavits. Perry need **NOT** be brought back to Gregg County for such expansion.

## V. CONCLUSION

The State prays that Applicant be denied relief because his habeas application does not comply with the instructions for one issue per ground for relief and one, two-page set of facts per ground.

Respectfully submitted,

CARL DORROUGH
Criminal District Attorney
Gregg County, Texas

By: _____
Zan Colson Brown
101 East Methvin, Suite 333
Longview, TX 75601
(903) 236-8440
SBOT No. 03205900

70

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing "State's Response to Applicant's Writ of Habeas Corpus" was on June 23, 2015, given to the District Clerk of Gregg County, Texas, to be mailed to MICHAEL DEAN PERRY, # 1838827, Ellis Unit 1697 FM 980, Huntsville, Texas 77343.

By: _____
Zan Colson Brown, Assistant District Attorney

71

# APPENDIX B

72

FILED
GREGG COUNTY, TEXAS

JUN 23 2015

BARBARA DUNCAN, DISTRICT CLERK
BY _____ DEPUTY

NO. 42,139-A-H-1

| | | |
|---|---|---|
| EX PARTE | § | IN THE 188th DISTRICT COURT |
| | § | |
| | § | IN AND FOR |
| | § | |
| MICHAEL DEAN PERRY | § | GREGG COUNTY, TEXAS |

## ORDER

Having considered the applicant's Application for Post-Conviction Writ of Habeas Corpus, the State's Answer, without ordering affidavits from trial or appellate counsel, the Court finds that the application should be returned to Perry for failure to comply with the instructions on the form.

The clerk of this Court is directed to return the documents Perry submitted to MICHAEL DEAN PERRY, #1838827, Ellis Unit 1697 FM 980, Huntsville, Texas 77343.

SIGNED ON June 23, 2015

_____
Judge Presiding

73

1

# APPENDIX C

Case No. 42,139 A -W-1

(The Clerk of the convicting court will fill this line in.)

FILED
GREGG COUNTY, TEXAS

JUN 1 5 2015

8.41 O'CLOCK A M
BARBARA DUNCAN DISTRICT CLERK
BY DEPUTY

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: _Michael Dean Perry_

DATE OF BIRTH: _October 22, 1959_

PLACE OF CONFINEMENT: _Eastham Unit_

TDCJ-CID NUMBER: _1838827_ SID NUMBER: _____

(1) This application concerns (check all that apply):

☑ a conviction ☐ parole

☐ a sentence ☐ mandatory supervision

☐ time credit ☐ out-of-time appeal or petition for discretionary review

(2) What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

_188th State District Court, Gregg County_

(3) What was the case number in the trial court?

_42,139-A_

(4) What was the name of the trial judge?

_David Brabham_

(5)     Were you represented by counsel?  If yes, provide the attorney's name:

Timothy Clifton Cone (State Bar No. 0460350)

(6)     What was the date that the judgment was entered?

February 28th 2013

(7)     For what offense were you convicted and what was the sentence?
CT. I – Assault Family Violence With Prior Conviction     60 years
CT. II – Aggravated Assault With a Deadly Weapon          60 years 3G – Agg

(8)     If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count? CT. I – Assault Family Violence With prior Conviction 60 years

CT. II – Aggravated Assault With a Deadly Weapon 60 years 3G – Agg

2 X $10,000.00 Fines, $324.00 Court Costs, $500.00 Attorney fees !

(9)     What was the plea you entered? (Check one.)

☐ guilty-open plea              ☐ guilty-plea bargain
☑ not guilty                    ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

_____

_____

(10)    What kind of trial did you have?

☐ no jury               ☑ jury for guilt and punishment
                        ☐ jury for guilt, judge for punishment

2

76

Rev. 01/14/14

(11) Did you testify at trial? If yes, at what phase of the trial did you testify?

_No_

(12) Did you appeal from the judgment of conviction?

☑ yes                    ☐ no

If you did appeal, answer the following questions:

(A) What court of appeals did you appeal to? _Sixth Court of Appeals_

(B) What was the case number? _No. 06-13-00051-CR_

(C) Were you represented by counsel on appeal? If yes, provide the attorney's name:

_Lew Dunn (State Bar No. 06244600)_

_Affirmed Judgment, as Modified_
(D) What was the decision and the date of the decision? _August 15, 2014_

(13) Did you file a petition for discretionary review in the Court of Criminal Appeals?

☑ yes                    ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A) What was the case number? _PD-1209-14_

_Refused_
(B) What was the decision and the date of the decision? _1-14-2015_

(14) Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                    ☑ no

If you answered yes, answer the following questions:

(A) What was the Court of Criminal Appeals' writ number? _____

3

**77**

Rev. 01/14/14

(B) What was the decision and the date of the decision? _____

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

(15) Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes            ☑ no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes            ☐ no

If you answered yes, answer the following questions:     N/A

(A) What date did you present the claim? _____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4

78

Rev. 01/14/14

_____

_____

_____

_____

_____

(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

79

**GROUND ONE:**

Illegal Search and Seizure/Police Misconduct/Prosecutorial Misconduct/Failure To admonish Applicant and Victim of Rights

**FACTS SUPPORTING GROUND ONE:**

There was an immediate detention of Applicant by the officer when she arrived at the scene. Applicants back pack was searched and a steak knife was allegedly found in the back pack, Taken into evidence, and was potential evidence in the case. Appellant/Applicant contended That the back pack was illegally searched. The search of Applicants back pack was not disclosed to him until just Two days before his Trial. The Prosecutor and his court appointed Attorney, never disclosed the illegal Search and seizure previously. Nor did They disclose The illegal Search of his Home and The seizure of evidence from his Home until the day of Trial, Blind Siding Applicant with all of The enoneous obTained evidence at Trial. The Pictures of The inside of his home, The pictures of his niece, The

6

actual knife that was dropped by the Applicant during the altercation. Applicant was not read his rights and neither was the alleged victim or her friends. There was no recorded statement as required and none of the witnesses testified before the Grand jury! The Police lacked probable cause and failed to obtain a valid search warrant, never having produced a valid search warrant before, during, or even after trial. The Police never disclosed the fact that they searched Applicants Home and found the actual knife used to pick the bedroom door lock, and took it with them! Police and/or Prosecutors never produced a valid consent to Search Affidavit, signed by any resident of 513 West Broadway, St. Longview, Tx 75604. Prosecutor Misconduct and Ineffective Assistance of Counsel and Misconduct, or a disability, or both, for failing to disclose to Applicant the illegal search and Seizure!

7

Rev. 01/14/14

**GROUND TWO:**

Evidence was legally insufficient because the State failed to prove that the victim suffered and bodily injury as alleged in Count I

**FACTS SUPPORTING GROUND TWO:** Ineffective Assistance of Counsel

The victim testified under oath that she did not suffer any physical pain, only emotional. She also testified that her uncle, the Applicant did not threaten her with a knife, Period. Applicants Attorney raised this very point at trial and moved for a Directed Verdict of acquittal. The State even abandoned Paragraph A of Count II because they couldn't prove any bodily injury, That effectively negates bodily injury in Count I. Stands to reason that if the State couldn't proved bodily injury as alleged in Count II, paragraph A, Then by the same evidence, legal and factual evidence, the State failed to prove bodily injury in Count I. However, the State had no choice but to continue to claim bodily injury in Count I, Whereas, you must prove bodily injury to elevate AFV to a 3rd degree felony or else the Court lacks Jurisdiction!

8

**GROUND THREE:**

No Hearsay permitted / No notice of pending charges of victim / No recorded Statement / No informed consent to Search Home

**FACTS SUPPORTING GROUND THREE:**

Applicant was immediately arrested and restrained of his liberty in his driveway. Was not mirandized and neither was the victim. Applicant was immediately searched and his back pack too, then taken away by Police to prevent them from objecting to the illegal Search of his Home. Applicants niece did not give an informed consent to Search Applicants Home, in fact, she adamantly refused to give a recorded statement, however, Police continued to badger her and the other witnesses to give a statement to the point of intimidation and fear of arrest. Applicants niece in fact had pending Felony charges and was under indictment. There was no excited utterance. The victim was in fear of being arrested. She had plenty of time for calm reflection before Police arrived

10

83

Rev. 01/14/14

The statement written by Police Officer Nikkie Williams is considered hearsay and therefore not admissible. There was no recorded statement as required by law. Applicant was never given notice of the pending charges and indictment of the alleged victim only received the copies thereof some two years later in his prison cell from Tanya Reed the Prosecutor yet another Brady violation. See also Wilma McKinney's Affidavit included herewith as an exhibit. Ms. McKinney was prevented from testifying at Trial during guilt or innocence, if called to testify, she would have confirmed that her niece was not hysterical, that she had no injuries, and that she did not witness an assault and did not give an informed consent to search to Police, that Officer Nikkie Williams picked up the black handled kitchen knife Applicant dropped in the Home and took it with her. This action contaminated the crime scene. No chain of custody Williams filed a false Police Report and not until November 5, 2015 See Alannas Indictment Deferred Adjudication Judgment Adjudicating Guilt Exhibit # 5

Exhibit # 32 Reads Affidavit

**GROUND FOUR:**

Police Misconduct / Ineffective Assistance of Counsel / Illegal Search and Siezure / Prosecutorial Misconduct / Denial right of Confrontation

**FACTS SUPPORTING GROUND FOUR:**

Right after Applicant was restrained of his Liberty, Police search his person, back pack, and home without a valid Search Warrant or Probable Cause. An alleged steak knife was allegedly found in his back pack, however, Prosecutors used a demonstrative knife at Trial erroneously. Trial Counsel failed to make a proper objection in its use as according to the Government preserving no error. There was no sound Trial Strategy at work, only incompetence. Just two days before Trial Attorney Tim Cone came to Appellants jail cell to show him a Lap Top Computer video of the Police Searching his back pack. However, the computer mysteriously Malfunctioned and Applicant never saw Police remove a knife from his back pack. Only the word of Mr. Cone and Prosecutors (If they can be believed) After all, Not Mr. Cone or Prosecutors ever disclosed the illegal Search of Home or back pack, and the fact that Nikkie Williams retrieved the actual knife that Applicant dropped and took it with her contaminating the crime

12

scene, breaking the chain of custody. And then accusing him of taking the knife and stowing it in his backpack, with absolutly no evidence to support that naked allegation. There was no chain of custody affidavit filed in the case, period. The state never produced the actual knife. This comes dubious and erroneous deal with the Prosecutor made sure that the Applicant could not cross-examine adverse witnesses - Police that searched his home and backpack. Or even examine the alleged steak knife, the one the Police took from his home. That was the whole point of the erroneous deal Tim Cone made with the Prosecutor. Tim Cone knew all along about the illegal Search and Seizure, he just didn't tell his client. The Applicant Tim Cone deliberately failed to file the Motion To Suppress evidence 10 days before Trial, using subterfuge and lies to coerce Applicant into excepting his erroneous and disastrous deal with the Prosecutor whom committed misconduct. See Wilma Mckinneys Affidavit #3 There was no Search Warrant or Consent and Police took the knife with them!

13

86

Rev. 01/14/14

**GROUND:** Five

The Evidence was legally and Factually insufficient to prove That the victim was placed in Fear of bodily injury, or That the Knife used was a deadly weapon

**FACTS SUPPORTING GROUND:** Five

The State Failed to prove That The Knife, demonstrative or otherwise was a deadly Weapon, even Considering the Fact That the demonstrative Knife had absolutely no Connection to the alleged crime. The only witness That said the Applicant pointed a Knife at the victim was the black girl Dajuntae and she was caught lying on the witness stand several Times. She also assaulted the Applicant at his own home previously a week before Trial, but Police didn't arrest her. She was criminally Trespassing because she and Chase Neal were Warned Not to return, They were still Not arrested. The victim and the other Two witnesses Testified under oath That Applicant never Threatened the victim with a Knife or point a Knife in her direction. However, Tanya Reed inflamed the jury by Thrusting the demonstrative Knife at the victim in order to get a reaction from the jury. Ms. Reed repeatedly led the jury to believe That the victim was lying in order to protect

14

87

Rev. 01/14/14

her Uncle the Applicant from going to prison. The witness that left before Police arrived, whose identity was never disclosed, would have testified that it was the victim that initiated contact with the Applicant by assaulting him and shoving him, that Applicant only used self defense to protect himself. The victim has submitted a sworn affidavit stating as much. Applicant actually submitted the affidavit with a motion for New Trial. The actual knife Applicant used to pick the lock remained on the floor where he dropped it until Police picked it up and took it with them. Jennings was not included in the expert witness list and he was a defendant in Perry's Civil Rights Lawsuit, a conflict of interest. Jennings never testified that the actual knife or demonstrative knife was a deadly weapon, considering they were using the wrong knife, denying Applicant a fair and impartial trial and submitting false testimony to the Jury. See Wilma McKinney's Sworn affidavit, she was an eye witness too, and was prevented from testifying at Count I Innocence trial. Exhibit #2B Designated Expert Witness List.

15

88

Rev. 01/14/14

Ground: 6 Ineffective Assistance of Counsel / Prosecutorial Misconduct / Denial of Due Process / Malicious Prosecution / Erroneous Admitted Evidence / Discovery Violations / Brady Violations / Witness Tampering.

Facts Supporting Ground: 6   The Jailhouse phone: (States Brief p. 12 and 19)
In a telephone call with Perry while he was in jail, Alanna told him, I'm going to tell them that you used the knife not to come at me but just to try to get into the door (5 RR 128)(Page 12) Alanna's testimony can be discounted because she told Perry in a phone call recorded by the jail that she was going to try to help him any way she could when she testified. She also told him in the same phone call that she would testify that he used the knife not to come at me but just to try to get into the (locked) door (5 RR 160) She testified she didn't want their uncle being incarcerated for "25 to life". The Real Truth.

Appellant maintains that Alanna has been trying to tell the truth for 2½ years, even from the very beginning. Even trying to dismiss the erroneous charges, of which will be addressed further and in more detail in the next grounds. Prosecutorial Misconducted and Malicious Prosecution has prevented the truth from being told from the start and continued on Appeal. Whereas, Appellant filed a grievance with the State bar of Texas on Tanya Reed, using, of all things, excerpts from his Appellate Brief, the ground of Prosecutorial Misconduct "With no additional information". (Emphasis added) Certainly not the issues concerning the Jailhouse phone call because it was never admitted into evidence. The Appellant was never provided a transcript of that Jailhouse phone call preventing Appellant and his Appellate Attorney from raising error on Appeal, direct or habeas corpus. Notwithstanding the fact that there is no recording or transcript in the record, that doesn't stop States counsel on Appeal from using it in the States Brief p. 12 and p. 19, Supra. Whereas,

(Grievance # 201403874 )(Exhibit # 32A)

89

1 of 2

Tanya Reed was ordered by the state bar to respond to the complaint with an Affidavit. As according to Mrs. Reeds Affidavit, she states that Zan Brown only uses an excerpt from that phone call! Additionally, Mrs. Brown only using portions of that phone call in an effort to prove culpability on the part of Perry! Completely changing the colloquy of our conversation, completely omitting Appellants side of the conversation and portions of Alannas conversation. There are certain precepts that have to be adhered to before admissibility. (1) a showing that the recording device was capable of taking the testimony (2) a showing that the operator of the device was competent (3) establishment of the authenticity and correctness of the recording (4) a showing that changes, additions, or deletions have not been made (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntary, and was made without any kind of inducement. And again, Tanya Reed admits tacitly that she committed even more misconduct, even though she ingenuously pins the blame all on Zan Colson Brown. Tanya Reeds Affidavit is replete with false statements and assertions and not just about the jailhouse phone call, but her use of the demonstrative knife as well! Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is effected. It was Tim Lones job to object to the jailhouse phone call, not Appellants remember, No Hybred representation, furthermore, there was an Emergency Protective Order filed in the case, No. 132-EPO-12 of which Appellant signed on 10/17/2012 in effect for 61 days! It is not clear of the exact date of the jailhouse phone call because Appellant was never provide a copy. What is clear from Tanya Reeds Affidavit is that she adamantly states to wit: I did not violate any emergency protective order. "No" emergency protective order has ever been issued/entered prohibiting me from doing anything (Emphasis Supplied) I did not encourage anyone to violate any protective order (Exhibit #32)(EPO Exhibit #3)

(Complaint letter Exhibit #31)                    2 of 2

Ground: 7  Police misconduct/Prosecutorial misconduct/Illegal Search and Seizure/No Exigent Circumstances under Emergency Doctrine/ Ineffective Assistance of Counsel/Inadmissible Evidence

Facts Supporting Ground: 7  The reason Tim Cone and Tanya Reed did Not want a Pre-Trial hearing to Suppress illegally obtained evidence is because at the Suppression hearing, Appellant would have shown that there was no exigent circumstances under the emergency doctrine to justify the Search of Appellants person, personal property, or his Home'. Police had Not established Probable Cause and they had No Search Warrant, and/or arrest warrant for Appellant. No one was in need of emergency help, No one even needed First Aid, Period'. Police Officer, Nikkie Williams immediately arrested Appellant who was just walking down his driveway'. The alleged victim did Not immediately alert Police when they arrived that Appellant assaulted her'. Only after Appellant was already restrained of his liberty, did the black girl make the false accusation that Appellant assaulted his niece'. Appellant avers that at an Examining Trial or Suppression hearing, if it got that Far, he would have learned that Police not only Searched his back pack without a warrant, but his Home as well! That the Police picked up "THE KNIFE" Appellant dropped in his Home and took it with them, never disclosing this fact before, during, or after Trial'. Appellant may have also learned (Emphasis on the may part) that Police took all those pictures of the victim and the inside of Appellants Home'. Applicant maintains and avers that he was immediately arrested and placed in the back seat of the Police car, No longer a threat'. Police allegedly found "THE KNIFE" in the Appellants back pack and removed a box cutter and innocuous pocket knife from Appellants pockets, effectively eliminating any perceived exigent circumstances, negating the facts stated in Nikkie Williams Probable

91

Cause Affidavit That wasn't even written or filed until the following day! Just like the Police Report, That was Not printed until 21 days later on November, 5, 2012! Furthermore, Since the alleged victim and all of her friends knew that Appellant had dropped "THE KNIFE" in the Home, That also removed any threat! Tanya Reed told all the witnesses right before Trial That Police found "THE KNIFE" in Appellants back pack, Showing the witnesses the "ersatz" Knife right before Trial! Convincing the witnesses and the jury That Appellant Tried to hide the weapon used in the alleged assault in his back pack in order to justify his immediate arrest without a warrant and to prove Culpability! Appellant would have also Shown That The alleged victim was Not Hysterical and That She had no injuries! That Police used intimidation and Coercive environment to Compel the alleged victim to give a statement, take all those pictures, and to enter Appellants Home without Consent or a valid Search warrant! Once the Police determined that nobodys injured and there is nothing in danger at That point, The Police should cease and disist with their illegal Search and Seizure. The Police and Prosecutors used SubTerfuge in order to justify violating Appellants Due Process Rights and Constitutional Rights, exponentially! Considering the aforesaid, its No Wonder That the Courts, Appellants Court appointed Attorney, and the Prosecutor didn't want an Examining Trial, and or a Suppression Hearing! They all knew about "THE KNIFE" and long before Trial! Everyone did their best to Cover up the misconduct! Even Lew Dunn knew about the illegal Search of Appellants Home and the Police Taking the "Real KNIFE" with Them, See Appellants Reply Brief pages 1 through 3 How else would Appellate Counsel know this? The Eye Witness, Wilma McKinney knew it. So did the witness That left before Police arrived Thats another reason They didn't want a Private Investigator! Fruit of the Poisonous Tree!

92

2 of 2

Ground: 8  Ineffective Assistance of Counsel/Police Misconduct/
Illegal Search and Seizure/Prosecutorial Misconduct/ Denial of Com-
pulsory Process for obtaining witnesses in his favor/ Denial of Right of
Confrontation of adverse witnesses/ Failure to Hire Private Investigator
Facts Supporting Ground: 8

Unbeknownst to Appellant, his 81 year old Mother, Wilma Mckinney, was
prevented from testifying at Guilt/Innocence phase of Trial, only called to test-
ify at punishment phase. Nikkie Williams only refers to her at Trial as the Old
Woman, never mentioning her name. Appellant had No idea that this Mother was
going to testify. Tim Cone told Wilma Mckinney Not to engage the jury. Indeed,
If Wilma Mckinney had been called to testify at Guilt/Innocence, and asked
the proper questions (Something Tim Cone was incapable of doing- failing to make
the proper objections-) Mrs. Mckinney would have testified that Police never
provided a valid Search Warrant to Search her home, the same home where the
Appellant resides. Police did Not advise her or her Granddaughter, Alanna, the
alleged Victim, that they were not required to permit the search. Whereas, to
be valid, a consent to Search must be positive and unequivocal and must
not be coerced, by explicit or implicit means, by implied threat or Cov-
ert force. Consent not established by showing no more than acquiesc-
ence to a claim of lawful authority. At Trial, Wilma Mckinney would
have testified that Police Officer, Nikkie Williams, and another unnamed
Police officer, Searched the purported victims bedroom, where the knife was
dropped during the altercation, picked up "THE KNIFE" and took it with them.
Wilma Mckinney would have testified that the Police took all those pictures
of the bedroom door and her Granddaughter. That this all occurred on October
16th, 2012 the day after Appellants unlawful arrest. Plenty of time to obtain
a valid Search warrant- No exigent Circumstances. Mrs. Mckinney would

93

10 ⌐

have also testified that her Granddaughter did not have any injuries. That she was not shaking, crying, or hysterical. In fact, she was of sound mind. Also, that she did not witness an assault. See Wilma McKinney's sworn and notorized Affidavit Exhibit #3. She would have further testified that she was the one that told her son to make the two black people leave her home. That they secreted themselves in Alanna's room by again climbing in the bedroom window that Appellant previously nailed shot - to prevent these same druggies from sneaking in her home. Mrs. McKinney would have also testified that the two black people, Chase Neal and Oajuntae Johnson previously assaulted her son for trying to make them leave. They were in fact, Criminally Trespassing. That there was another witness there that left before police arrived and he would have testified that Appellant did not assault this niece, nor was she hysterical, nor did Appellant threaten his niece with a knife, its use was innocuous, used only to pick the lock. He would have testified that it was Alanna that initiated contact with Appellant, that he only defended himself. Court Appointed Attorney, Tim Cone failed to hire a Private Investigator in order to seek out and interview witnesses. And secure their testimony. He failed to subpoena the other Police Officers to testify at trial. For that matter, so did the Prosecutor, Tanya Reed. Appellant maintains and avers that he has a fundamental right to obtain witnesses in his favor - Compulsory process. Also, to confront the witnesses against him - Confrontation - to Impeach their testimony. Face his accusors. Appellant timely filed pro se Motions for Examining Trial and for a Private Investigator. Appellant was not represented by Counsel at the time and tried to represent himself. There was no hybrid representation at the time of the request for an Examining Trial. Appellant even filed Copies of said Motions with a Writ of Mandamus in the Texas Court of Criminal Appeals.

94

2062

Ground Nine: 9    Police Misconduct!

Illegal Search and Seizure/Prosecutorial Misconduct/Demonstrative Knife-
Legally insufficient Evidence/Ineffective Assistance of Counsel/
Failed to Preserve Error at Trial/No Chain of Custody

Facts Supporting ground nine: 9

Several issues in the appeal concern the use of a demonstrative knife by the state. The record seems to show our assumption that the knife that was the subject of an illegal search of Applicants back pack was the knife used in the incident. The witnesses identify the demonstrative knife as "similar" to the one purportedly held by Applicant. All of their testimony is, however, tainted by the fact that the state, Tanya Reed, showed each of them the "ersatz" knife, before trial, and asked them if it was similar to the knife used during the altercation. Isn't that called "improper suggestion"? If it were a lineup, the identification testimony would be thrown out. See, the prosecutors acknowledgement of suggestion: But I have shown them this and asked them if it looked similar to- similar in size, shape, and color to the one that they saw Mr. Perry had that particular night. No offer of several different knives and asking them to see which one might be similar. None of that. Objective? Scientific? Rational? Seeking the truth? Lacking in all of that. Mrs. Reed even violated the agreement not to show the knife to the witnesses! A reasonable inference from this is that "THE KNIFE" was actually seized at the scene by investigators, but that its characteristics and proportions (butter knife) made it a less-than deadly looking instrument. Was the state's case made easier with the knife found in the back pack? And, consequently, with the "ersatz" demonstrative knife? ("Subterfuge") All of this undermines the states efforts (1) to say that the evidence was legally sufficient on the assaultive conduct and deadly weapon, (2) to say that there was no error in using the demonstrative

P.22 Exhibit #13 Motion to Suppress. Exhibit #3 Wilma McKinney Affidavit
P.1062

95

Knife, (3) To claim That the charge was not deficient, (4) That There was no ineffective assistance of counsel, and (5) To conclude That the prosecutor did not commit misconduct. In each instance There is a valid, underlying uncertainty That The demonstrative knife was a replica of "THE KNIFE". Consequently, The States insistence of The verity of That resemblance and replication Skates on Very Thin ice, indeed. In fact, The ice is so Thin and insubstantial That The weight of The problem is sufficient To crack The ice and send it all down into icy confusion - lead To insufficient evidence, in fact, No evidence, failure of The demonstrative Knife to actually correspond to "THE KNIFE". Consequently, The entire Trial is Tainted by The lack of "THE REAL KNIFE".

Notwithstanding The facts as outlined in grounds 1. Through 4. As previously alleged by Applicant There was in fact an eye witness That witnessed Police pick-up The knife Applicant dropped in The house and Take it with Them! It Takes No Stretch of The imagination to believe That a competent jury would believe The word of an elderly Grandmother, with No criminal history, over The word of Police, who have a history of committing misconduct - Civil Rights Violations! Its No wonder The State and Applicants Court appointed attorney didn't want To disclose The illegal search and seizure and The fact That Police found THE KNIFE in Applicants Home! They all used Subterfuge To cover This up! Thats also why They only had The Grandmother, Wilma Mckinney Testify at The punishment Stage and Not during guilt/innocence! They were scared to death That She would disclose The Truth! The Prosecutor and Perry's Court appointed attorney covered up The facts about "THE KNIFE from The very beginning! Perry was blind sided with all of This at Trial!
Fruit of The Poisoneous Tree Doctrine! Exclusionary Rule!

Ground: 10 Ineffective Assistance of Counsel/Defective Indictment/ Prosecutorial misconduct/Abuse of Discretion/Double Jeopardy/ Legally and Factually Insufficient Evidence/Doctrine of Carving Facts Supporting Ground: 10 Not only did Appellants dubious Court appointed Attorney, Fail to Timely request and obtain a Pre-Trial hearing on a Motion to Suppress Evidence, having excepted the dubious word of the Prosecutor to Suppress evidence, only to renege on that deal at the beginning of Trial, but both court appointed attorney's, Michael B. Lewis and Tim Cone, failed to object to the erroneous-defective indictment that on its face alleged a crime or crimes in Two Counts with paragraphs that violated the Double Jeopardy Clause! Furthermore, the State amended the indictment during Trial on the merits without a Continuance or objection from Counsel! Whereas, after notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the Trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant to respond to the amended indictment or information. A matter of form or substance in an idictment may also be amended after the Trial on the merits commences if the defendant does not object. An indictment or information may not be amended over the defendants objection. (Emphasis Supplied) as to form or substance! If The amended indictment or information charges the defendant with additional or different offense or if the substantial rights of the defendant are prejudiced. All amendments of an indictment or information shall be made with leave of the court. Appellant avers that the State failed to prove that Appellant caused bodily injury to A. Mckinney by hitting her, A. Mckinney, with his hand as alleged in Count II paragraph A., (Exhibit #13 Motion to Suppress) (Appellants Indictment Exhibit #55)

1 of 2

97

So The State abandoned it during Trial, but not The other allegations in Count II, paragraph B, or The bodily injury alleged in Count I. The State only abandoned The bodily injury in Count II, paragraph A after Tim Cone moved for a Directed Verdict of Acquittal, citing No bodily Injury. However, The State, after being alerted to The defect and to avoid Double Jeopardy; failed to also abandon bodily injury in Count I. Whereas, in order To elevate assault Family violence to a 3rd degree Felony, you have to prove bodily injury. Then to enhance That to 2 to 20, using a Subsequent prior conviction. Which is also a Violation, Two enhancements using The same charge in one Trial. The gravamen is still The misdemeanor assault on both Counts Constituting Double Jeopardy. Since the Appellants dubious Court Appointed Attorney failed to object to the amended indictment and lack of Notice, he failed to preserve error. There was No Sound Trial Stradegy at work here. This fact is made even more clear by The fact That Appellate Counsel raised Double Jeopardy Violation in his Motion for a New Trial; but failed to alleged ineffective counsel. (See Courts Opinion.) Both Count I and Count II, A allege The very same Conduct. Intentionally, knowingly, or recklessly cause bodily injury to A. Mckinney by hitting A. Mckinney with his hand. Appellant avers That it stands to reason That Since The State failed to prove bodily injury as alleged in Count II, paragraph A, Then by The very same evidence, against The same person, The State also failed to prove bodily injury in Count I as well. The evidence was Legally and factually insufficient to Sustain The conviction on both Counts. There was No Sound Trial Stradegy or Appeal Stradegy at work in regards to ineffective Assistance of Counsel. The Court abused its discretion by allowing The State to amend The indictment after the Trial on The Merits began. Oh, Thats right, the Court also amended the Courts charge in The middle of Trial as well. Heavy as an engine block, sharp as a razor. See Exhibit #56 Doctrine of Laxing Pg 7969 Exhibit List No. 56

Ground: 11    Ineffective Assistance of Counsel / Prosecutorial Misconduct /
Abuse of Discretion / Ineffective Assistance of Counsel on Appeal / Denial
of Fair and Impartial Trial / Denial of Right of Appeal

Facts / Grounds Supporting Ground: 11    A continuance or postponement may be granted
on a motion of the State or Defendant after the Trial has begun when it
is made to appear to the satisfaction of the Court that by some unexpected
occurance since the Trial begun, which no reasonable diligence could
have anticipated, the defendant is so Taken by surprise that a fair and
Impartial Trial cannot be had. (The breach in Agreement of Demonstrative
Knife) Whereas, there was reversible error because of Prosecutorial Misconduct when counsel for the State, Tanya Reed, without the required (5) five
day Notice (In Limine) to Appellant and after jury selection and the parties
were ready to begin evidence, repudiated the agreement of the parties
to suppress any evidence of a knife and showing the knife to the witnesses before Trial. Appellant, by his Court appointed dubious counsel, had reached what he believed to be an agreement about the knife and recited it
to the Court. Then "Startling" News comes from Asst. District Attorney Reed.
Kings X, there is an agreement - but Not really. Even the cold record does
not mask the surprise of Appellants counsel, struggling to comprehend
this unexpected reversal or just good acting. Without giving any rationale of why she thought the demonstrative use of a knife would now
be acceptable (in defiance of established law on the use of an object
for demonstrative purposes) Ms. Reed proceeded to represent to the Trial
Court that this was acceptable; in one blow she (a) blatantly undid the
agreement with defense counsel and his client on important discovery
and evidence and (b) was less than candid with the Trial Court in her reason
for doing so. Both acts are Prosecutorial Misconduct and grounds for

reversal of the conviction. Appellant had a right to a fair trial free from prosecutorial bad faith and ineffective assistance of Counsel, even on Appeal. Trial Counsel failed to file a motion for a continuance so that he could frame a defense, even failing to make the proper objections. Appellant contends that the actions of the prosecutor in the case at bar contributed to denial of a fair trial in several ways. First, she unilaterally, and without any notice whatsoever, to Counsel for Appellant, reversed the states agreement about suppression of the knife. Certainly, the role of the trial court here would necessarily be an extension of the procedure for the resolution of a pre-trial motion to suppress. Once the parties made an agreement concerning evidence, that agreement stands in place of an order from such a hearing and would not permit unilateral amendment without due notice. If there was going to be a change in that agreement, then Counsel for Appellant was entitled to reasonable notice, (5) days, so that he could frame a defense. To permit the state to do so was an abuse of Discretion by the Trial court. Standard of review is abuse of discretion. Trial Court abused its discretion permitting the use of a demo knife and permitting the state to go forward without proper notice. States Counsel violated the Disciplinary Rules in that she abrogated her agreement about the motion to suppress. She compounded her troubles by not being forthcoming with the Trial Court about controlling precedent. She also failed to disclose controlling authority that was directly adverse to her position. The basis for Ms. Reeds use of the demonstrative knife was frivolous, and in light of precedent, there was no basis in law for her to go forward with that claim. Appellants Counsel on Appeal failed to make the proper arguments in Appellates brief, whereas, the grounds on appeal do not comport with the objections made at trial. Preventing the Courts review.

100

2 of 2

Ground: 12    Ineffective Assistance of Counsel at Trial and on First Appeal / Prosecutorial Misconduct / Error Was preserved / Police Misconduct / Illegal Search and Seizure / Abuse of Discretion

Facts Supporting Ground: 12   The state and the Court of Appeals contend that Appellant, Perry, by and through his Court appointed Trial Counsel failed to preserve error by not making the proper objections at Trial on, inter alia, the issue of the use of the "ersatz" Knife and the breach of agreement regarding the "ersatz" knife and the alleged knife seized from the backpack. The Court of Appeals even faults Appellate Counsel for failing to make the proper objections on Appeal. This, therefore, concedes the point of ineffectiveness of Counsel at Trial and on Appeal. It also tacitly concedes the point of prosecutorial misconduct. However, the state, and the Court of Appeals, mischaracterizes what was occurring in the Trial Court during those moments (VRR 9-11). Appellant, by his dubious Counsel, had reached an agreement with the state about the Knife allegedly found in the backpack. Of which Perry has yet to be provided with a Copy of this "so called" agreement, even after 2½ years of filing for Discovery. No witness statements, no Amended copies of indictment or Courts charge, etc, etc. Whereas, the knife would not be introduced into evidence at Trial and there would be no mention of it period. Thats what Tim Cone told Perry. Both the state and Tim Cone say they knew that "the knife, or rather, "a knife was available - that it presumably existed somewhere in the property room of the Police Department (Nikkie Williams locker) or in the exhibit room with the District Attorney or the States investigators home. (However, the alleged knife was never shown to Appellant Perry and presumably his Trial Counsel) why else would Appellant have objected to its admissibility? All of those so

called and supposed "failed objections" were subsumed into the motion to suppress, a motion whose points had been agreed to in the parties supposed agreement, now breached by the State! Tim Cone never told Appellant that they agreed to still be able to discuss the knife! Appellant was blind sided with all of this at this erroneous trial, even the illegal search of his home! Of course, if all of the aforesaid is not so, then the State has seconded the claim of ineffective counsel and confessed error on the point! The deciding factor at that time was that the purported original knife - that is, the one allegedly taken by an unnamed police officer from the Appellants back pack - was certainly not missing or lost, it had been agreed as Inadmissible, Period! The egregious problem with the "ersatz" knife or real knife, was that the State, Reed, and Trial Counsel, Cone had an agreement and the State, Reed, unilaterally and ingenuously breached the agreement, knowing all along that Police picked up THE REAL knife in Perrys Home and took it with them! The Fourth Amendment was very much in play! Appellant Perry, never waived his rights to suppress the knife, or if the State and Court of Appeals now contend that somehow that happened and Perrys dubious Trial Attorney failed to make that this Trial objection, then the ineffective assistance of counsel claim has just been bolstered by the Trial Court and Court of Appeals! The State would have been lost without its stage prop! Reed constantly used the "ersatz" knife in the evidence phase and during argument, even making thrusting motions towards the victim in front of the jury! How could it not be harmful? The State and the Court of Appeals are wrong! There was Police misconduct, Prosecutorial Misconduct and Appellant was denied effective assistance of counsel at Trial and on his first Appeal as of Right! The evidence at Trial should have been in all, suppressed under the Exclusionary Rule as fruits of the Poisonous Tree.

Ground: 13 Illegal Search and Seizure/Arrest Without a Warrant or Probable Cause/No Notification of Charges/Denial of Due Process/Denial of Counsel/Wrongful Conviction/Abuse of Discretion/Prosecutorial Misconduct/Brady Violations

Facts Supporting Ground:13 Appellant Perry was arrested without a warrant and without probable cause on October 15th, 2012 His person, personal property, and Home were searched and evidence seized without a valid Search warrant and probable cause, and used against him at a subsequent trial, and even without a trial. Whereas, according to Jail records - Classification form, obtained by and through civil discovery, and an Request/Grievance form, exhibits #B and #2, Appellant obtained through Jailers, Appellant was arrested again on October, 29th, 2012, and charged with a Misdemeanor, Possession of Drug Paraphernalia, bail was set at $500.00 (Appellant never posted bail) at some point after his subsequent arrest, Appellant was tried and convicted of said offense and granted time served with 13 days credit. All without even having been appointed an Attorney, or having made a court appearance on this specific case, see; Magistrates Warning exhibit #4 A (No Attorney; No P.O.O.P.) you could search the court records in vain to find Perrys signature of where he entered a plea of guilty on this charge 'Signed for 13 days credit for Time Served.' Why on earth would I? Notwithstanding, the illegal Search and Seizure! Perry didn't sign up or plead guilty to any of the other erroneous charges! Not even the alleged interfering with an emergency phone call of which is listed as one of the erroneous charges - unless of course Appellant finds out later that he was tried and convicted of that too, in absentia! This is just another example of business as usual at the Gregg County Court House! There was in fact a Prisoners Civil Rights Suit pending against some of the witnesses who testified

at Appellants Trial to wit: Perry V. Cerliano ET AL civil Action No. 6:12 CV 825 U.S. District Court, Eastern District of Texas at Tyler. Expert Witnesses, William Jennings and LW Alexander, were also defendants in the Civil Rights Suit. Again, no where does it list the Possession of Drug Paraphernalia charge, Not on the Magistrates Warning; or the Police Report; or the Probable Cause Affidavit, No Where! (Emphasis Added) According to the record, Appellant was Not Mirandarized until after he was booked in. That he refused to waive his rights and answer questions without an Attorney. Police Officer Nikkie Williams: I spoke to a witness, who advised that she attempted to dial 911. She advised that the suspect Knew she was calling for help and took the phone away from her. However, in Complete contrast to what the same Police Officer said that the same witness told her - Which was stated at Trial and in the states brief, was that Perry punched her in the face, but it didn't hurt - didn't cause any pain. (Emphasis Supplied) Appellant was never charged with assault on Oquintae Johnson and its not listed as one of the Charges either! However, Nikkie Williams also states: I spoke to the Suspect, who was intoxicated. He advised that nothing happened! Appellant avers that he was never charged with Public Intoxication either; Never stopped them before! In fact, Perry has even been charged with Criminal Trespass at his own Home before, the charges were later dropped, but thats beside the point. The Conviction, erroneous as it was, for Possession of Drug Paraphernalia was never mentioned at Trial, Nor in the states brief! But Appellant being intoxicated and doing Cocaine sure the hell were, oh, and Pills of Some kind! And without an iota of evidence to back it up! Where did Super Cop, Nikkie Williams find the Drug Paraphernalia? In Perrys back Pack? Or Home? Where are the Pills? Where's the word Bitch on the Police Report? See Partial list of Defendants in civil Rights Suit exhibit# 25 Retaliation

2 of 2

Ground: 14 Ineffective Assistance of Counsel | Prosecutorial Misconduct |
Abuse of Discretion | Denial of Fair and Impartial Trial | Denial of Due Process |
Defective Courts Charge | No Notice Before Amendment

Facts Supporting Ground: 14

The Prosecutors and the Court amended the Indictment and Courts charge, and during the middle of Trial on the Merits without objection from appointed counsel and without a continuance! The State allegedly abandoned paragraph A of Count II, However, it is not clear if the state dismissed the entire paragraph or only the bodily injury portion of the paragraph, Whereas, the paragraph states to wit: Defendant did then and there intentionally, knowingly, or recklessly cause bodily injury to A. Mckinney by hitting A. Mckinney with his hand, and the defendant did then and there use or exhibit a deadly weapon to wit: a knife, during the commission of said assault; The Court amended the courts charge to reflect the amended indictment, presumably removing the entire paragraph, again, Appellant does not have a copy of the alleged amended Courts charge, even after 2½ years! Effectively preventing Appellant from raising points of error in sufficiency of the amended courts charge, even on the Writ of habeas corpus! Proper procedure to amend the courts charge to the jury is that the Judge of said court grant a continuance of its own volition in order that defendant has time to frame a defense! Failure of the Court to grant a continuance violated the substantial rights of the defendant and denied him a fair and impartial trial. Appellants dubious court appointed attorney failed to object to the amended courts charge or the lack of notice! There was No sound Trial stradegy at work here! However, Mr. Cone did make a motion for a Directed verdict of Acquittal, citing No bodily injury as alleged on both counts on the indictment and as reflected in the courts charge to the jury! And before the Amendments! Whereas,

105

The Indictment and Courts charge did in fact violate defendants rights against double jeopardy, even after the erroneous amendments! By alleging the assaultive conduct to the very same victim and during the same Time Frame! And on both Counts. Once the State and the Court were alerted to the double jeopardy error and the lack of injury or a deadly weapon and This was made a part of The Trial record, they amended the indictment and Courts charge during the middle of Trial without a Continuance or an objection by Trial counsel, Appellate counsel also failed to make the proper objections on Appeal, as reflected in the Court of Appeals opinion! However, abandoning bodily injury in Count II paragraph A does not defeat double jeopardy! The underlying assault is The gravamen of the double jeopardy violation, That was to have been committed to the same victim and at The same Time! (What the Court could have charged, does not factor into a reviewing Courts determination, and cannot serve as a basis of a double jeopardy violation - Court of Appeals Opinion! Indeed!!) Amending the Indictment and the Courts charge in The middle of Trial violated Appellants Substantial due process rights, exponentially! Failure of Court appointed Trial Attorney to file a Motion to Quash The defective indictment before Trial on Double Jeopardy Grounds, and or in Sufficiency grounds was not based on sound Trial Stradegy! Had the defendants Court Appointed Attorney called attention to the governments defective indictment, The state and The Court Would have only been able to charge the defendant with a Class A Misdemeanor with No enhancement, Furthermore, the Court would have lacked jurisdiction. The subsequent Imposition of Two 60 year Sentences for the very same offense is prejudice, pure and simple! A reasonable probability That, but for Counsels unprofessional errors, The results of the proceeding would have been different; reasonable probability is a probability Sufficient to undermine confidence in the outcome! But a defendant need Not show That Counsels deficient conduct more likely than Not altered the outcome in the case! Appellate Counsel Failed to make proper objections!

2062

106

Ground: 15    Ineffective Assistance of Counsel | Defective
Indictment | Courts Charge Error | Prosecutorial Misconduct |
Double Jeopardy | Abuse of Discretion | Appeals Court Error |
Doctrine of Carving

Facts Supporting Ground: 15    Although a defendant has the burden
to preserve, in some fashion, a double jeopardy objection at or before the
time the charge is submitted to the jury, a double jeopardy claim may be
raised for the first time on Appeal, or even the first time on collateral
attack when (1) the undisputed facts show the double jeopardy violation is
clearly apparent on the face of the record, and (2) enforcement of usual
rules of procedural default serves no legitimate state interest. To be sure,
Counsel was ineffective for not moving to Quash Indictment on Double Jeopardy
grounds, the same could be said for the Courts Charge. Notwithstanding the
fact that the State amended the indictment in the middle of Trial without
objection from Counsel and the Court amended the Courts Charge also with-
out objection from Counsel, and in the middle of Trial on the merits without
granting a continuance however, the Double Jeopardy error was not cured.
However Appellate Counsel raised Double Jeopardy in Motion for New Trial.
Note: Petitioner, a criminal defendant, sought post conviction writ of habeas
corpus and contended that his right against double jeopardy had been violated
when the District Court convicted him of aggravated rape, and then subse-
quently convicted him of aggravated robbery, when both prosecutions
arose out of the same continuous assaultive transaction involving a
single victim. Outcome: The Court reversed the second conviction for ag-
gravated robbery and set it aside through dismissal where the petition-
ers, a criminal defendant, rights against double jeopardy were violated
by the entering of two convictions arising out of one continuous
transaction against a single victim. The inhibition against Double

(See Exhibit #56 Doctrine of Carving)    1 of 2 (Exhibit List p.206 #.56)  -  107

Jeopardy is determined by the facts and circumstances and not by the name of the offense. When one has been convicted, the state cannot, upon the same evidence, again convict him of the same act. Under the doctrine of carving, if a continuous assault is allegedly made on the same person in the same transaction, the state can carve but one conviction out of the event. There are three types of double jeopardy claims; Appellants arises under the third, Multiple prosecutions for the same offense. The last can arise in two contexts: First, there is the lesser-included context, where one is punished twice — once for the basic conduct and a second time for that same conduct plus more (assault to Ex and aggravate assault to Ex); second is where the same conduct is punished under two distinct statutes when the legislature intended the conduct to be punished just once. In the case at bar in order to prove aggravated assault, the state necessarily, by statute, had to prove simple assault and then prove the aggravating factor or conduct, namely, the use or exhibition of a deadly weapon. The simple assault, however, was already what the state alleged and brought to the jury under Count I of the indictment — and upon which the jury gave its verdict of guilty. Yet the state then relied upon those same elements to prove its case of aggravate assault. In an effort to defeat a double jeopardy claim, the state, in the middle of trial, amended the indictment by abandoning (Count II) paragraph A, bodily injury, but not the bodily injury alleged in Count I. (Not Count II just paragraph A bodily injury) The Court of Appeals erroneously denies the double jeopardy claim for this very reason, citing that the gravamen of the offense was the bodily injury. The case at bar contains the same elements; simple assault upon a person, and then the aggravating factor. There need not be bodily injury to prove aggravated assault, just the use of a deadly weapon. Consequently, the case at bar shows double jeopardy by multiple prosecution for the same offense. For these reasons, the case should be reversed and remanded for new trial or acquittal.

## Ineffective Assistance of Counsel

Ground Sixteen; The Evidence Was Legally Insufficient to Support The Finding of a Deadly Weapon / No Chain of Custody / When There is a factual dispute how evidence was obtained Trial Court statutorily required to give Jury charge instruction. / Police Misconduct / Prosecutorial Misconduct

Facts Supporting ground sixteen[16]. The Chain of custody to authenticate an exhibit is conclusively established if an officer testifies he or she seized the item of physical evidence, tagged it, placed an identifying mark on it, placed it in evidence storage, and retrieved the item for Trial. Appellant Perry Maintains that Police not only searched his person and personal property (back pack) without a valid search warrant, but Police also illegally searched his Home! There were no exigent circumstances justifying a search without first obtaining a valid search warrant. While searching Appellants Home, Police retrieved the actual knife used in the alleged assault and took it with them, never having disclosed This fact. Appellant will provide a sworn notarized affidavit from a witness in support of This Contention. Nowhere at Trial was there ever any evidence that the purported knife actually used in the states accusation was, in fact, The knife pulled from Appellants back pack. This is called a Chain of custody issue, and nowhere did the state make That case, where the crucial determination is, if the (object) has been properly identified. There was no evidence presented that the Appellant picked up THE KNIFE and stowed it in his back pack." The knife was dropped during the altercation with Alanna McKinney. So how is it that the state is able to conclusively to Trace THE KNIFE To The one in Appellants back pack? It cannot and has not! A reasonable inference from this is that THE KNIFE was actually seized at the scene by investigators, but that its characteristics and proportions made it a less than deadly looking instrument. (see Wilma McKinneys Affidavit exhibit #3)

P. 35                                    P. 1062

① Allegedly

Was the States case Made easier with the Knife found in the back pack? And, consequently, with the "ersatz" demonstrative knife? All this undermines the States case and efforts (1) to say that the evidence was legally sufficient on the assaultive conduct and deadly weapon (2) to say that there was no error in using the demonstrative knife, (3) to claim that the charge was not deficient, (4) that there was no ineffective assistance of counsel, and (5) to conclude that the prosecutor did not commit misconduct. In each instance there is a valid, underlying uncertainty that the demonstrative knife was a replica of THE KNIFE! Consequently, the State's insistence of the verity of that resemblance and replication is completely without merit. In fact, as mentioned aforesaid, Appellant has a witness that was prevented from, and not subpoenaed to testify at the guilt and innocence stage of trial, only at the punishment phase! She was told by counsel not to engage the jury, indeed! If said witness would have known about the demonstrative knife of the wrong knife at trial, said witness would have volunteered that police infact picked up THE KNIFE in her house and took said knife with them! This exculpatory and impeachment evidence (Brady Material) leads to no evidence! Failure of the demonstrative knife to actually correspond to THE KNIFE! Consequently, the entire trial is tainted by the lack of the REAL KNIFE! Additionally, since the proof on the deadly weapon is insufficient and the result of an illegal search and seizure, and police misconduct, not to mention prosecutorial misconduct, and of course, ineffective assistance of counsel! Appellant should on all things be acquitted! (See Wilma Mckenna, Affidavit Exhibit #3) Deliberately withholding evidence of illegal search and seizure precludes denial of review on Habeas Corpus under contemporaneous objection rule; Ineffective Assistance of counsel as well! (Terry Stop) Prosecutorial Misconduct too!

P. 36 (Michael Morton Acts B164) P. 2 of 2 ① Allegedly (Terry V. Ohio, 392 U.S. 1, 88 Sct. 1868 (1968))

110

Ground: 17    Ineffective Assistance of Counsell Abuse of Discretion / Courts Charge Error / Denial of Fair Trial / Denial of Due Process

Facts Supporting Ground: 17    Appellant did everything necessary to pre-serve error; With regards to inclusion of the lesser-included offense in the Courts Charge to the jury. Counsel for Appellant requested charges on lesser-included offenses of simple assault and assault by contact, but the requests were overruled. Aggravated assault builds upon simple assault, and include it within the definition of the more serious offense. For there to be bodily injury as alleged by the State, but never proven (Corpus delicti) there must have been a fortiori some sort of unwanted contact physical in nature. The law is very clear on the inclusion of instructions on lesser-included offenses. When accused is tried and requests inclusion of charge on assault, Trial Court is required to apply a two-part test: (1) it determines whether assault constitutes a lesser-included offense, as defined by statute, and (2) if so, it determines whether some evidence exists that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. Whereas, if "evidence from any source" raises the issue of less-included offense, a charge on that lesser offense "must be included" in the jury charge; whether the evidence is introduced by the State or by the defense and whether it is strong, weak, impeached, or contradicted. For Count I and Count II, there is much evidence that in struggling with Alanna, Appellant did not inflict bodily injury. Alanna even testified under oath that she suffered no bodily injury. Tim Cone even moved for a Directed Verdict of Acquittal, citing, inter alia, "No corpus delicti, No bodily injury, in fact, the State abandoned bodily injury in Count II. Notwithstanding the fact that Alanna has since Trial provided Appellant with two Sworn-Notorized Affidavits stating that Appellant only defended himself, That she initiated the contact

See Tim Cones Letter Exhibit #22A          1 of 2          111

However, Tim Cone got a recorded recant statement from Alanna and never provided it to the defendant or the Court. Wilma McKinney, Alanna's very own Grandmother was an eyewitness and she has also provided Appellant with a sworn-Notorized Affidavit and she states, inter alia, That Alanna had No injuries and That She was Not Hysterical! Tim Cone also failed to question all of the witnesses, even the one That ran off before Police arrived! He also failed to hire a Private Investigator! His dubious excuse was That he was Trying to show The jury the States lack of investigation, see Tim Cones letter! None of The States exhibits show any Type of injury Whatsoever! The state erroneously introduces This illegally obtained evidence without objection from Counsel! In The States brief on Appeal, They erroneously introduce exhibit #10. allegedly Showing a scratch on Alanna's cheek or jawline; They couldn't Make up Their minds which? This picture was never shown to the defense or admitted as evidence in This Case and Not disputed by Appellate Counsel in Appellates brief! Egregious Error! Here, The charge given by the Trial Court allowed jury to find Appellant guilty of assaultive Conduct Leading to Two harsh Sentences which are equivalents of life without parole. Otherwise, had Appellant only been guilty of Simple assault or assault by Contact, his Sentences would have fallen into a Much-less harsh range of punishment! The State would not have been able to Subject Appellant to The habitual felon criminal statute! Refusal to give The lesser-included offense instruction in The Courts charge to the jury harmed Appellant, just like failing to instruct The jury about the illegally obtained evidence of Which is Mandatory! The charge was Not Harmless and Reversible Error! More on The Courts charge error in the following grounds! See States Exhibit #12 (VRR198) No scratch/injury, States Exhibit #9 I do Not See a scratch (VRR199) (none No scratch) Exhibit No. 11 Defect in lip! No Swollen, Must be a fever blister! Im Not a Doctor! Lip!

112

2 of 2

Ground Eighteen: The Evidence Was legally Insufficient Because The State Failed To Prove The Elements of Bodily Injury And/or That The Victim Suffered Any Bodily Injury, As Alleged in The Indictment. Prosecutorial Mis Conduct/ Perjured Testimony/ Hearsay/

Facts Supporting ground Eighteen: 18

By Law, the State is required To prove, beyond a reasonable doubt, That The Victim Suffered bodily injury. The elements as stated on The indictment. First of all, Applicants attorney raised This very point when he urged his motion for a Directed Verdict: The State Countered That There had been some evidence raised Through a couple of witnesses who said That if They had been hit in The same manner That Appellant was hitting Alanna That would cause pain. She even tells The Officer That She did feel pain. (Emotional pain) The record is clear That The Victim Testified Several Times That She did Not Suffer any physical pain and was not injured from The altercation. The witness who said That The fight would have caused pain was Daijontae Johnson, who Testified That even Though Appellant struck her, She felt No pain. This effectively excluded her as a witness as to what an altercation with Appellant would or would not have caused in Terms of bodily injury. How Could she be at all competent on The question? She was Not. Not only That, but Ms. Johnson was caught Lying on The Stand several Times. Whereas, when questioned did Appellant State, bitch, open the door, as she stated to Police, she said No, That Appellant never made That remark. Which also brings into question, The statement Ms. Johnson made That Appellant Then stated to wit: Bitch, I'm fixing To stab you. Ms. Johnson also lied about These

(See also Wilma McKinney's Affidavit Exhibit "3")

lo F 2

being a scratch on Alannas check or jaw or face, she couldn't make up her mind which. Alanna said she was emotionally hurt, not physically hurt. Thats what she testified to at Trial. Testimony by and from anyone else is hearsay. The state abandoned paragraph A. of Count II because they failed to prove "bodily injury" of which effectively cancels out Count I, because its alleges the same element "bodily injury". If the state wants to rely upon its exhibits in an effort to show some sort of bodily injury to Alanna, that evidence is completely lacking as well. When Officer Williams was shown some of the exhibits ie, pictures of Alannas face that were admitted as evidence erroneously and without objection from Trial counsel, There was no scratch on Alannas face, jaw, or cheek, period. However, The State in its brief, erroneously claims That Officer Williams was shown exhibit #10, which does "Appear" to have a scratch, but it "Appears" (emphasis supplied) To be her "left" cheek. I'm confused, aren't you? Exhibit #10 was never shown to anybody else, Nor was it ever admitted as evidence. Johnson testified under oath, That she saw a scratch on Alannas "right" cheek. Same page 18 states brief. Alanna testified under oath That she suffered No injury. She was not physically hurt. That she initiated contact with her uncle The Appellant by grabbing him and shoving him. That he only reacted by defending himself, That he did not point a knife at her or Threaten her with a knife. Alanna has even submitted Not one, but two sworn and Notorized Affidavits stating as much. No Threat with a knife and No bodily injury. She did Not have a busted lip, it was a fever blister or pimple.
(See Alannas Affidavits Exhibits 1A + 1B)

2of2

114

Ground Nineteen[19] The Evidence was Legally insufficient The State failed to prove the elements That The victim Was placed in Fear of bodily injury, and/or That There was a Threat of bodily injury, and/or That The Knife used was a deadly Weapon!

Facts Supporting Ground 19 Lack of Threat The only person who testified That Appellant held a Knife in The direction of Alanna McKinney was Oajuntae Johnson, of Whom was caught Lying on The witness stand several Times committing perjury. The other Three witnesses; Not included was The witness That Left before Police arrived, who's name, and/or identity, and testimony were never provided to Appellant, and The other eye witness That Was prevented from testifying at Trial; Wilma McKinney; Said (1) he held The Knife down and never pointed it at anyone or anything (Testimony of Dawn Ayers); (2) That he held The Knife down at his Waist and was Not pointing it or waiving it at anyone! (Testimony of Chase Neal) even if one were to believe The Lying witness, Oajuntae Johnson's testimony about The position of The Knife, There is No evidence before The jury or in The record about how Far Appellant was from Alanna at This door-opening. On previous occasions, Not just The Appellant, but his sister Roni, her boyfriend Sam, and even Alanna herself have used a knife To gain entry into That bedroom, as evident from all The prior damage To the door jam! (VRR 152-153) So There is probative evidence That The use of The knife was innocuous-just to pick The Lock! (Emphasis Supplied) (3) That he held The Knife by his side, not Threatening anyone! (Testimony of the alleged Victim, Alanna McKinney under oath)(VRR 152-153) So There was an abundance of evidence provided That The use of the Knife was innocuous/harmless. Then, immediately after Appellant entered the room, The alleged victim shoved Appellant, assaulted him, then grabbed his arm! The arm in Whose hand Appellant held The Knife (VRR 143) Then Appellant dropped The Knife in order to defend himself (see, Alanna McKinney's Two Affidavits Exhibits# 1A and 1B submitted to Perry after Trial!) There was No Testimony from any Exhibit #1A + 1B Alanna's Affidavits Exhibit#3 Wilma McKinney's Affidavit

of the witnesses that Appellant made any sort of motion toward the alleged victim with the knife, motions from which could be inferred that he was trying to inflict a knife wound upon the alleged victim, none, period! In other words, there was no evidence that Alanna was threatened with the knife! There was never any evidence presented of a competent nature, or testimony from Alanna that she felt any type of threat or fear on account of the knife! In fact, she denied those emotions and stated that Appellant did not threaten her (VRR149) No other witness testified that Alanna felt threatened with the knife! In fact, Alanna later provided Appellant with, not one, but two sworn, notorized affidavits, stating as much, inter alia, that she initiated contact with Appellant and that he only defended himself! That he never pointed the knife in her direction, Period! Alanna suffered no knife wounds or any other type of injuries, Period! No first aid was provided and no one went to the hospital, the evidence is completely lacking! Alanna was not Hysterical, Nor did she have any injuries! Appellant will provide a sworn notorized affidavit from Wilma McKinney, another eye witness that was prevented from testifying at trial (Tim Cone told her to not engage the jury) Who better to know what Alanna felt and if she had any injuries than her own Grandmother? Whom she has lived with since she was a baby! Alanna never even testified before the Grand Jury! Whereas, The Indictment was obtained using hearsay statements and illegally obtained evidence, leading to legally Insufficient Evidence!

Appellant informed all three of his lawyers of these facts; Michael Lewis, Tim Cone, and Lew Dunn! Appellant will provide letters and affidavits as exhibits in proof thereof with this Writ of Habeas Corpus! Appellant made a concerted effort to make sure he preserved error of illegal Search and Seizure and ineffective assistance of Counsel for Appellate Review, see also Appellants pro se motion for New Trial! (Terry Stop) Also see Appellants Addendum to motion for New Trial!

116

Ground Twenty: 20 Judicial Misconduct - Failure of Trial Judge to report Attorney Misconduct/ Attorney Misconduct- and/or Failure of Attorney to report Attorney Misconduct.

Facts Supporting ground Twenty: 20

Notwithstanding the fact that Appellant alleges prosecutorial misconduct and Ineffective assistance of Counsel, both at Trial and on his First appeal. The Trial Judge Not only denied The Motion for Mistrial due to Misconduct of The prosecutor namely, Tanya Reed, but The Trial Judge Failed to report The Attorney Misconduct to The proper authorities, Furthermore, Appellants Trial Attorney and his Appellate Attorney, even The States Attorney on Appeal, all Failed to report The Misconduct, in Fact, The Appellant Perry, apparently, is the only one involved in This Travesty of Justice, That actually reported The Misconduct, and to the proper authorities! Appellant avers That he was entitled to a Fair and impartial Trial, Free from Judicial Misconduct and Prosecutorial Misconduct and Attorney Misconduct. That did not occur in This Case. In Fact, The violations are of such an egregious nature, That it would be next to impossible for Appellant to now receive a New Trial! Appellant should in all Things be acquitted! Whereas, due to the egregious errors in The case at bar, Appellant could never receive a Fair and impartial Trial now! In Fact, as according to The Court of Appeals erroneous opinion, They were either clueless about The Failure of The Trial Judge and Attorney's failure to report The Misconduct or They just didn't Care! No Sound Trial Strategy! ? The Judge showed Bias towards the Appellant and Favoritism to The Prosecutor!

Exhibit # A Perry's P.D.R., 1061

Part of Appellate Record!

117

Ground: 21  Ineffective Assistance of Counsel/Conflict of Interest/ Denial of Discovery/Brady Violations/Denial of Fair and Impartial Trial/ Denial of Right of Appeal

Facts Supporting Ground: 21  Just like his Court Appoint Counsel on Appeal, The Appellant combines these issues addressed in this ground for argument for purposes of "judicial economy" since they arise out of the same factual and legal context! Several issues in this appeal concern ineffective assistance of counsel. First of all, Michal B. Lewis (nick name at the jail by prisoners as to wit: Hang em high-Lewis) The one and only time Mr. Lewis made contact with the Appellant was to tell him that the State (Tanya Reed) was offering him 12 years to plead guilty! If not, and Appellant chose to go to Trial, then the State was going to come at him with both barrels! Hence, the two 60 year sentences! Appellant tried to reason with his court appointed attorney, to find out what happened to the Examining Trial and Private Investigator, but Mr. Lewis refused to discuss it, so Appellant terminated his court appointed attorney! Some Time later Appellant was appointed Tim Cone. Mr. Cone also failed to adequately communicate with Appellant and deliberately withheld exculpatory and impeachment evidence from Appellant, like the illegal Search of his home, and that Police picked up "the knife" and took it with them! (False Police Report) Appellant raised these issues and more in his pro se Motion for New Trial, raising 17 grounds, see Lew Dunns letter exhibit #10 filed April 23, 2013 and letter exhibit #14B Exhibit #10 was entitled Motion to withdraw as Counsel. Mr. Dunn states in part that On or about April 2, 2013 Michal Don Perry, filed his own pro se Motion for New Trial, raising (17) issues that, for the most part, are separate and distinct issues from those raised by counsel. Appellant also requested a hearing on his pro se Motion for New Trial. Appellant was indeed bench warranted back to the 188th District Court for a hearing on Motion for New Trial, of which the Judge denied relief, preserving error for Appellate review! Among other issues, but by no means limiting the points of disagreement, one of those issues (raised at several points in his

118

Motion) Concerns Mr. Perry's assertion That Trial Counsel rendered ineffective assistance of Counsel. Counsel disagrees with Mr. Perry about bringing forward that issue on direct appeal. However, Appellant avers that in complete contradiction to the statement made in his letter/Motion for New Trial/Motion to withdraw, Lew Dunn raised (3) grounds of ineffective assistance of Counsel on direct Appeal, but failed to preserve error by not raising this ground in his Motion for New Trial. See page 2, IV Counsel does not believe That The Conflict can or will be resolved! See exhibit #14 A Lew Dunns letter; I was, at one time, the Judge of the Longview Municiple Court. Your name is somewhat familiar to me as someone who appeared before me on Misdemeanors, but I have No recollection about what any of That was about, and I have no preconceptions about you. Appellant maintains that Judge Dunn sentenced Perry/Appellant to Jail dozens of Times in the past and was able to go look up the record in order to refresh his failing recollection. See also Lew Dunns Motion for Hearing Pursuant to Faretta V. California, as to whether or not Michael Don Perry wishes to represent himself or wants to continue to be represented by Lew Dunn. And if Not, Whether Counsel should be dismissed from further representation in the appeal of this case, see exhibit #12 Faretta V. California. Appellant avers that he also filed pro se a Writ of Habeas Corpus access to Courts, attempting to gain access to the County law library before Trial, Judge Brabham conducted a hearing and denied Perry access to the law library, but after Perry was sentence to 120 years in Prison, he has him bench warranted back to Longview twice and tried to force him to represent himself on Appeal, a little late for That, Perry could have presented numerous issues on Appeal if he would have had the information and knowledge to prepare and present those issues. Unless it was at some point placed into evidence during your Trial, or at pre-Trial hearing see Lew Dunns letter exhibit #14 E By The way, all of these exhibits and more filed with Mandamus in The Sixth Court of Appeals 'All on Record'.

Ground: 22 Ineffective Assistance of Counsel/ Prosecutorial Misconduct /Abuse of Discretion /Denial of fair and Impartial Trial / Denial of Due Process /Defective Indictment

Facts Supporting Ground: 22

The Prosecutor Carl L. Dorrough and his assistant Tanya Reed did in fact amend the indictment during Trial, abandoning paragraph A of Count II. However, it is not clear if the state dismissed the entire paragraph or only the bodily injury portion of the paragraph Whereas, the paragraph states to wit: Defendant did then and there intentionally, knowingly, or recklessly cause bodily injury to A. McKinney by hitting A. McKinney with his hand, and the defendant did then and there use or exhibit a deadly weapon, to wit; a knife, during the commission of said assault;

It was clear at Trial that the state failed to prove bodily injury by the applicable burden of proof or that the knife (demonstrative or otherwise) was a deadly weapon, the evidence was completely lacking.

Not withstanding the complete lack of evidence, but the state failed to first file a Motion to Amend the indictment, and failed to give defendant adequate prior notice. Defendant was never provided a True and correct copy of the amended indictment, effectively preventing him from raising points of error in sufficiency of the amended indictment, even on this Writ of habeas corpus! 2½ years later, still no copy. Proper procedure to amend the indictment is that the Prosecutor should have filed a Motion for Continuance, along with the motion to amend and a completed, amended indictment, with copies of the same provided to the defendant at least (10) ten days before Trial. The defendants dubious court Appointed Trial Attorney failed to object to the amended indictment, and/or the lack of Notice! Constituting ineffective Counsel, No Sound Trial Stradegy!

1 of 2

However, Mr. Cone did make a Motion for a Directed Verdict of Acquittal Citing No bodily injury as alleged in both counts on the indictment. And also alleged in the Courts charge before The STATE Amended the indictment and the Court amended the Courts charge to The jury. Whereas, The indictment didn't Fact violate Double Jeopardy by alleging The same Conduct in both counts. Once the state and the Court were alerted to This Fact and it was made part of the Trial record, They amended the indictment and Courts charge during The Middle of Trial Without a Continuance, or objection from Trial Counsel. However, abandoning bodily injury from Count II does not deFeat Double Jeopardy. The underlying assault is The gravamen of the Double Jeopardy Violation, That was alleged to have been Committed to The same Victim and at The same Time. (What The Court Could have charged, does not Factor into a reviewing Courts determination, and Cannot Serve as a basis of a double Jeopardy Violation - Court of Appeals Opinion 'Indeed'.) Amending The Indictment during The Middle of Trial Violated Appellants Substantial due process rights, exponentially. Failure of Court appointed Counsel to File a Motion to Quash The Indictment before Trial on Double Jeopardy grounds, and or insufficiency grounds Was Not based on Sound Trial Strategy. Had The defendants Court appointed attorney, called attention to The governments defective indictment, The STATE and Court Would have only been able to charge The defendant with a Class A Misdemeanor with No enhancement. Furthermore, The Court lacked jurisdiction. The subsequent Imposition of two 60 year Sentences for The Very same offense is prejudice, pure and Simple. Reasonable probability That, The results of the proceeding would have been different, absent Counsels unprofessional errors, Prosecutor Misconduct, and Abuse of Discretion of the Court. Reasonable probability is a probability Sufficient to undermine Confidence in The outcome. Whereas, Appellant did Not receive a Fair and Impartial Trial. Or even on Direct Appeal, For That Matter. **121**

2 of ()

Ground: 23 Ineffective Assistance of Counsel / Abuse of Discretion /
Denial of Due Process / Denial of Fair and Impartial Trial / Insufficient Evidence /
No Deadly Weapon / No Threat With Deadly Weapon

Facts Supporting Ground: 23 First of all, Appellate Attorney Lew Dunn misstates
what is alleged in Appellants indictment. Appellants indictment in part alleged that the
Appellant did then and there intentionally "Or" knowingly threaten A. McKinney with im-
minent bodily injury; Lets stop right here an examine (Or) Appellants indictment does
not have the word "Or" between intentionally and knowingly. The Indictment clearly
states knowingly and intentionally together, specifically, the Indictment states
to wit: intentionally, knowingly, or recklessly cause bodily injury to A. McKin-
ney. In other words, There's no choice. The State was required to prove that
Appellant committed the crime intentionally and knowingly, or recklessly cause
bodily injury to A. McKinney. Of which the State failed to do by the ap-
plicable burden of proof. See exhibit #5 Perrys Indictment. The State was
required to prove Perry both intentionally and knowingly, and of course reck-
lessly caused bodily injury to A. McKinney and that the knife was a deadly
weapon. And that the victim was threatened with imminent bodily injury
by holding the blade of a knife in her direction, used or exhibited a dead-
ly weapon during the commission of said assault. Of course, there is the word
or between intentionally and knowingly in Count II paragraph B. Go figure.
However, there was no evidence presented at Trial that Appellant caused
A. McKinney bodily injury. It was non-existent. Even all the erroneously ad-
mitted pictures of Alanna did not show any injurys, sorry Typo, injuries.
Immediately after Appellant entered the room, Alanna grabbed his arm and
shoved him. Appellant dropped the knife in order to defend himself. See
Alannas Affidavit Exhibit A. Appellant had no intention of harming his
niece, only to run off the black druggies hid out in Alannas room.
There was no culpability on the part of Appellant. The State even 122

1 of 2

erroneously submitted a Jailhouse phone call in a vain effort to try to prove culpability on the part of the Appellant, Just like they tried to present evidence that Appellant tried to hide "THE KNIFE" in his backpack! As it turns out, there never was a Knife in Perrys backpack, something Perry has known all along, after all, its Perrys backpack! Who better to know what it contained? Alanna states in her Affidavit that Appellant did NOT point the Knife in her direction and that she had No injuries! Wilma McKinney Also states in her Affidavit that her granddaughter had No injuries and that she was Not Hysterical! The black girl, Oajintae Was caught Lying on the stand several times, she's the only one that said otherwise! The STATE used subterfuge and hearsay statements, and a false Police Report to convince the jury otherwise! Even after over 2½ years, The Appellants niece and even her own Grandmother, steadfastly maintain that Appellant is innocent! Furthermore, the Knife from the affray was never placed into evidence, although States Exhibit #1 was placed into evidence for demonstrative purposes, over Appellants objections! It should be pointed out that Lt. Bill Jennings, the states so called expert, was never offered or handed or shown or, in any way else, had his attention drawn to the demonstrative knife! In other words, Lt. Jennings never testified that "THE KNIFE" demonstrative or otherwise was a deadly weapon, Period! While there was testimony about a knife being exhibited, one was never admitted as evidence! No actual injury was done by THE KNIFE! and the victim did Not feel Threatened! As asserted on Appeal, There was No Threatening movements made with a knife! Its some what baffling to say the least to consider that the state went to all the trouble to put forward its expert in the case at bar, yet he never testified that the knife at issue was a deadly weapon! Bill Jennings is Not even listed on the Expert witness list! Neither is Lisa Chatterton and both were defendants in Appellants Civil Rights Lawsuit! See exhibits #A1 and C — Expert witness list Exhibit B

123

2 of 2

Ground: 24 Prosecutorial Misconduct/Abuse of Discretion/ There Was Reversible Error, When Counsel for the state, With Notice to Appellant, After Jury Selection and Parties Were Ready to begin Evidence, Repudiated the Agreement of the Parties to Suppress Any Evidence of a knife/ Ineffective Assistance of Counsel

Facts Supporting Ground: 24 Appellant, by his Counsel, had reached what he believed to be an agreement about the knife and recited it to the court, the same deal he told his client about, Then startling news comes from Tanya Reed, Asst. District Attorney: Kings X, There is an Agreement - but not really, ha! Even the cold record does not Mask the surprise of Appellants Counsel, struggling to comprehend this unexpected reversal of course, Lew Dunn doesn't acknowledge the Appellants Shock! After all, Appellants the one serving 120 years in a Maximum Security Prison! Not his dubious Attorney! And over $15,000 in fines & Court Costs! Without giving any rationale Why she thought the demonstrative use of a knife Would now be acceptable (in defiance of established law on the use of an object for demonstrative purposes) Mrs. Reed proceeded to represent to the Trial Court that this was acceptable; in one blow she (a) blatantly undid the agreement with Counsel on important discovery (b) and Was less than candid with the Trial Court in her reasons for doing so! Both acts are prosecutorial Misconduct and grounds for reversal of the Conviction! Notwithstanding the New Facts that were Withheld due to Brady Violations, to wit: THE REAL KNIFE picked up by Police in Appellants Home, With No Search Warrant! Appellant has a right to a fair Trial Free from Prosecutorial bad faith! (reversible error in prosecutors bad faith, intentionally failing to disclose evidence material to Defense,

124

Whereas, A Lawyer, "any Lawyer", shall not assert an issue unless the Lawyer reasonably believes that there is a basis for doing so that is Not frivolous. Owes a duty of candor to the Tribunal. Has a duty not to obstruct the other party's access to evidence, and has a duty not to knowingly disobey an obligation under the rules of a Tribunal. Appellant contends that the Actions of the prosecutor in the case at bar contributed to denial of a fair trial in several ways. As to the knife. (Even considering they used an "ersatz" knife or the wrong knife) First, Ms. Reed unilaterally, and without the required (5) five days notice required in the Courts very own in-limine pre-trial orders, reversed the states agreement about suppression of the knife. But see Ms. Reeds Affidavit Exhibit #2A Page 60 She claims that the state does not have to notify opposing counsel that they intend to use demonstrative evidence! She even lies to the state bar in an Affidavit no less! Once the parties made an agreement concerning evidence, that agreement stands in place of an order from a suppression hearing and would not permit unilateral amendment without due notice, Appellant was entitled to reasonable notice (5) (five days at least) so that he can frame a defense. To permit the state (Ms. Reed) to do so was an abuse of discretion. States Counsel violated the Disciplinary Rules in that she abrogated her agreement with Appellant about the Motion to Suppress. Secondly, since the case law on this matter is very clear and unambiguous, Ms. Reed compounded her troubles by not being forth coming with the trial court about controling authority and precedent. Ms. Reed violated the Disciplinary Rules in that she failed to disclose controling authority that was directly adverse to her position. The basis for Ms. Reeds use of the demo knife was frivolous, even criminal, since they covered up taking "THE REAL KNIFE" without a search warrant from Appellants Home. Duty to Disclose. The knife and its use was the states Ace in the Hole. There were repeated uses made of the "ersatz" knife in the case-in-chief and final argument (VRR 267) for all of these reasons the Appellant should be Acquitted.

Ground: 25 Ineffective Assistance of Counsel/ Charge Error/
Abuse of Discretion / Denied Due Process/ Denied Fair and Impartial Trial/
Brady Violations / Defensive Theory Court's Charge/ Compulsory Process
Facts Supporting Ground: 25   Court Appointed Trial Court Counsel Failed to re-
quest jury instruction in Court's charge on defensive Theory, and Trial Court er-
red in Not Submitting an instruction to the jury on apparent danger. The jury was
denied the chance to consider a defensive issue that was raised by adequate ev-
idence. Because self defense was a closely contested issue, we conclude ap-
pellant suffered actual harm. Alanna initiated the contact, see the Police
report page 6. While booking him in, he advised "res gestae" That Alanna was
strung out on drugs, That's why she attacked me. It was made know at the
trial that Alanna grabbed Appellants arm. What was Not Made known at Trial
due to Brady Violations, was the fact that Appellant did Not attack Alanna
or threaten her with a knife, That he only defended himself against the
initial attack by Alanna in order to protect his eye glasses. Alanna has since
Trial provided Appellant with a sworn Notorized Affidavit stating as much.
There was also evidence brought out at Trial that the other two witnesses,
Chase Neal and Oajuntae Johnson previously teamed up and assaulted the
Appellant at his own home. Oajuntae even destroyed Appellants $300.00 eye-
glassed with her hands. Considering the aforesaid, the alleged victim and the
two witnesses, Chase Neal and Oajuntae Johnson were guilty of assaulting
the Appellant yet the Police and District Attorney never filed charges on
any of them. Chase Neal and Oajuntae Johnson were also guilty Criminal
Trespass, Twice. There was a prima facia showing at Trial That Appellant
was previously assaulted by atleast two of the witnesses who testified at
Trial. Even considering the Brady Violations and the withholding of Both
exculpatory and impeachment evidence; and eye witness testimony That
would have contradicted all of the hearsay statements and the perjured **126**

1 of 2

Testimony at Trial. Alanna McKinney states in her Affidavit that she initiated contact with Appellant, that he was defending himself, that he never pointed a knife in her direction. Wilma McKinney also submitted a sworn Affidavit, of which Appellant submitted as an Appendix with his pro se P.D.R. Mrs. McKinney, the Grandmother of Alanna, states that her granddaughter had no injuries and was not hysterical. That she did not witness an assault. That Police searched her home without a valid search warrant or an informed consent. Keep in mind that Police waited until the Appellant was taken away to the Police station in order to prevent him from objecting to the search of, not only his backpack, but his home as well. There was no alleged exigent circumstances remaining, or even from the very beginning. The Police needed to get a valid search warrant, they had plenty of time and opportunity. Bare in mind, if they now claim that they somehow convinced Alanna to give consent to search and take all of those pictures, pick up "THE KNIFE" and take it with them, only later to claim that they found it in Perry's backpack. Well, Alanna was in fact, as according to the District Attorney and Police Officer Nikkie, Super Cop, Williams, Hysterical! Surely a victim thats hysterical is not able to give an "informed" (emphasis added) consent. With all of those so called, horrific injuries, I'm surprized she was able to speak at All. Not only all of this, Alanna McKinney was still very distraught over her mother just having passed away. And she is unlearned in the law. A very naieve and under educated teenager. The Police used their power of authority or shall I say, abuse of Authority and Official Oppression, in order to convince her to submit to the search and all of those pictures. None of which should have been admitted as evidence. Remember, All of the witnesses and the alleged victim refused to give a recorded statement. Of course, they didn't get a statement from Wilma McKinney.

2 of 2

127

Ground: 26)         Prosecutorial Misconduct/Police Misconduct/
Ineffective Assistance of Counsel at Trial and on Direct Appeal/Abuse of
Discretion/No chain of Custody of THE KNIFE!/Illegal Search+Seizure
Facts Supporting Ground: 26 (Inadmissible Evidence)(Demonstrative Knife)
(Police Misconduct)         Failed To Hire Private Investigator.
Just like his Court Appointed Appellate Counsel, Appellant/Applicant combines These
issues addressed in This ground for argument for purposes of judicial economy,
since They arise out of The same factual and legal context. Several issues in
The Appeal concern the use of a demonstrative Knife by the state, at Trial and on
Appeal (First, second, Third, tenth, Twelfth, and Thirteenth issues) However, Not only
These issues of Which are firmly in the record, but also exculpatory and impeachment
evidence That was deliberately withheld, and or Covered up, and or Manufactured.
The record seems to show an assumption That the Knife That was The subject of an
illegal Search of Appellants backpack was The Knife used in the incident. The
eye witness testimony Was Tainted by improper suggestion and The fact That The
Prosecutor Showed all The witnesses The demonstrative Knife right before Trial!
However, nowhere at Trial Was There ever any evidence That The purported Knife
actually used in The states accusation was, in fact, The Knife pulled from Appellants
backpack! This is called a chain of Custody issue, and nowhere did The state
Make That Case, where the crucial determination is of the object has been
properly identified! Appellate Counsel erroneously claims That Williams was The
one That Searched The backpack and found a Steak Knife! Thats Not True! Tim
Cone came to The jail and showed Appellant a Laptop Computer Video of a Police
car Tape recording of a Male Police Officer Searching The backpack, who's name
and identity was never revealed Appellant, by the state or his dubious Attorney! There
is no evidence That Appellant picked up "The Knife"(Emphasis added) and stowed it
in his backpack. The Knife was dropped during The altercation with The Victim,
Alanna McKinney who has since Trial recanted her accusation in a Sworn Affidavit

That is Notorized, exonerating The Appellant and admitting That she, not The Appellant initiated The Contact, that Appellant did not point the knife in her direction and that he only defended himself! Since Trial another eye witness, who was prevented from testifying at the guilt/innocence portion of Trial, has also provided a sworn, Notorized Affidavit. Mrs. Mckinney states, inter alia, that Police Officer Nikkie Williams and an unnamed Police Officer Search Their Home without Consent and a Search Warrant, picked up "The knife" Appellant used to pick The Lock and took it with Them! Whereas Tim Cone, Prosecutors, and Police covered up This evidence, claiming That They found "THE KNIFE" used in the alleged assault in Appellants back pack! Tim Cone had all of those pictures of The inside of Appellants Home and never disclosed the illegal Search of Appellants Home and never disclosed the fact that Nikkie Williams picked up the Real KNIFE and took it with her! Mrs. Wilma Mckinney, Will also Testify That her sweet Granddaughter had No injuries and was Not Hysterical and That she did not witness an assault! All of The abovesaid Constitutes a Brady Violation and Tim Cone never filed a Brady motion! Prosecutors and Police had 5 1/2 months in which to disclose all This To Appellant, but deliberately withheld this exculpatory evidence! They actually Tried to prove culpability on The part of Appellant by Trying To claim They found "THE KNIFE" in his back pack! Unbelievable! Since when is it Considered sound Trial strategy to withhold "sine qua non" evidence from your client? Its No wonder Tim Cone and Prosecutors didn't want Appellant to have a Private Investigator! A Private Investigator Would have Talked with Wilma Mckinney and found out about The illegal Search and Seizure and "THE REAL KNIFE"! This is No mere garden-variety blunder! Whereas, if an attorney fails to raise an important, obvious defense without any imaginable Strategic or Tactical reason for The omission, his performance falls below the standard of proficient representation That The Constitution demands! In other words, because the Suppression of illegally obtained evidence and proof of Police misconduct was a clear winner and presenting it would have risked nothing, eschewel of it amounted To Constitutionally deficient performance!

Ground 27     Ineffective Assistance of Counsel/Prosecutorial
Misconduct/Brady Violations/Failure to Disclose Recant Statements/
Abuse of Discretion

Facts Supporting Ground: 27     Almost from the very beginning the alleged
victim, Alanna McKinney, has repeatedly attempted to recant her alleged accusat-
ions of assault on her person by her uncle the Appellant. Notwithstanding all of
the hearsay statements, but Alanna went to the District Attorney's office and
tried to sign an Affidavit of Non-prosecution. However, the District Attorney
told her she would have to first take a 4 to 6 week Family violence class and
pay the fees. Also, Tim Cone, Appellants Trial Counsel, recorded a recant state-
ment from Alanna at her home, but never produced it at Trial. When Appellant
questioned Mr. Cone about it, he told Appellant that he still retains it in his
file and he will allow me to listen to it if we can find a practicle way. See
Tim Cones letter Exhibit #22A, and my letters to him attached thereto. Appellant
will provide this honorable court with exculpatory letters from him, his two
court appointed Trial Attorney's and Appellate Counsel, and letters from his own
family, that will support this assertions. Not only all of the above said, but the
Alleged victim Alanna McKinney has also submitted not one, but two sworn and
notorized Affidavits recanting the allegations presented in the indictment and that
were erroneously asserted at Trial by the Prosecutor at Trial that was based only on
hearsay. Remember, there were no recorded statements of the victim or even any
of the witnesses presented at Trial or admitted into evidence. Appellant submitted
Alannas Affidavit with a Writ of Habeas Corpus motion for a New Trial
based on Newly Discovered Evidence, but was denied relief by the court.
Appellant also submitted Alannas recant Affidavit as an exhibit with
a Writ of Mandamus in the sixth court of Appeals in Texarkana
long before the court issued its memorandom opinion. Alanna also
Exhibit #22A Tim Cones letter          Exhibit #32A Tanya Reeds Affidavit 130
                                    1 of 2

Tried in vain to tell the truth at trial, but the prosecutor, the nefarious and ingenuous Tanya Reed prevented her from doing so. Mrs. Reed continued to badger the victim to the point of intimidation, in fact, testifying for Alanna by repeating the hearsay statements as written by police officers. Tanya Reed manipulated the statements and Alanna's testimony in order to inflame the minds of the jury. Even making thrusting motions with the demonstrative knife towards Alanna on the witness stand, something that will not show up in the trial transcripts and that Appellants court appointed trial attorney failed to object to. Tanya Reed was not seeking the truth or to see that justice was done. Her creedo was to get a conviction, to portray Appellant in the worse possible light. Guilty until proven Innocent! Never mind the presumption of innocence. Just like her telling the jury at the beginning of trial that Appellant had already been convicted of Assault family violence and against this now recently Dead Sister. The alleged victims mom. Trial counsel did in fact request a mistrial, but failed to state why. Of course, it should be obvious from the context, right? The Appellant contended on Appeal that the prosecutor engaged in improper jury argument resulting in error. The Appeals court states that Appellate counsels objections on Appeal do not comport with the trial objections, therefore nothing was preserved for their review. However, the Texas court of Criminal Appeals has stated that it would not hesitate to reverse judgment when the prosecutor engages in conduct calculated to deny the accused a fair and impartial trial. Where there is serious and continual prosecutorial misconduct that undermines the reliability of the fact finding process, or even worse, transforms the trial into a farce and mockery of Justice. Heavy as an engine block, sharp as a razor, like the mouth of an alligator. See States Brief pages 50 through 55

131

Ground 28: Ineffective Assistance of Counsel at Trial and on Appeal / Prosecutorial Misconduct / Abuse of Discretion / Appeals Court Error / Police Misconduct / Illegal Search and Seizure - Person, Home, Back Pack

Facts Supporting Ground: 28 Points of error apparent from context-preserved! Lew Dunn failed to include Illegal Search and Seizure in Motion for New Trial 'Error' Just like his Court Appointed Appellate Counsel, Appellant/Applicant combines these issues addressed in this ground for argument for purposes of judicial economy, since they arise out of the same factual and legal context. First of all, See the Court of Appeals erroneous opinion page 29, 17 It is noted, however, that this use of the knife is what was "explicitly" mentioned when the agreement was stated on the record. The appeals court is in error, whereas, the court states on the very same page to wit: (On appeal, however, Perry argued that the Trial Court erred in admitting the demonstrative knife because (1) the ruling had the effect of revoking the parties agreement and (2) The demonstrative knife should not have been used because the original knife was available. The point of error on appeal must comport with the objection at Trial. Because Perry's complaints on appeal were not asserted below, they do not comport with his objections at Trial and nothing is preserved for our review! We overrule Perry's points of error complaining of the states use and the Trial courts admission of the demonstrative knife because he failed to preserve them.) And Appellant asserts that the Appeals court tacitly admits ineffective assistance of Trial Counsel and Appellate Counsel! Not only that, but Prosecutorial Misconduct and Judicial Misconduct. Considering the fact that all of this Misconduct going on was supposed to be reported to the proper authorities! The Appellant is the only one that reported the Misconduct! The Prosecutor Made a deal with Tim Lowe, Not with the Appellant! See p. 27 The Court of Appeals States to wit: Because Perry did not present his complaints to the Trial Court, the issue **132**

The issue of prosecutorial misconduct is not preserved for our review! Perry did, however, complain of the use of the demonstrative knife. And again, Appellant Maintains that he is a writ writer and Knows a great deal about the U.S. Constitution, Texas Constitution, and the Code of Criminal procedures. The State, Trial, and Appellate Counsel, and even the Court erroneously withheld exculpatory and impeachment evidence from the Appellant in order to Keep or prevent him from raising an objection at Trial! Especially to prevent him from raising certain grounds on a Writ of habeas Corpus under the Contemporaneous objection rule! Whereas, illegal Search and Seizure can't be raised on a Writ of habeas corpus for the first time. Trial Counsel was ineffective for failing to investigate and get an investigator to do so! And or failing to disclose to his client the illegal search and seizure before Trial! The Prosecutor had a duty to disclose as well! Appellant had a right to a fair and impartial Trial free from prosecutorial bad faith (reversible error in prosecutors bad faith) intentionally failing to disclose evidence material to the defense, Whereas, Counsel for the State, as any other opposing Counsel, shall not assert an issue unless the Lawyer reasonably believes that there is a basis for doing so that is not frivolous; owes a duty of candor to the Tribunal, has a duty not to obstruct the other parties access to evidence and, has a duty not to knowingly disobey an obligation under the rules of a Tribunal! Prosecutorial Misconduct was obvious in Many ways! Ms. Reed: Your Honor, I've already spoke to the witnesses (Not William Mckinney) telling them not to mention anything about the search of the backpack if they even did Know, I spoke to the Officer. But I have shown them this and asked them if it look similar to-similar in size, shape, and color to the one they saw Mrs. Perry had that particular night! No showing them several different Knives, Tainting their testimony! There was No proof That That Knife was the actual Knife used in the alleged assault (the Actual KNIFE) Would have been inadmissible! Period!!

Ground: 29  Error was preserved regarding the breach of Agreement regarding the Knife/and there was Prosecutorial Misconduct and Abuse of Discretion, Also Ineffective Assistance of Counsel/Police Misconduct Error Apparent from Context, Therefore to, error was preserved for review.

Facts Supporting Ground: 29  Appellant Perry also argues that the State committed prosecutorial Misconduct when it introduced a Knife to be used for demonstrative purposes, in doing so, it violated an agreement regarding the suppression of the knife. The Court of Appeals dubiously states to wit: Because the Parties agreement was "allegedly" (Emphasis Supplied) Violated, Perry argues that the Trial Court erred in admitting the demonstrative Knife. Our review of the record reveals that Perry has failed to preserve these points 'Really? And Appellant Maintains that the word: Suppress, when it pertains to evidence in a Criminal Case Significes that the evidence in question was obtained illegally. In violation of the United States Constitution and even the Texas Constitution. The Court goes on to say that Perry filed a generalized Motion to suppress any evidence during an illegal Search and Seizure. That Motion was never heard or ruled on by the Court. THE COURT: Y'all have an agreement on that? (The State): Okay, We... Were scheduled for a Motion to Suppress yesterday. It did not go through. I dont know if we want to put Something on the record? (Defense Counsel): We do, Your honor, Since its my Motion to Suppress, I dont Mind Stating what I understand the agreement to be. We had a Motion to Suppress evidence that was scheduled for a hearing yesterday afternoon (Two days before Trial) Specifically, What the Motion to Suppress involved, there was an immediate detention of the defendant by the officer when she arrived on the scene that We're going to hear the evidence about today... At some point a backpack, that allegedly the defendant had, was searched and there was a Steak knife that was found in the backpack. Lets Stop right here a moment. There was never any proof that the Steak Knife, or shall

I say, alleged steak knife was actually found in the back pack! There was never any evidence produced at Trial, None of the Police Officers that searched the back pack ever testified at Trial! An Eye witness saw the Police Officers pick up the knife used by Appellant to pick the lock and take it with them! All without a Search Warrant! Tim Cone knew all along about the illegal Search of Perry's Home, Not just the back pack! So did the Prosecutor! And it would be a stretch to assume the Court wasn't advised by the Prosecutor, and/or Police of the Search of Perry's home without a Warrant, Especially after an elapse of 5 1/2 months before Trial! The only person that wasn't informed, was Perry! Lew Dunn sure found out, look at his Reply Brief! Considering all of the Brady violations, Failing to preserve error on these points is ridiculous and a Moot point! Its very obvious that there was an illegal Search and Seizure, Not only of the back pack, but Perry's Home too! Even his person (pockets)! Surely if the illegal Search and Seizure of his back pack was recognized by the Prosecutor and Court, Then by the same evidence the Search of his Home was illegal too! Right? (Appellant Contends that the Trial Court abused its discretion in allowing the use of a knife for demonstrative purposes, over Appellants objections. That ruling had the effect of revoking the dubious agreement of the parties and unfairly rewarded the State) This was Not a Case of a Weapon being lost, or its utility degraded, or its never being recovered from a crime scene; it was not an instance where a Criminal Throws his knife or pistol in the river. That distinction is "critical"! In fact, the distinction that Police Officer Nikkie Williams and her partner in crime, The other Police officer (unnamed) Searched Perry's Home without a Search Warrant and retrieved the "Actual Knife" used by Perry to pick the lock and took it with them, Thats the critical distinction! All parties involved in this Subterfuge to Cover up all of this misconduct are just as Culpable! The Appeals Court also uses an over abudance of Surplusage to claim error was not preserved! Of Course there was misconduct on every level! No Fair and Impartial Trial, Period!

Ground: 30 Ineffective Assistance of Counsel / Prosecutorial Misconduct / Police Misconduct / Erroneous Ruling by The Appeals Court / Illegal Search and Seizure / Abuse of Discretion / Police Misconduct

Facts Supporting Ground: 30 Neglect as to Timely Filing and Getting Ruling on Motion to Suppress; In a Case like This - Warrantless arrest; an illegal Search and Seizure, Not only of a back pack on the person in The drive-way, but his Home after he was Taken away by Police. And Seizure of The alleged instrumentality of an alleged Crime. A Motion to Suppress Should be filed and hearing and ruling Made before Trial, holding That defendant has burden of going forward with Motion to Suppress with evidence That rebuts presumption of proper police conduct. Here, on February 25, 2013, (day of Voir dire) counsel for Appellant Filed "Motion to Suppress, scheduled a hearing but cancelled when he Thought he had an agreement with The State. Disastrous results of That Mistaken Trust have been adequately discussed and are evenly in the record for Habeas Corpus Review. Whatever "Strategic" advantage Trial Counsel might have assumed he had gained by the Mis-Taken Trust were nullified in the "demonstrative Knife use by The State. There is "No doubt" (Error Preserved) That Trial Counsel did not follow The customary course for gaining a ruling on Suppression, you think. In fact, The results of That permeated The case and caused reversible harm to the Appellant. But for the use of "The Knife- which permeated the evidence and States Final Argument - and The lack of limiting instruction, The case would have had a different outcome. Appellant avers, That if The jury had known about all of The other Misconduct as outlined in the previous grounds, They would have found The Appellant Not guilty.

Neglect as to Requesting a Change to The Jury. (Illegal Seizure) Such a neglect of change Matters has been held as reversible, for instance, In a Case before The Court of Criminal Appeals, Where Counsel

Failed to get a limited instruction on a written statement from complainant that it could only be considered for impeachment purposes and not as evidence of guilt. In the case at bar the knife and the state's use of the knife were at the heart of its case, even more reason to cover up the illegal search and seizure and police misconduct (the REAL KNIFE). The use of the knife was by the state, theatrical and impressive on the minds of the jury. Without the knife, there would have been no trial! Tim Cone was either incompetent or he suffered from a disability, or his act of not disclosing the facts regarding the illegal search and seizure and the police taking the Real Knife with them, was Malpractice! There could not have been any "strategic" reason for so blatantly violating the State bar Rules and the Constitutional Rights of his client. The Same could be said of Michael B. Lewis who failed to obtain an Examining Trial or Hire a Private Investigator! Since the Rules and case law dictates that all of the aforesaid be done. To forego a limited instruction gave the jury no restrictions on how they were to consider the Knife, demonstration or otherwise, in their deliberations, since statutes state it is Mandatory! It cannot be said that the failure in giving a limited in-struction did not have a profound impact on convincing the jury to con-vict! With such an instruction, they would have had to temper their del-iberations accordingly. Without "the Knife", Hearsay Statement, Witness sta-tements, the jury would have only been able to rely on the testimony at Trial! Of course the outcome of the trial would have been different. Both prongs of Strickland have been satisfied! Tim Cone should have requested that the illegal Search and Seizure of the Knife from Perry's home without a Search warrant be included in the Courts Charge. Failure to do so irreparably injured the rights of Appellant, vitiating the presumption of innocence and denying Perry a fair and Impartial trial, and effective Assistance of Counsel. the instruction was Mandatory by Law!

2 of 2

137

Ground: 31 Abuse of Discretion / Denial of Due Process / Violation of Right To be Heard Clause of Bill of Rights / Denial of Right To Examining Trial / Denial of Right of Confrontation

Facts Supporting Ground: 31 As according To The Magistrates Warning and Rights (Exhibit #4A) issued on or about October 15, 2012. Defendant had a right to an Examining Trial. Not only That, but, (7) Do you request The appointment of Counsel? Appellant answered, No. Therefore, since Appellant did Not request an attorney, and was not appointed an attorney, before he filed a pro se Motion for Examining Trial, he was entitled to an Examining Trial! There was No Hybred representation! Appellant filed The initial Motion for Examining Trial in The JP1 Court on October 22, 2012 His Birthday! (7) Seven days after his initial arrest. The subsequent Motion for Examining Trial was filed on October 30, 2012 in The 188th District Court of Gregg County! Both said motions were Timely! Appellants substantial Due Process Rights were violated! Bail was set at $7,500.00 and $1000.00, but There was No Bail set for The Drug Paraphernalia Charge, or even any mention of said charge! However, Bail was set on The Drug Paraphernalia Charge at $500.00 on October 29, 2012. At some point Appellant was Tried, Convicted, and given Credit for 13 days Time Served in absentia! All without any Due Process Whatsoever! Unbelievable! Appellant Tried to assert his rights to Due Process, and Right To be Heard, and Rights to Redress Grievances with his Government from The very beginning, The day of his arrest! Appellant Makes This observation, if he would have had an Examining Trial from The onset, The Court would have discovered That Police had No Probable Cause and No Warrant To arrest Appellant! In fact, The Court would have (discovered) and I use That Term Loosely, That Police arrested Appellant-Restrained him of his liberty, Then Searched his person, personal pro-

(See Magistrates Warning Exhibit #4A, pro se Examining Trial Motions x 2)
1 of 2 (Exhibits #30 and #31)

138

perty, and his Home, all without a valid Search Warrant. The Court would have learned that None of the witnesses gave a recorded Statement, not even the alleged victim. That the victim was Not Hysterical, of which would have been painfully obvious on a video recording, even the fact that the alleged victim had No injuries. Also, the video recording would have shown that all of the witnesses and the alleged victim were extremely intoxicated and High on illicit drugs as Appellant informed the Police Officer, Nikkie Williams when she arrived and thats why Alanna attacked him. The Court would have learned that the alleged victim did Not have a cut on her lip, that the door was Not kicked down or broke down. Also, that Wilma Mckinney was a material witness too. That Police didnt get a video Statement from her either. Mrs. Mckinney would have informed the Court that she did Not witness an assault, that Alanna was Not Hysterical and that she had No injuries. Also, that Police had No Search Warrant and No body gave an "informed" Consent to Search. That Police Officer Nikkie Williams and her Fellow Police officer picked up "THE KNIFE" Appellant dropped and took it with them. That the two black witnesses were Criminally trespassing, that they previously assaulted Appellant and were not supposed to be In her Home. All of this may have been learned or Discovered in and of an Examining Trial, absent Police Misconduct. Also, that it was Alanna that initiated Contact with Appellant and the he only defended himself. The Court would have learned and/or recognized that Appellant did Not request a Court appointed Counsel as is evident by (7) 16. On the Magistrates Warning (Exhibit #4A.) Again, Appellant had a Fundamental Right to an Examining Trial. Appellant proceeding pro se Timely filed a Motion for an Examining Trial in the Court of Jurisdiction JP 1 Court on October 22, 2012 Which happens to be Appellants Birthday, (See Exhibit #30) Also filed in the 188th District Court (See Exhibit #31) Also See Probable Cause for Arrest Exhibit #2A) (Magistrates Warning Exhibit #4A)

139

2 of 2

Ground: 32  Ineffective Assistance of Counsel at Trial and on Direct Appeal / Prosecutorial Misconduct / Brady Violations / Abuse of Discretion / Failure to Hire a Private Investigator or to Investigate / Violation of Protective Order #3

Facts Supporting Ground: 32  Ineffective assistance of Counsel on Direct Appeal entitles Appellant to a new Appeal! Just like his court appointed Appellate Counsel, Appellant combines these issues addressed in this ground for argument for purposes of judicial economy since they arise out of the same factual and legal context. Appellant informed both his Trial Attorney's and his Appellate Counsel about certain issues he wanted raised at Trial and on Direct Appeal. For instance, the theft of Appellants debit card by the alleged victim and her friends that testified against Appellant at his Trial. Appellant has proof that his debit card was found in the victim's purse with a zero balance on it. That Tim Cone recorded a recant statement from the alleged victim exhonerating Appellant. Tim Cone never produced this exculpatory and impeachment evidence at the erroneous Trial! Even the Jailhouse phone call that the Prosecutors set up! The alleged Tape recorded Jailhouse phone call that Prosecutors set up was not admitted as evidence in the case at bar and was not provided to the defense! The State intended to prove culpability on the part of Appellant, but instead, the victim exhonerated her uncle, the Appellant! But Mrs. Reed and Mrs. Brown states Counsel on Appeal, weren't satisfied with this outcome! Both Mrs Reed and Mrs. Brown completely alter the colloquey of our conversation, only using ex-cerpts of our conversation. They did not follow the rules regarding the prereq-visites that are required by law before its use, violating the Appellants due process rights! Furthermore, that didn't even stop the Court of Appeals from using the Jailhouse phone call either! See Lew Dunns letters exhibits #14E, #14A, to cite just a couple, Appellant has many more! In fact, Appellant wrote many letters to his Trial Attorney and Appellate Attorney! Some of those letter will be submitted as exhibits with this Writ of Habeas Corpus. 140

... ...  ... #22A ... F 2 (Exhibit # 3 Emergency Protective Order)

Also see exhibit #27 Designation of Record on Appeal! There is No record of dozens of pro se motions filed by Appellant, Seems Strange That some of Perry's Motions Made it in The record, but Not others! Wheres Perrys Motion for New Trial? He was bench Warranted all The Way From Prison for a Hearing on it. The High court States That if a District Judge denied The motion in court with Appellant present, he issued a ruling on The Merits, Said Motion Should be part of The record on Appeal! Even Appellants pro se Motions for Examining Trial and Motion For Private Investigator, even Tim Cones Motion To Suppress! Lew Dunn states To wit: I will not have a Copy of your Trial record until after about 90-120 days From now. So, other Than what Mr. Cone has Told me about, I do not have access To what happened at your Trial. From The foregoing I be-lieve you can deduce That it would be very problematic for you To add Some-Thing else To The appellate record! The Court of Appeals is going To look at What is contained in The Trial record and bases its opinion on Those facts and issues. Ya right! (Pills of some Kind! Indeed)(My own prescriptions!) Lew Dunn goes on to say; However, your letter States; I have a great deal of Evide-nce That I believe should be part of my direct Appeal! What Sort of evidence are you Talking about? If it is Newly discovered evidence, That might be useful To look into. However, it has to be evidence That neither you or your lawyer in due diligence could have discovered prior To The Trial! So, has Some witness come forward That you did not Know about? What are you referring To? Did The State withhold any evidence That Would amount To a Brady Violation? If So, What? NotwithStanding The Two Tape recordings, but also Alannas Two Notorized Affidavits exhonerating Appellant. Wilma McKinneys Notorized Affidavit exhonerating Appellant — The illegal Search and Seizure, That also Tacitly proves not only Police Misconduct, but Prosecutorial Misconduct and Attorney Misconduct at The expense of Appellants Substantial Due Process Rights and a fair and Impartial Trial! Brady Violations." **141**

... Tria for New Trial 2 of 2 (Formal Bill of Exception?)

Ground: 33 Ineffective Assistance of Counsel/Prosecutorial Misconduct/Abuse of Discretion/Denial of Discovery/Brady Violations/Denial of Due Process/Denial of Fair and Impartial Trial

Facts Supporting Ground: 33 Appellant was entitled to adequate discovery before, during, and after Trial "By or on behalf of the defendant" Whereas, the "Court in which the action is pending" shall order the State before or during Trial of a Criminal action therein pending or on trial to produce and permit inspection and The State shall disclose to the prose defendant any exculpatory, impeachment or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." In the case of a pro se defendant, if the Court orders the State to produce and permit the inspection of a document, item, or information under the subsection, the State shall permit the pro se defendant to inspect and review the document, item, or information, but is not required to allow electronic duplication. Notwithstanding the Discovery Rules as outlined in the Texas Code of Criminal Procedures, Appellant filed two pro se Motions for discovery that are in fact included in the Designation of Record on Appeal filed in the Clerks office on March 25, 2013. See exhibit #27 Designation of Record on Appeal. However, numerous documents, affidavits, letters, and more were erroneously omitted from the record, see page 1 paragraphs 1 and 3 Furthermore, There was no subpoena issued for eye witness Wilma McKinney, Nor was she included as part of the Designated Record on Appeal, see paragraph 7. Mrs. McKinney was prevented from testifying at Guilt Innocence phase of Trial and told Not to engage the jury, but was later called to testify at the punishment phase of Trial. In Fact, the Court failed to even follow its own Pre-Trial Standing Discovery Orders. That Supposedly Takes the

142

place of all previously filed motions. The law is very clear on the matter of discovery and unambiguous. In the record on this case, there is no record of Perry's motion for a new trial pro se or his Affidavit or even the Addendum to motion for New Trial. Perry was bench warranted to the 188th District Court for a hearing on his pro se motion for New Trial. The Judge denied the motion, but issued a ruling on the merits, preserving error for Appellate review. Furthermore, Appellant instructed his Attorney on Appeal to file a Formal Bill of Exception and include his grounds as part of the record on Appeal. There's no mention of the motion to suppress evidence, there's no mention of the Jailhouse phone call Tape recording, but that doesn't stop the State from introducing it as evidence of culpability of the defendant in the States brief and then the Court of Appeals uses this same erroneously admitted Tainted evidence to deny the Appellant relief, violating his Substantial Due Process Rights, causing irreparable harm. Notwithstanding all of the other Discovery violations, the Police and Prosecutors, even Appellants Court Appointed Attorneys, all withheld exculpatory and impeachment evidence from him before, during, and even after Trial. Police officer Nikkie Williams filed a false Police Report and not until 21 days after the illegal arrest of Appellant. Williams, deliberately, with Malice aforethought, omitted many facts from her Police Report, for instance, the Search of Appellants Home, the knife she picked up and took with her, all of the other Police officers names and or identities. Of course, the Court, the Prosecutors, Court appointed Attorneys, and any, and all agents of the Government also withheld and or covered up evidence in the case at bar. Brady Violations. There's No record of Perry's request for an Examining Trial. Of Course, That would not have been possible because Nikkie Williams did not file her False Police until November 5, 2012, 21 days after Perry's arrest. Even the Emergency Protective Order was Not made part of the record on Appeal (Exhibit #3 EPO)

Ground: 34 Ineffective Assistance of Counsel / Abuse of Discretion / Prosecutorial Misconduct / Denial of Due Process / Denial of Fair and Impartial Trial / Malicious Prosecution / Retaliation / Police Misconduct / Civil Rights Violation

Facts Supporting Ground: 34    Appellant / Applicant combines these issues that are addressed in this ground for agument for purposes of judicial economy, just like his Appellate Attorney, since they arose out of the same or similar factual and legal context. Appellant did not plead true to the prior convictions, nor did he stipulate to the prior assault Family violence, if Appellants dubious Trial Attorney, did, he did it without Appellants knowledge or consent; also see Tim Cones letter Exhibit # 22A. Appellant would make this court know that at the time he plead guilty to the prior assault Family violence he was under duress and being denied medical care and his Chronic medications! Not only does Appellant recieve (SSI) Medicaid, he receives Treatment from two specialist. One for Chronic Intractable Pain, and the other for an anxiety disorder (MHMR)! Appellant only plead guilty to get out of jail as soon as possible inorder to receive Treatment! Petty was in severe pain and distress! Appellant was not even represented by counsel when he entered his plea! The plea of guilty was not made voluntary with the understanding of the nature and the cause of the action against him and the consequence of his plea! In fact, Appellants Sister, the very one that died of a liver disease actually was losing her mental capacity due to her illness and she is the one that assaulted the Appellant, not the other way around! Appellant will even take a lie detector test to prove he's telling the Truth! In fact, right after Petty's release, he went right back to taking care of his baby sister right up until she died! Where were all of you? Zan Brown couldn't even spell Alanna's name correctly! (9 Times States Brief) Misspelled!! The prior Tampering w/ Evidence case! was reversed on Appeal, whereas, the sentence was reversed due to an illegal enhancement, a probated sentence can't be used for enhancement purposes unless it was revoked, Appellants was not.

C.I. C#A2 Police Report        1 of 2        **144**

The very next day, after arriving back in Gregg County from Prison, Appellant was brought before Judge Bradham and District Attorney Carl Dorrough. Appellant was not represented by Counsel. Appellant was offered a special deal, drop his appeal, plead guilty to Tampering w/Physical Evidence, and receive Time Served! No fines and No Court Costs! Oh, and No Parole! Appellant went home that very day! One day doing 25 to life, the next day at home! Who wouldn't take that deal? Appellant maintains that he was arrested for aggravated assault just like the case he is in prison for now! The cases are quite similar! In that, Appellant was again arrested without probable cause and without a warrant - falsely arrested! Appellant not only sued the Police officer that arrested him, but the Assistant District Attorneys Brian LeMaire and Jenny Huckle for violating his due process rights. Appellant even sued his Court Appointed Attorney Kevin Settle. He tried to remove his Court appointed Attorney Kevin Settle, and Settle also filed a Motion to be removed as Perry's attorney, but the Trial court refused to do so! Appellant avers that the present case was also the result of an illegal arrest, that there was no Probable cause, No Search Warrant and Perry was not read his rights! The Police filed a false Police Report in this case, just like the previous case! The only reason Perry plead guilty to the Tampering w/Evidence case was to get out of Prison! Not that he was guilty! In fact, Appellant had the very same dubious ineffective attorney on appeal in that case, Tim Cone! Unbelievable! The state never proved that Perry swallowed 15 to 20 pills to-wit "Serogquel," as alleged on the indictment! (Pills of some kind, Indeed!) Lisa Chatterton lied about that as well! The only difference in the prior cases and the case at bar is that Perry will not waist his time and Money suing through the vehicle of a frivolous 1983! Tim Cone was ineffective for not challenging the prior convictions used for enhancement purposes! There was no sound trial strategy at work, and the results of the proceeding would have been different, Appellant would not have been subjected to two enhancements leading to two 60 years

Ground: 35 Prosecutorial Misconduct/Abuse of Discretion/Ineffective Assistance of Counsel and/or a Disability/Error Preserved from Context Regarding Breach of The Agreement Regarding The Ersatz Knife and Alleged knife/Brady Violations Facts Supporting Ground: 35 Court of Appeals erroneous opinion pp. 25, 26, 27, 28, and 29.

7. No error was preserved regarding the claimed breach of agreement regarding the knife. First of all, the disclaimer. There is no way Applicant can adequately address this issue as outlined in this dubious opinion whereas, just this one point of error takes up (5) Five pages and the Applicant is only allotted (2) Two pages However, Applicant will try to be cogent and coherent. Perry also argues that the state committed prosecutorial misconduct when it introduced a knife to be used for demonstrative purposes because, in doing so, it violated an agreement regarding the suppression of the knife. Because the parties agreement was (allegedly) violated, Perry argues that the Trial Court erred in admitting the demonstrative knife. Appellant, by his Court appointed Counsel, had reached an agreement, or rather, what he lead the Appellant to believe to be an agreement about the knife (Keep in mind, The Police picked up and took the actual knife with them from Perry's home. Never disclosing this fact.) 5½ months before Trial- No disclosure.) The agreement was recited to the Court. Then Startling news comes from Asst. D.A. Reed: Kings X, there is an agreement- but not really. Even the cold record does not mask the surprise of Appellants dubious Counsel, struggling to comprehend this unexpected reversal, or just good acting. Keep in mind, Mr. Cone knew about the illegal search of the backpack, as well as Perry's home long before Trial; and THE KNIFE. Ruse. Mr. Cone Never told Perry about the illegal Search and Seizure of his home, or even the pictures, or even the drug paraphernalia. Surely he knew about the Actual knife Police took with them from the inside of Perry's home!? Mr. Cone didn't bother telling Perry about the Search of his backpack and an alleged knife being found in it. Subterfuge! Surely the Female Cop, Nikkie Williams

told Mrs. Reed about the search of the Home and "THE KNIFE" They took with them?

The Court: Our review of the record reveals That Perry has Failed to preserve these points. Of course Tim Lone talks a lot about The illegal Search of The backpack and The alleged knife Found in The backpack but he never Mentions The illegal Search of Perry's home! Nor is it Mentioned in The Probable cause Affidavit or Police Report! Subterfuge! Misdirection". (The State) Thats Correct, Your Honor. We are agreeing not to, With The Police Officer, go into the search of The backpack or The Fact The knife Was Found in The backpack! Note: Because of This part of The agreement, The Applicant did Not get to Cross-examine The other Police That Searched, not only The backpack, but Perry's Home as Well! Tim Lone knew That all along! As did Mrs. Reed! And also just Cor-before we get into it, we do have a Knife That We plan on using Cor demonstrative purposes only, asking the witnesses if it appears to be similar to The knife That They saw That particular night! Lets stop right here for a second! The real Knife was immediately dropped by Perry and bounced under The dresser, all of the witnesses were Stoned on drugs and Alcohol! They never actually saw The real Knife! Mrs. Reed showed Them The demonstrative knife right before Trial. Of course They Could describe it! Courts opinion pp. 4. All The witnesses were hanging out in Alannas room — The Party continued late into the night" (Emphasis added) Irregardless of all The Subterfuges in Misdirection and Surplusage in The Courts Memorandum opinion, There was Prosecutorial Misconduct! The Court States because Perry did not Secure a ruling on This ground of alleged prosecutorial Misconduct, error was not preserved! To preserve a complaint for appellate review, the complaining party must make a specific objection and obtain a ruling on The objection! And the point of error on appeal must comport with The objection made at Trial! Appellant insist That The objection was obvious From The Context! Considering all of The Brady Violations aforesaid, The entire issue concerning The ruse with the demonstrative knife is Moot! The evidence was Legally and Factually Insufficient!

Ground: 36 Ineffective Assistance of Counsel-Misconduct, and/or a Disability/ Abuse of Discretion / Prosecutorial Misconduct / Denial of Due Process and a Fair and Impartial Trial

Facts Supporting Ground: 36 Closing Arguments and Verdict; Since the State waived its opening argument (VI RR 126), Counsel for Appellant gave his dubious and erroneous closing argument on punishment and argued that the jury "should" punish Appellant for this crime (Emphasis Supplied) not impose a sentence that was out of balance and stressed fundamental fairness (VI RR 132-133), that he had paid the penalty for the offenses shown in the other convictions, "almost all" of which were for lower level offenses (VI RR 135). He also argued that Appellant should not be punished because he was a "Thorn in the side of Government", that that was not a reason for punishment (VI RR 135) That "the jury should only punish Appellant for this case." Since when is it considered sound trial stradegy to tell a jury to punish your client for a crime he adamently expresses he did not commit? Telling the jury that Appellant is a "Thorn in Governments side". Wheres the precedence that says this is sound trial stradegy? "The Jury Should Punish The Appellant." "Indeed." And its no wonder the State waived its opening statement/argument, they had plenty of help from Tim Cone. Notwithstanding the fact that at the beginning of Trial, the Prosecutor, Tanya Reed, told the jury that Perry had already been convicted of assault family violence, and against this recently deceased "Sister", the victims mother. Unbelievable! And theres nothing more pathetic than a lawyer enjoying the luxury of an ex post facto conscience, is there? Wallowing in what a sensitive soul he is! To defend those who might be guilty had always meant that a lawyer could not dwell on their presumed crimes, or prior convictions, but on the need to make the Government prove its case, to question its errors and assumptions, to make the right objections at

Tim Cones letter Exhibit # 22A  1 of 2

148

Trial and/or on Appeal! To ensure that it not convict on supposition, but that the defendant recieve due process, equal protection of law and a fair and impartial trial! One does not need to be a lawyer to analyze the law or the constitution and the inherent need to protect a defendants Due Process Rights and the presumption of innocence! When Prosecutorial Misconduct is intended to "goad" the defendant into moving for a mistrial, the Double Jeopardy clause bars further prosecution, especially, considering the facts in the case at bar, where Appellant was tried and convicted twice for the same crime involving the very same alleged witness/victim! The court abused its discretion when it permitted the State, during guilt/innocence stage of trial, the very beginning of trial, to offer evidence of a prior conviction of Appellant for the offense of Assault, Family Violence (VRR218) Appellants court appointed Attorney objected to this prior to the start of voir dire (IV RR 7-8) and during the states opening statement when states counsel referred to the conviction and a mistrial was denied (VRR 24-25) when the evidence, or rather, conviction was placed into evidence (VRR 218) Moreover, several times in final argument the state referred to the prior conviction in arguing for a finding of guilty (VRR 236, 237, and 238!) The prior was against Mr. Perry's sister (5RR24) The defense attorney objected, but did not give a reason for his objection (5RR24) Sound Trial Strategy, Hardly! Furthermore, Perry did not stipulate to the prior conviction (5RR219) In fact, a fingerprint expert was called in to take Perry's fingerprints! Furthermore, in that case, #17, Appellant was not represented by counsel and only plead guilty under duress in order to get out of jail to take care of his dying sister, Roni. Theres a long history of Gregg County officials abusing Appellants civil rights! "Thorn in Governments side, Indeed! Furthermore, Why on earth would Perry stipulate to the prior AFV, when he plead Not True? See the Judgment, Not True to the Priors for Enhancement and Not Guilty! Perry's Generic Objection to the statement,

Ground: 37 Ineffective Assistance of Counsel - Misconduct - Disability, and/or all of the above/Prosecutorial Misconduct/Abuse of Discretion/Brady Violations/Denial of Discovery/Denial of Due Process/Denial of Fair and Impartial Trial

Facts Supporting Ground: 37 Notwithstanding the subsequent grounds concerning, inter alia, Brady Violations, Appellant further avers that the Government denied the Appellant substantial discovery, effectively preventing him from a fair opportunity to prepare and present an adequate defense, thus, denying him a fair and Impartial Trial. Both of Appellant's Court appointed Trial Attorney's failed to adequately communicate with Appellant and disclose evidence to him, withholding, exculpatory evidence, mitigating evidence, and impeachment evidence. This was made very clear just two days before the jury trial when Tim Cone showed up at the jail and showed Appellant a video of the illegal search of his back pack. Never disclosing to Appellant the illegal search of his Home, the pictures of the inside of his Home, or even the pictures of the victim. Never disclosing to Appellant the fact that Nikkie Williams and her fellow Police officers picked up the Actual Knife Appellant used only to pick the lock and took it with them. The Government, Prosecutors, Michael B. Lewis, Tim Cone, and the witnesses had at or about 5½ months to disclose this evidence to Appellant, but instead, deliberately with malice a fore thaght withheld all of this vital evidence. There is No Sound Trial Stradegy in withholding this evidence from a Defendant. Even Alanna's attempts to sign an affidavit of Non-prosecution, the recant recorded statement, her Notorized Affidavit. Michael B. Lewis's only visit to Appellant at the jail, he told Appellant that the State (Tanya Reed) was offering 12 years for a plea of guilty. If the Appellant refused the State was going to come at him with both barrels. Hense, the two 60 year sentences. This after, Appellant was locked up in a solitary cell for months, beaten by guards, denied Medical Treatment, and all the privledges accorded other prisoners. Perry even filed a Prisoners Civil Rights 150

... Let ... the Cubit#22A       See Exh 2 Defendants letters Exhibits 22 B, C, D, and E

suit. Appellant had a fundamental Right to Discovery and Due Process and Due Course of Law (one of the minimum constituents without which a thing or a system would not be what it is, the American Judicial System) Although it would be impractical to recite the entire Standing Pre-Trial Order from the 188th District Court, Appellant will recite a portion of it, and the entire document will be included as an exhibit #8. As soon as practicable after the appointment or retention of Counsel, the state shall provide defense counsel with: Lets jump to #2 A copy of all affidavits for the issuance of all search and/or arrest warrants for the Defendant or which resulted in the charges to the defendant or evidence to be used against the defendant or probable cause affidavits if the arrest was without a warrant. Note: Nikkie Williams Probable cause affidavit was not even written until long after Appellants illegal arrest and subsequent illegal search and seizure and the affidavit was based on hearsay and illegally obtained evidence. Evidence that was not disclosed to the Defendant.

#5. All exculpatory statements (Alannas recant statement and request to dismiss the erroneous charges) At least five (5) days prior to the Trial Setting, the state shall produce #12 "including demonstrative evidence" (Emphasis Supplied) So you see, Tanya Reed violate the Courts very own Orders. Of course it was an abuse of discretion - to violate your own Pre-Trial Orders. The motion for a New Trial did not raise this issue at all. Ineffective Appellate Counsel. The Appellant did raise all of this and more in his pro se motion for New Trial, even ineffective assistance of counsel. The specific grounds were apparent from the context, especially to the Court and the Prosecutor, who knew very well that they were in violation. Lew Dunn could have filed a formal Bill of Exception to include this and other exculpatory and impeachment evidence, so called Brady Materials. In the record of the Direct Appeal. #24 That any person connected with this prosecution a. signed an affidavit of non prosecution b. desired that criminal charges against Defendant be dismissed. Indeed!!

or 1. Pretrial Orders Exhibit #8    2 of 2    **151**

Ground: 38 Ineffective Assistance of Counsel / Abuse of Discretion / Prosecutorial Misconduct / Appeal Court Error / Denial of Fair Impartial Trial / Denial of Due Process / Denial of Due Course of Law / No Jurisdiction

Facts Supporting Ground: 38 The Crime scene investigation was flawed from the very beginning, a Private Investigator would have proven and shown that the criminal investigation was compromised by the mishandling of evidence and the absence of procedures and analyses that should have been done. Even considering the aforesaid, there was absolutely No evidence of bodily injury whatsoever. Remember, Only a bodily-injury assault can be elevated to a Third degree Felony from a misdemeanor. On a finding that the assault was committed by a household member and that the defendant was previously convicted of assault Family violence. Even considering the fact that Appellant did Not cause bodily injury in the prior convicting. Nor did he stipulate to the prior conviction as the State erroneously claims in its brief and Appellants own Appellate Attorney counters in Appellates Brief. Considering the aforesaid, since the evidence of bodily injury was completely lacking leading to insufficient evidence, the District Court had No Jurisdiction to Try that Count I Assault Family Violence. See, The Court of Appeals erroneous Opinion page 17 Foot Note: Only Bodily injury assault can be elevated from a misdemeanor to a Third degree felony on a finding that the assault was committed by a household member and that the defendant was previously convicted of assault Family Violence. On page 21 the Court erroneously claims that the prior conviction was a jurisdictional enhancement. Perry's previous conviction for assault Family violence raised the level of his assault against McKinney from a Class A misdemeanor to a Third degree felony. Because the prior conviction raised the level of the offense, it was a jurisdictional element of the offense that required a finding from the

Exhibit #32 Private Investigator prose 1 of 2

152

Jury, Perry argues that the Trial Court erred in admitting, during the guilt/innocence phase, a judgment demonstrating that he was previously convicted for family violence. At Trial, Perry objected to the introduction of this previous judgment on the ground that it eviscerated his presumption of innocence. The Court erroneously states that Appellant also stipulated that he had committed the prior offense. No Perry did Not. Perry plead Not True. In fact, a finger print expert was brought in to take Perry's finger prints in order to prove the prior judgment. In fact, the states brief and the Courts opinion are replete with false allegations and facts that were never proven at Trial. Appellants Trial Attorney Not only moved for a Mistrial, but also a Motion for a Directed Verdict of Acquittal, citing insufficient evidence of bodily injury, In fact, it was completely lacking. Tanya Reed even went so far as to tell the jury that the prior assault was against Perry's sister, who had just died. Even though the judge told the jury to disregard that remark, the skunk had been tossed into the jury box and the smell remained. Denying Perry a fair and Impartial Trial. The Cornerstone of our judicial system. A Trial Courts decision to admit or exclude evidence is reviewed only for abuse of discretion. Appellant maintains that it was the Judges duty to grant a Mistrial and report the Prosecutorial Misconduct to the proper authorities. As outlined in Appellants Petition for Discretionary Review. Furthermore, Appellants Trial Attorney, even his initial Court appointed Attorney withheld exculpatory and impeachment evidence from their client the Appellant. Perry filed dozens of Motions pro se in the Court, Notifying the Court of most of these violations right from the beginning. And throughout the judicial process. Appellant filed his Motions for an Examining Trial and Private Investigator long before Nikkie Williams even filed her false Police Report. No Wonder they couldn't conduct any evidentiary hearing. No Police Report Filed, yet. No bodily Injury.

Ground: 39 Police Misconduct / Prosecutorial Misconduct /
Perjured Testimony at Trial / Insufficient Evidence / Denied
Compulsory Process / Brady Violations

Facts Supporting Ground: 39     As according to the erroneous
police report filed some 21 days after Appellants arrest, which
is replete with false assertions and misleading facts that are not
based on the known facts, facts that were proven to be erroneous
at trial on the merits, and now newly discovered evidence that was
erroneously withheld by Prosecutors, the members of its investigative
team, and even Court appointed Counsel. The States Star Witness,
the black girl, Oujuntae, or as she's known on the street, Tae Tae.
A prisoner in the cell next to Appellant at Gregg County Jail while
he was waiting on trial, Fredrick Garland informed Appellant
that he knows Chase Neal and Oujuntae Johnson (Tae Tae) He
told Appellant that Chase is a Crack Dealer and Tae Tae is a
Crack Head, she goes from house to house to get high. And that
she steals painpills from her mom and sells them on the street. He
also tells Appellant that she (Tae Tae) has a history of calling the
Police on People. (Pills of some kind indeed!) Appellant files several
complaint affidavits with Crime Stoppers, (CID) Criminal Investigat-
ion Division of the Longview Police Department, explaining the theft
of his debit card, billfold, food stamp card, and all of his prescrip-
tion Narcotics. (Pills of some kind - Court of Appeals Opinion)
Appellant filed writs in the Trial Court and even a writ of Mandamus
in the Appeals Court and letters to his Trial Attorney and Appellants
Attorney, explaining all of these facts in meticulous detail, even
providing his specialists names and addresses, his medicaid ID No.

1 of 2                                                        154

510423949, D.O.B. 10/22/1959, The Spanish Medications he takes, and even the approximate amount of money stolen out of his account, at or about $2000.00, a felony! Tim Cone refused to subpoena Appellants Bank Records (Exhibit #22A) All of these facts are further evidence of "Modus Operandi" Whereas, get Appellant out of the way by having him put in jail, then steal all the money out of his bank account, and his food stamps and Narcotic prescriptions! (Pills of some kind, indeed) Appellants Medical records will prove that he has a valid prescriptions! The lying black girl, "Tae Tae" is the one that allegedly told Police Officer Nikkie Williams that Appellant stated to wit! Bitch, I'm fixing to stab you! And, Bitch, open the door! You won't find the word Bitch anywhere in the Police Report! But the word Bitch was impressive on the jury! Tae Tae was caught lying on the witness stand several times, but was not charged with perjury, why not? Appellants serving 120 years in prison behind a bunch of perjury! Tanya Reed knew all along that the Police and the witnesses were lying - committing perjury! The Alleged Victim and her grandmother have both submitted sworn notarized Affidavits that prove the Police filed a false Police Report and Manufactured evidence! That the Prosecutors use of a Demonstrative knife at Trial was not only frivolous, but erroneous! The Police intentionally omitted the illegal search of Appellants Home, picking up "THE REAL KNIFE," and taking it with them, and all of the other Police Officers names! Who were they? Nikkie Williams only refers to Wilma McKinney at Trial as the Old Woman! How disrespectful! She's an eye witness too, but you-1 won't find her name in the Police Report or Probable Cause Affidavit.

Ground: 40 Ineffective Assistance of Counsel | Denial of Compulsory Process | Denial of Right to Confrontation of adverse witnesses | Denial of Right to Face accusers | Lack of Investigation | No Private Investigator

Facts Supporting Ground: 40 Trial Counsel failed to Subpoena numerous witnesses including, but not limited to, Wilma Mckinney, the witness that ran off before Police arrived, all of the other Police Officers and investigators that were at the scene of the alleged crime! The Appellant would have proved at Trial under Cross-examination that Police lacked Probable Cause to Search the Appellant and his home, not just his back pack! It would also have been proven at Trial that while Police were Searching Appellants home without a Search Warrant, they picked up the actual knife Appellant used to pick the lock on the bedroom door and took it with them, never disclosing this Brady Violation, only later to erroneously claim they found the knife in Appellants back pack! Unbelievable! Appellate Counsel erroneously and ingenuously claims that the knife Police found in Appellants back pack exists somewhere in the Police property room or the exhibit room in the District Attorney's Office! Appellant asserts and avers that there was never a knife in his back pack! The Knife they're all referring to came from the inside of Appellants Home! Without a Search Warrant, No Chain of Custody — Illegal Search and Seizure — Contaminated Crime Scene! As a Matter of fact, You can Search the record in vain and you will not see the names of any other Police Officers, aside from Nikkie Williams, like rats from a sinking ship, they all vanished! Why? Where are they? Failed to investigate by using an investigator to interview witnesses instead of personally interviewing witnesses, and/or failing to interview any witness period! Where the defendant did not show counsel would have learned more helpful information than his investigator did, provided

LO62

156

Of course, counsel hired a private investigator, either Trial or Appellate Counsel. Applicant maintains that he has made a Prima Facia showing that the witnesses would have offered helpful information and would have been available to testify at trial. As a matter of fact, the eye witness, Mrs. Wilma McKinney did in fact testify at the Punishment phase of Trial, but prevented from testifying at guilt/innocence stage of Trial, the results of the Trial would have been different. Tim Cone told Mrs. Wilma McKinney not to engage the jury. In fact, Mrs. McKinney had no idea that Police and Prosecutors were covering up the illegal Search and Seizure and the real Knife. Tim Cone knew all along, but did not inform the Appellant or his brother, Wilma McKinney. Appellant was blind sided at Trial with all of this. Sound Trial Strategy? To withhold Mitigating and exculpatory evidence from your own Client? To prevent an eye witness from testifying at Trial? Where is the presedence that says this is authorized? In fact, Tim Cone had the pictures of the inside of Appellants Home the entire time before Trial, never disclosing this fact to Appellant, period. Tim Cone withheld the tape recorded recant statement by the alleged victim, Alanna McKinney. Also, the fact that Wilma McKinney told him about the Police picking up the actual knife and taking it with them. Mrs. McKinney had no idea that Tim Cone never told Appellant about the actual knife. Trial Counsel tried to convince Appellant that Police found the actual knife he used to pick the lock on the door in his back pack. When he knew all along that that was the wrong knife. The proof is irrefutable. Just look at grounds 1 through pages 1 to 3 in Reply brief. Appellant does not make these allegations lightly, the proof is irrefutable. The Appellant was also entitled to a defensive theory in the Courts charge. The record is replete with evidence of the prior assault on his person by the two witnesses and the victim said she assaulted her uncle first.

Ground: 41  Ineffective Assistance of Counsel/Charge Error/ Prosecutorial Misconduct/Abuse of Discretion/Defensive Theory

Facts Supporting ground: 41  Post-conviction habeas Corpus relief granted for ineffective assistance of Counsel Where, inter alia, State introduced extraneous acts by defendant and Trial Counsel failed to request either an instruction on the burden of proof or limiting instructions regarding that evidence, Trial Counsels conduct fell below an objective standard of reasonableness. Trial Court would have been required to give the instructions had Counsel requested them given the facts of the case at bar. Failure of the Court to give the instruction is an abuse of discretion, Since the instruction is Mandatory.' (Prior Convicts/Assault Family Violence, Illegal Search and Seizure, Demonstrative Evidence) Therefore, Trials Counsels performance was deficient for failing to request either an instruction on the burden of proof or limiting instructions regarding the extraneous act evidence admitted at defendants Trial (In post-conviction habeas application, Court Considered Affidavit of Trial Counsel, which stated failure to request those instructions was not Sound Trial strategy, but was result of oversight) To be sure, Appellate Counsel in the case at bar, failed to include in Motion for New Trial, inter alia, Ineffective Assistance of Counsel Whereas, Tim Cone could have been Subpoenaed to explain his lack of investigation and failure to request Courts Charge instructions on several key issues, Why he failed to make the proper objections in order to preserve error for Direct Appellate Review, but instead leaving the burden of proof on the Appellant, who's serving a 120 years in a Maximum Security Prison with a Woefully inadequate Law library! Since The Ground of Ineffective Assistance of Counsel Was Not exhausted on Direct Appeal, Applicant is entitled to relief on

1 of 2

review pursuant to a Post-Conviction Writ of Habeas Corpus. Furthermore, Applicant received ineffective assistance of Counsel on Appeal whereas, the Sixth Court of Appeals states that Counsel failed to include in Motion for New Trial, ineffective assistance of Counsel, and the grounds of error on direct appeal do not comport with the objections made at Trial, inter alia, Illegal Search and Seizure, of which Applicant raised the aforesaid grounds and more in his pro se Motion for New Trial, of which should be in all things available for Appellate review".

Because charge did not contain the appropriate burden of proof for the extraneous act evidence, evidence, and evidence obtained without a valid Search Warrant or Probable Cause, it was reasonable to presume that jury did not necessarily find beyond a reasonable doubt that extraneous acts were committed by the defendant and that the evidence, demonstrative or otherwise, was obtained by legal means before using that evidence against him". In light of the evidence presented by both the state and defense, Court concluded the defense was prejudiced because the jury did not receive instructions on burden of proof or limiting instructions for the extraneous acts or the illegal Search and Seizure". Or for that matter, the defensive Theory "Supra". Defense was prejudiced because the charged offense was similar in nature to the extraneous acts (AEV)(Dead Sister) and the extraneous acts were likely considered as direct evidence of defendants guilt. Also, his chances for being convicted only of a lessor-included offense were severely diminished, even considering the Court refused to include the lessor-included offense instruction in Courts Charge". The harm was sufficiently egregious to undermine confidence in the outcome of the Trial. There was a reasonable probability that, but for the error committed by both appointed Trial counsel and Appellate Counsel the results of Trial, and the Appeal would have been different. Applicant is entitled to relief.

2 of 2

159

Ground: 42 Ineffective Assistance of Counsel / Charge Errors /
Denial of Fair and Impartial Trial / Ineffective Assistance of Counsel on Direct
Appeal / Abuse of Discretion

Facts Supporting Ground: 42 In the usual case, an Appellant, in order to
obtain a reversal of his conviction on the ground of ineffective assis-
tance of counsel, must demonstrate both deficient performance and prejudice.
That is, he must demonstrate that; (1) defense counsels performance fell below
an objective standard of reasonableness, and (2) There is a reasonable prob-
ability that, but for counsels unprofessional errors, the results of the proceed-
ings would have been different. However, if an Appellant can demonstrate
that defense counsel entirely failed to subject the prosecutions case to
meaningful adversarial testing, so that there was a constructive denial
of the assistance of counsel altogether, then prejudice is legally presumed.
This holds true for Appellate Counsel as well. In the case at bar, the
Appellate Court asserts that Appellants grounds on Direct appeal do not com-
port with the objections made at trial, thereby precluding appellate court
review Whereas, error was not properly preserved, Nor argued properly on appeal!
On habeas corpus action, cause remanded to habeas court for evidentiary
hearing on issue of whether appellate counsel rendered effective assistance
on matter of informing defendant of rights regarding possibility of
review by court of criminal appeals after decision of court of appeals.
To be sure, Applicants Appellate counsel informed him in numerous letters
that the reason he did not include numerous grounds in Appellates brief
, inter alia, illegal search and seizure and ineffective assistance of counsel,
and in Motion for New Trial, was risk of No review on habeas because
the grounds were already exhausted on Direct review (See Len Dunas
letters to Appellant included as exhibits.) Notwithstanding all the

160

1 of 2

Charge errors, but Trial Counsel failed to make an adequate investigation into avenues of defense and the circumstances of the case. The same could be argued about Appellate Counsel. Trial Counsel has the obligation and responsibility to explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. As a result, Trial Counsel was not adequately prepared for Trial, and defendant received ineffective assistance of Counsel at Trial and on Direct Appeal. Whereas, neither Counsel hired a Private Investigator, in fact, Applicant discovered New facts and evidence from his Prison Cell. Trial Counsel referred to Appellant at Trial as a Thorn in Governments Side. Counsel described defendant as fatalistic and uncooperative. Counsel failed to uncover and present evidence of defendants mental health or mental impairment and physical impairment, his family background. Failed to interview witnesses or his Doctors (Perry was in possession of Pills of some kind) Courts Opinion. Prescriptions from Perry's Speciallist. For his disabilities, all Legal. Defendant May be a Thorn in Governments side, but that does not obviate the need for defense Counsel or Appellate Counsel to conduct some sort of Mitigation investigation. Appellate Counsel refused to raise ineffective assistance of Counsel on Direct Appeal or in Motion for New Trial, or at least Thats what Appellant was told by Appellate Counsel. However, in complete Contrast, Appellate Counsel raised ineffective assistance of Counsel on Direct Appeal, but Not in Motion for New Trial. However, There is No Merit to States Contention That Claim of ineffective assistance of Counsel Must be preserved in Trial Court by hearing on Motion for New Trial, even Considering the fact that the Applicant raised ineffective assistance of Counsel in his Pro Se Motion for New Trial. Applicant was bench warranted back to Trial Court for a hearing on his pro se Motion for New Trial Thereby preserving error for Appellate review.

Ground: 43    Attorney Misconduct / Prosecutorial Misconduct / Judicial Misconduct / Failure To Report Misconduct

Facts Supporting ground: 43

Applicant avers that the Prosecutor Tanya Louise Reed, Zan Colson Brown, and including their boss, The honorable Carl Dorrough, the Criminal District Attorney, all violated The state Bar Rules' that would of course tacitly prove that Tim Cone, Michael B. Lewis, and Lew Dunn were all just as culpable, sc-ilicet, failed to maintain the integrity of the profession, whereas, a lawyer having knowledge that another lawyer has committed a violation of the applicable rules of professional conduct that raises a substantial question as to that lawyers honesty, trustworthyness, or fitness as a lawyer in other respects, shall inform the appropriate disciplinary authorities. And this is exactly what the Applicant did, but no one else, not even the Judge' Again, notwithstanding all of the Brady violations and subterfuges in this direction, The Prosecutor committed misconduct and violated the state bar rules by using the Jailhouse phone call, and the rules governing such a phone call long before Trial; blatantly failed to keep the agreement with counsel on important dis-covery, and was less than candid with the Trial court and court of Appeals in her reasons for doing so' This tacitly concedes that the Judges also committed misconduct by failing to report all of this misconduct to the proper authorities as according to the Code of Judicial Conduct. In other words, Applicant has the rights to a fair and impartial Trial free from Pro-secutorial bad faith and Attorney misconduct even Judicial misconduct, guaranteed and protected by the Fourteenth Amendment Due Process Clause of the U.S. Constitution and Due Course of Law of the Texas Constitution'

CofI                                    162

Ground: 44 Ineffective Assistance of Counsel / Abuse of Discretion / Denial of Substantial Due Process / Brady Violations / Denial of Compulsory Process and The right of Confrontation

Facts Supporting Ground: 44    Just like his Court appointed Appellate Counsel, Perry, The Appellant combines these issues addressed in this ground for argument for purposes of "judicial economy", since they arise out of the same factual and legal context. Several issues in this Appeal concern ineffective assistance of Counsel at Trial and on Appeal. First of all, Appellant was initially Court appointed Mr. Michael B. Lewis, see a letter written to Mr. Lewis on November 13, 2012 by Appellant. Whereas, Mr. Lewis never contacted the Appellant (lack of communication violation of State Bar rules) wrote this letter marked as exhibit #10, in an effort to obtain an Examining Trial and appointment of a Private Investigator. Contrary to what Tim Cones states in his letter exhibit #11, page 1, paragraph 2, Appellant did Timely File said motions and in the proper venue. Copies of these motions will be included as exhibits. Appellant made good on his Threat to File a Writ of Mandamus in The Texas Court of Criminal Appeals Writ No. WR-62,970-05 Filed Date 12/19/2012 Appellant requested that the Court, inter alia, issue an order to direct the Courts to File and issue a ruling on his Writs, however, the Court denied the Writ without written order. The Appellant maintains that the record is firmly established that he did everything in his power to assure his due process rights were protected. Appellant was entitled to effective assistance of Counsel and his right to have an Examining Trial, before arraignment and before Trial. At the Examining Trial, Appellant would have found out that Police Failed to File a report, Whereas, the Police report was not printed until November 5, 2012, 21 days after Appellants erroneous arrest. Further, Appellant would have discovered that the Police also searched his Home without a Search Warrant and that Officer Nikkie Williams and her fellow Police officer (No names provided ever) picked up the actual knife that was used to pick the bedroom door lock, that was dropped by Appellant and took it with them. Appellant and the Court would have discovered that 163 Exhibit #32 Private Investigator Prose 1 of 2 Exhibits #30 and #31 Examine

The Police Searched Appellants Home without a Valid Search Warrant and removed exculpatory and impeachment evidence without filing a Chain of Custody affidavit, Would have obtained all the other Police Officers names and their testimony, If Appellant would have likewise obtained a Private Investigator, he would have discovered that Wilma McKinney, Appellants mother, did not give an informed consent to search and neither did his niece, the purported victim. That Police picked up the knife used to pick the lock and took it with them, never having disclosed this important evidence. In fact, Police Officer Williams filed a False Police Report. None of this exculpatory or impeachment evidence is even stated on her dubious report. Williams had no probable cause, and or a valid Search Warrant in order to arrest/detain Appellant and search his person, personal property, or his home. There was never any proof that Appellant committed a Crime, just hearsay statements. The Supreme Court has long recognized that when a state brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that a defendant has a fair opportunity to present his defense. Meaningful access to justice has been a consistent theme of these cases. We recognized long ago that mere access to the Courthouse doors does not by itself assure a proper functioning of the adversary process, and that a Criminal trial is fundamentally unfair if the state proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. That fundamental fairness entitles indigent defendants to adequate opportunity to present their claims fairly within the adversary system. Lew Dunn failed to hire a Private Investigator as well. Lew Dunn failed to include ineffective assistance of Counsel in Motion for New Trial. However, Appellant raised ineffective assistance of Counsel in his Pro Se Motion for a New Trial and illegal Search + Seizure. The Court issued a ruling preserving the grounds in Perry's Motion for Appellate review, see Perry's Motion for New Trial included herein as Exhibit #24, and Addendum to Motion for New Trial #25

2 of 2

164

Ground #45 The Trial Court Reversibly Erred in Permitting The State to Allow Testimony Under an Exception to The Hearsay Rule / The Court of Appeals Analysis of The Exception to The Hearsay Rule is erroneous due to Police Misconduct and Prosecutorial Misconduct / Ineffective Assistance of Counsell / Abuse of Discretion / Denial of Compulsory Process!

Facts Supporting Ground #45 Appellants Trial Attorney objected at Trial thereby preserving error! The Judge abused his discretion by Allowing the state to elicit Testimony from Officer Williams, the very same Police officer that filed a false Police report and not until 21 days after the arrest of Appellant, November 5, 2012! She left out the illegal Search of Appellants home, picking up the actual knife and taking it with her, Never disclosing This vital exculpatory and impeachment evidence! Or even the names of the other Police Officers involved! Nor did Ms. Williams get a recorded statement from The victim or any of the witnesses as required by statute! The Court of Appeals erroneously omits That fact from their dubious opinion! Perry submitted a Writ of Mandamus with 33 exhibits, including two Notorized Sworn Affidavits from witnesses who state that Alanna was not Hysterical! That she had No injuries! The record at Trial was not Complete due to many Brady and Constitutional Violations. Wilma McKinney also states in her affidavit that Alanna was not Hysterical, she was of sound mind! Wilma McKinney was prevented from testifying at The Guilt/Innocence phase of Trial! She also states that There was an illegal Search and seizure! All of the evidence, including the hearsay statements are inadmissible under the exclusionary rule! There was No Tan excited utterance! Alanna McKinney first spoke with Ms. Johnson during the telephone call; She had ample time to reflect and discuss the Case with others, even her Grand Mother, Wilma McKinney! The exception is based on the assumption That the declarant is not, at the time of the statement, Capable of the ... (continued on p. 2)

(See Perrys exhibit #25)(See also 911 phone Call Transcript exhibit #4A) V of 2

165

kind of recollection that would enable him to fabricate information. In fact, and under oath, Alanna Mckinney contradicted the officers recollection about their conversations and stated that she was not hurt physically, she was, in her own words, (emphasis added) mad and upset and emotionally hurt. It was an abuse of discretion for the Trial Court to allow the testimony. Trial Attorney Tim Cone, Police, and Prosecutors knew long before the erroneous Trial about the illegal Search and Seizure of Appellants person, property, and Home, but failed to disclose this information to Perry before Trial or even after Trial. Even Appellants initial Court appointed Counsel, Michael B. Lewis, deliberately withheld this important evidence as well!

Appellant contends that the utterances do not qualify under the test for the hearsay exceptions of either subsections as according to the Rules. There was harmful error and Appellant did not receive a fair and impartial Trial. In fact, there was no recorded statements from any Witnesses. The Court of Criminal Appeals has approached the question in the following way; In the case of erroneously admitted evidence, we have said that the Appellate Court should consider everything in the record, including any testimony or physical evidence admitted for the jurys consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the states theory, and any "defensive theories" (emphasis added) closing arguments (Tim Cone telling the jury to convict his client?) Voir dire, and whether the state emphasized the error. Harm comes from the use those after made by the state. Particularly during final argument, Tim Cone failed to request a defensive theory in Courts charge and withheld the fact that Alanna assaulted her uncle, the Appellant first, and Appellant only used Self defense to the degree necessary to protect himself!
(See; Wilma Mckinney Affidavit Exhibit #3)(See Alanna Mckinneys Affidavit Exhibits #1A, 1B)

P. 2 of 2

166

Ground:46  There Was Reversible Error When The Trial Court Refused To Include Appellants Requested Charges on Lesser Included Offenses In The Courts Charge on Guilt Innocence / Abuse of Discretion / Prosecutorial Misconduct / Brady Violations / Ineffective Counsel

Facts Supporting Ground:46  In his ninth issue, Appellant avers That The Judge should have instructed The jury To consider a Lesser Included Offense of assault by offensive Contact, which is simple assault by Contact, both misdemeanors. These offenses, simple assault and assault by Contact in an offensive Manner, are The Two offenses Mentioned by Trial Counsel (as he argued for Their inclusion in The charge. (5 RR 226-227) An offense is a lesser-included offense if it is established by proof of the same or less Than all The Facts required to establish The commission of the offense charged. The states analysis does not hold up! The lesser-included offenses have nothing to do with a prior assault family violence instruction Conviction. You Would First have to prove bodily injury in order to elevate The AFV To a 3rd degree felony. Otherwise, The Subsequent AFV is only a Misdemeanor. Since There was Not a scintilla of evidence or proof That Appellant Caused Alanna any injury or pain, Then The jury Could only Find Appellant guilty of simple assault. There was also No evidence That Alanna was placed in Fear of being stabbed with The knife but There was evidence That she was offended - mad and upset. Emotionally hurt - Not physically hurt. Remember, The state abandoned paragraph A of Count I bodily injury by hitting Alanna with his hand because The state Failed to prove bodily injury, it was completely lacking! Alanna Contradicted The officers recollections about Their conversations and stated under oath That she was not hurt physically; she was, in her own words, mad and upset and emotionally hurt, hence, Offended! (In Fact, Thats what Applicant is referred to as, an Offender.)

1 of 2

167.

The state uses Subterfuge and hearsay in order to Convince the Jury That a crime happened just exactly like they allege in the indictment. Tanya Reed used coercion and intimidation To manipulate Alanna's testimony at Trial Knowing Full and Well That Alanna was under indictment and Facing serious Felony charges, even considering the pending Felony charges. Alanna tried to tell the Truth. That she was not injured by her Uncle, the Applicant. That he did not point a Knife in her direction. That she initiated contact by grabbing and shoving the Applicant. IF Wilma McKinney, the other eye witness would have been permitted to testify at guilt innocence phase of Trial, she would have testified That her Granddaughter was not Hysterical, that she had no injuries (emphasis added) The state gives False testimony in its brief when they state That none of the witnesses speculated on his intent or Knowledge. There was no proof of his culpable mental state. Applicant avers that witness Chase Neal testified under oath that Applicant didn't know what he wanted to do hisself. If "evidence from any source" raises the issue of less-included offense, a charge on That Lesser offense must be included in the Jury Charge, whether the evidence is introduced by the state or by the defense and whether it is strong, weak, impeached, or contradicted. For Count I, there is plenty of evidence that in struggling with Alanna, Applicant did not inflict bodily injury. See, Alanna's testimony (VRR 149 FF) The only other person supposedly struck by Applicant, Dajuntae Johnson, testified That she was not hurt and felt no pain (VRR 41, 58-59) If there was assault involved there, it raised The issue of a Class C assault by Contact. That evidence is clearly in the record. Count II; Three witnesses - Alanna, Ms. Ayres, and Mr. Neal - testified Appellant did not Threaten Alanna with a Knife when he came in the door, See; Alanna's Sworn Affidavit. There is also The complication concerning THE KNIFE (see Second Issue) (Reply brief p.1-3) (Also see Wilma McKinney's Sworn Affidavit) There is no evidence That THE KNIFE is a deadly weapon. If not, then the alleged offense is a Class A misdemeanor. Appellant was entitled to lesser-charge instruction.

168

2 of 2

Ground: 47 Abuse of Discretion / Prosecutorial Mis Conduct / The Trial Court Erred In Not Granting a Mis Trial When the state Referred to a Prior Conviction For Assault Family Violence During Opening Statement Not Element of Offense

Facts Supporting Ground: 47 During The Trial on guilt/innocence The Trial Court permitted The state to offer evidence of a prior conviction of Appellant for the offense of assault, Family Violence (VRR 218); States Exhibit #17, judgment of Conviction in Cause No. 2011-1557. Appellant objected to the use of the prior conviction at Several points during the erroneous Trial. Mis Trial was Improperly Denied! He objected (1) prior to the Start of Voir dire (IVRR 78), (2) during the states opening statement when the states Counsel referred to the Conviction and a Mis Trial was erroneously denied (VRR 24-25), and when the conviction was placed into evidence (VRR 218). Moreover, several Times in final argument The state referred to The prior Conviction in arguing for a finding of guilt; (VRR 236, 237) and (238) The controlling Language in the statute is This: (ie) it is shown on the Trial of the offense That The defendant has been previously convicted of an offense! (Emphasis Supplied) The offense is not couched in terms of, a person commits an offense! The Court of Criminal Appeals analyzed the differences in such matters Which found That The first phrase meant that The punishment was enhanced, but did not elevate the offense to a higher grade of offense. The lesson to be drawn From This is that The evidence That would enhance punishment is to be left to the punishment phase and Not introduced at guilt/innocence! This did not happen at Appellants Trial. Instead the state placed The introduction of the prior Conviction at The Very Summit of its evidence, introducing it at The close and resting! This served as book-end in its references to States Exhibit #17, since earlier in The Trial The state referred to The prior Conviction during voir dire and its opening statement.

1 of 2

(Note: These issues are grouped together and argued together for The sake of judicial economy and because They arise From a common factual basis!) 1 of 2

169

It has been held that a prior conviction for assault Family Violence is a sentence enhancement, not an element of the offense." (Emphasis added) The defendant was denied a fair and impartial Trial whereas, The admission of States exhibit #17 necessarily Tainted the Trial by bringing before the jury another conviction for assault Family Violence during guilt/innocence, so that Defendant/Appellant was not tried for the offense for which he was accused, but tried on "general principles", something abhorrent to fourteenth Amendment Due Process of Law and also against defendants/Appellants Due Course of Law Rights under the Texas Constitution. As Trial Counsel contended, and now the habeas Corpus Applicant, it violated the presumption of innocence. The prior conviction was a major part of the states Case at guilt/innocence. Despite the Due Process considerations, The states Counsel even placed before The jury certain facts from the prior Conviction when, during opening statement, States Counsel told the jury, "We're also going to prove to you that (Appellant) has a prior conviction. And during that I think that you're going to hear that the prior was against his Sister." Okay? So keep that in mind when you go back! The jury was instructed to disregard; however, Counsels motion for mistrial was overruled (VRR 24-25) That was made up out of the whole cloth by the State's Counsel, unfairly injecting that into the jury's thinking and gaining their sympathies and bias in favor of the state from the word go! After all, it was brought out that the Sister, Alannas Urom, had just died an untimely death! Despite the Trial Courts instruction to disregard, the States Counsel came back to the prior conviction with intensity during final argument, emphasizing it three times within about three pages of the record (VRR 236, 237, 238) Heavy as an engine block, sharp as a razor, like the mouth of an alligator! Apparently, any instruction to disregard was futile especially when the nefarious Tanya Reed wrapped up her case/evidence by placing the conviction before the jury as the crowning piece of its case! The jury saw him as already guilty of Family Violence, must be guilty this time too!

170

2062

Ground: 48     Abuse of Discretion / Ineffective Assistance of Counsel / at Trial and on Direct Appeal / Court of Appeals Error / Erroneous requirement for Appellant to pay Court Costs and Fines, but Not Attorney Fees 'Go Figure'.

Facts Supporting Ground: 48  See, Court of Appeals Memorandum Opinion whereas '11. Attorneys Fee's Must be removed from the judgment' (p. 36) A claim of insufficient evidence to support Court Costs and Court-appointed attorney fees is reviewable on direct appeal. Perry complains of the Trial Courts and now the Court of Appeals assessment of the $10,000.00 fines on each count and order to pay $324.00 Court Costs and $5,100.00 in attorney fee's. The state concedes that Perry is indigent and that the record has no finding by the Trial Court that he had financial resources or was otherwise able to pay the "appointed attorney fees." (Emphasis Supplied) The Court leaves off Court Costs and Fines from this statement. The Court of Appeals goes on to say that 'We have previously held that "Court Costs may be recovered from indigent defendants. Additionally, while the Texas Code of Criminal Procedures requires a Trial Court to determine whether a defendant has financial resources that enable him or her to offset in part or in whole the cost of "appointed counsel" (Emphasis added), the legislature has not preconditioned the collection of fines on a defendants ability to pay.' A Trial Court has the authority to order the reimbursement of court-appointed attorney fees only if "the Court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs." The defendants financial resources and ability to pay are explicit "critical" elements" in the Trial Courts determination of the propriety of ordering reimbursement of "costs and fees of legal services provided." Here, the assessment of attorney fees was erroneous and should be removed.' And, Again, Applicant Perry would point out that the Court excludes the excessive fines of $70,000.00 and Court Costs of $324.00! We Sustain Perry's last point of

1 of 2                                                    171

error and modify the Trial Courts Judgment by deleting the assessment of attorneys fees! And The Applicant avers that the Court of Appeals opinion on This point of error is erroneous whereas, if the evidence proved that Applicant was indigent and unable to offset in part or in whole the costs of the legal services provided, including any expenses and costs! The state claims that there is no support, however to set aside a jurys decision as to the fine! However, Perry asserts that in complete contrast to this statement, and on the very same page of the states brief, page 61, the state says to wit: Appellant argues that because Perry is indigent, he should not have been charged "attorney fees or court costs" There is indeed no evidence that Perry had the means to pay the attorney fees or court costs! Applicant further avers that this Appellate Attorney did not object to this erroneous assessment or counter it in the Reply Brief or raise the issue in Motion for New Trial! Of course, why would he, he got this $5000.00! The Court and State can always be reimbursed by Taxpayers! Applicant further asserts that if by some Miracle he lives to be 84 years old, and he actually makes his first parole in "30 years" And as according to the Courts Judgment, Perry will be required to present himself at the Gregg County Court house and set up a payment plan in order to pay off the $20,384.00 fines and court costs! Unbelievable! Of course, Perry can divide up his Social Security check and food stamps, provided of course, the court will allow Perry to keep enough money to pay for his geriatric medications and Viagra! Ha!

Excessive Fines Clause of Eighth Amendment applies to excessive civil fines since They are punitive in nature. Surely the same can be said of Criminal fines, and that they are, indeed, punitive and excessive when the subject is indigent. And serving 120 years in Prison for Crimes he did not commit! Cruel and Unusual Punishment!

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _____

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS \_\_\_\_\_ DAY OF _____, 20\_\_\_\_.

_____
Signature of Notary Public

16

173

Rev. 01/14/14

**PETITIONER'S INFORMATION**

(Applicant) Petitioner's printed name: _Michael Dean Perry_

State bar number, if applicable: _____

Address: _Ellis Unit_
_1697 Fm 980_
_Huntsville, TX 77343_

Telephone: _____

Fax: _____

**INMATE'S DECLARATION**

I, _Michael Dean Perry_, am the applicant / petitioner (circle one) and

being presently incarcerated in _Texas Department of Criminal Justice_, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _May 26_, 20_15_.

_Michael Dean Perry_
Signature of Applicant / Petitioner (circle one)

17

**174**

**PETITIONER'S INFORMATION**

Petitioner's printed name: _Michael Dean Perry_

Address: _Ellis Unit_

_1697 Fm 980_

_Huntsville, TX 77343_

Telephone: _____

Fax: _____


Signed on _____, 20____.


_____
Signature of Petitioner


18

Ground: 49 Juxtaposition/No Arrest Warrant/No Probable Cause-
Leading to-Denial of Due Process/No Due Course of Law/False
Imprisonment/Terry Stop/Police Misconduct/Official Oppression
(Terry Stop)

Grounds and Facts in Support Thereof: 49

Appellant was walking down his driveway, minding his own business,
in a small town in America (USA), The Land of The Free! However,
Police Officer, Nikkie Williams, upon arrival at Appellants Home,
saw Appellant Walking down his driveway, as opposed to running
like he just committed a crime! Without adducing, and or acquiring
any facts whatsoever that Appellant had committed a crime, Police
Officer Nikkie Williams, restrained the liberty of Appellant by
First hand cuffing his hands behind his back, Then Search his person
and removing items from his pockets, Then placing him in the back
seat of her Police Cruiser with the doors Locked! Furthermore, the
Police Officer Never read Appellant his rights (Miranda Warnings)!
At the bare Minimum, Police are required to either have a Valid arrest
warrant and Probable cause, barring any exigent circumstances, of
which there were none evident when Police arrived at the scene,
before they can arrest a suspect-restrain him or her of their Liberty!
Whereas, Police cannot Arbitrarily restrain the liberty of an American
citizen without just cause, based solely on supposition, because they
are a "Thorn in the side of Government"

Fruit of the Poisonous Tree!

L of 1                                                        176

No. 42,139-A

## THE STATE OF TEXAS vs. MICHAEL DEAN PERRY
DOB 10/22/1959

OFFENSE: ASSAULT FAMILY VIOLENCE WITH PRIOR CONVICTION;
AGGRAVATED ASSAULT WITH A DEADLY WEAPON

Presented in open court by the Grand Jury, a quorum being present and filed this __13th__ day of __December__, 2012.

Barbara Duncan                          By: _____
Clerk of District Court                        Deputy

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS, duly selected, empanelled, sworn, charged, and organized as such for the County of Gregg, State of Texas, at the July – December Term, 2012, of the 124th District Court for said County, upon their oaths present in and to said Court that on or about the 15th day of October, 2012, and anterior to the presentment of this Indictment, in the County and State aforesaid, MICHAEL DEAN PERRY, hereinafter called Defendant, did then and there:

### COUNT I

intentionally, knowingly, or recklessly cause bodily injury to A. McKinney, a member of the Defendant's family or member of the Defendant's household, as described by Section 71.003 or 71.005, Family Code, by hitting A. McKinney with his hand, and before the commission of the offense, the Defendant had previously been convicted of an offense under Chapter 22 Penal Code, against a member of the Defendant's family/household, to-wit: on the 2nd day of June, 2011, in the County Court at Law #1 of Gregg County, Texas, in cause number 2011-1557;

### COUNT II
### PARAGRAPH A

And the grand jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 15th day of October, 2012, in said county and state, and anterior to the presentment of this indictment, the said Defendant did then and there intentionally, knowingly, or recklessly cause bodily injury to A. McKinney by hitting A. McKinney with his hand, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said assault;

## PARAGRAPH B

And the grand jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 15th day of October, 2012, in said county and state, and anterior to the presentment of this indictment, the said Defendant did then and there intentionally or knowingly threaten A. McKinney with imminent bodily injury by holding the blade of a knife in her direction, and did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said assault;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_____
Foreperson of the Grand Jury



| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 188TH DISTRICT |
| | § | |
| v. | § | COURT |
| | § | |
| MICHAEL PERRY | § | GREGG COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX02552108 | § | |

## JUDGMENT OF CONVICTION BY JURY

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. DAVID BRABHAM | Date Judgment Entered: | 2/28/2013 |
| Attorney for State: | TANYA REED | Attorney for Defendant: | TIM CONE |

Offense for which Defendant Convicted:

**CT. I-ASSAULT FAMILY VIOLENCE WITH PRIOR CONVICTION
CT. II-AGGRAVATED ASSAULT WITH A DEADLY WEAPON**

| Charging Instrument: | Statute for Offense: |
|---|---|
| **INDICTMENT** | **22.01 ( b)(2)(A) Penal Code**<br>**22.02 ( a)(2) Penal Code** |

Date of Offense:
**10/15/2012**

| Degree of Offense: | Plea to Offense: |
|---|---|
| **3RD DEGREE CT I**<br>**2ND DEGREE CT II** | **NOT GUILTY** |

| Verdict of Jury: | Findings on Deadly Weapon: |
|---|---|
| **GUILTY** | **YES, NOT A FIREARM** |

| Plea to 1st Enhancement Paragraph: | **NOT TRUE** | Plea to 2nd Enhancement/Habitual Paragraph: | **NOT TRUE** |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | **TRUE** | Findings on 2nd Enhancement/Habitual Paragraph: | **TRUE** |

| Punished Assessed by: | Date Sentence Imposed: | Date Sentence to Commence: |
|---|---|---|
| **JURY** | **2/28/2013** | **2/28/2013** |

| Punishment and Place of Confinement: | **60 YEARS INSTITUTIONAL DIVISION, TDCJ** |
|---|---|

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A** .

| Fine:<br>**$ 10,000.00**<br>**ATTY:$5100.00** | Court Costs:<br>**$ 324.00** | Restitution:<br>**$ N/A** | Restitution Payable to:<br>☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) |
|---|---|---|---|

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **N/A** .

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. |
|---|---|
| | From **10/16/2012** to **2/28/2013**    From    to    From    to |
| Time Credited: | From    to    From    to    From    to |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. |
| | **N/A DAYS    NOTES: N/A** |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in **Gregg** County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel  (select one)**

☒ Defendant appeared in person with Counsel.
☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.



It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INDICTMENT was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and **ORDERED** it entered upon the minutes of the Court.

### Punishment Assessed by Jury / Court / No election  (select one)

☒ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated above.

### Punishment Options  (select one)

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court **ORDERS** Defendant to be confined for the period and in the manner indicated above. The Court **ORDERS** Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court **ORDERS** that upon release from confinement, Defendant proceed immediately to the GREGG COUNTY DISTRICT CLERK OFFICE. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the Sheriff of      County, Texas on the date the sentence is to commence. Defendant shall be confined in the County Jail for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the    . Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the Office of the     County . Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

### Execution / Suspension of Sentence  (select one)

☒ The Court **ORDERS** Defendant's sentence **EXECUTED.**

☐ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED.** The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated.

### Furthermore, the following special findings or orders apply:

Deadly Weapon.
The Court FINDS Defendant used  or exhibited a deadly weapon, namely, KNIFE , during the commission of a felony offense or during immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42.12 §3g.

☐      The Court finds that the deadly weapon was a KNIFE


### EACH 60 YEAR SENTENCE AND FINE ON COUNTS I AND II ARE RUNNING CONCURRENT

# FELONY COURT COST COSTS
## GREGG COUNTY DISTRICT CLERK
### 188th District Court DISTRICT COURT, GREGG COUNTY, TEXAS

## CAUSE NO. 42139-A

**THE STATE OF TEXAS  VS.  MICHAEL DEAN PERRY**

| Fee Code | Fee Description | Initial Amount | Balance |
|---|---|---|---|
| ATTY | Attorney Fee | $5,100.00 | $5,100.00 |
| CLERK | Clerks Fee | $40.00 | $40.00 |
| CCC | Consolidated Court Costs | $133.00 | $133.00 |
| COSF | Court House Security Fund  CCP 102.017 | $5.00 | $5.00 |
| DC-TP | DC-Time Payment Fee | $25.00 | $25.00 |
| DCT-D | DISTRICT COURT TECHNOLOGY | $4.00 | $4.00 |
| FINE | Fine | $10,000.00 | $10,000.00 |
| ID | Indigent Defense Fee | $2.00 | $2.00 |
| JURY | Jury Fee | $20.00 | $20.00 |
| JUSF | Jury Service Fee | $4.00 | $4.00 |
| RMP | Records Management and Preservation | $22.50 | $22.50 |
| RMP-DC | Records Preservation - District | $2.50 | $2.50 |
| SH | Sheriff Fees | $60.00 | $60.00 |
| SJFC | Support Of Judiciary Fund - County | $0.60 | $0.60 |
| SJFS | Support Of Judiciary Fund - State | $5.40 | $5.40 |

**Total Costs: 15,424.00**

I, Adalia Richmond, DISTRICT CLERK CERTIFY THAT THE ABOVE COSTS ARE IN ACCURATE ASSESSMENT OF FEES PURSUANT TO THE LAWS OF THE STATE OF TEXAS, IN THE ABOVE STYLED AND NUMBERED CAUSE IN THE DISTRICT COURT OF GREGG COUNTY, TEXAS THIS THE 28th day of February, 2013.

Barbara Duncan, District Clerk

BY _____ DEPUTY
Adalia Richmond

David Brabham

DAVID BRABHAM, JUDGE

February 28, 2013
DATE SIGNED

CLERK: _signature_

FILED
GREGG COUNTY, TEXAS
FEB 28 2013
3.10
BARBARA DUNCAN, DISTRICT CLERK
BY_____ DEPUTY

COURT ORDERED FINGERPRINTING
OF DEFENDANT'S RIGHT THUMB
DONE IN OPEN COURT (ART.38.33 TCCP)





182



# Court of Appeals
## Sixth Appellate District of Texas

FILED
GREGG COUNTY, TEXAS

AUG 1 5 2014

_____ O'CLOCK _____ M
BARBARA DUNCAN, DISTRICT CLERK
BY_____ DEPUTY

# JUDGMENT

Michael Perry, Appellant

No. 06-13-00051-CR    v.

The State of Texas, Appellee

Appeal from the 188th District Court of Gregg County, Texas (Tr. Ct. No. 42,139-A).   Opinion delivered by Chief Justice Morriss, Justice Carter and Justice Moseley participating.

As stated in the Court's opinion of this date, we find there was partial error in the judgment of the court below.   Therefore, we modify the trial court's judgment to delete the assessment of attorney fees.   As modified, the judgment of the trial court is affirmed.

We note that the appellant, Michael Perry, has adequately indicated his inability to pay costs of appeal.   Therefore, we waive payment of costs.

RENDERED AUGUST 15, 2014
BY ORDER OF THE COURT
JOSH R. MORRISS, III
CHIEF JUSTICE

ATTEST:
Debra K. Autrey, Clerk

183



FILED
GREGG COUNTY, TEXAS

AUG 15 2014

BARBARA DUNCAN, DISTRICT CLERK
BY_____ CLERK _____ DEPUTY
DEBRA K. AUTREY

CHIEF JUSTICE
JOSH R. MORRISS, III

JUSTICES
JACK CARTER
BAILEY C. MOSELEY

## Court of Appeals
### Sixth Appellate District
### State of Texas

BI-STATE JUSTICE BUILDING
100 NORTH STATE LINE AVENUE #20
TEXARKANA, TEXAS 75501
(903) 798-3046

August 15, 2014

Zan Colson Brown
Assistant District Attorney
101 E Methvin St, Ste 333
Longview, TX 75601
* DELIVERED VIA E-MAIL *

Lew Dunn
201 East Methvin Street
Suite 102
P. O. Box 2226
Longview, TX 75606-2226
* DELIVERED VIA E-MAIL *

**RE:** Appellate Case Number: 06-13-00051-CR
Trial Court Case Number: 42,139-A

**Style:** Michael Perry
v.
The State of Texas

The Judgment of the Trial Court in the referenced proceeding on appeal from Gregg county was this date **MODIFIED**, and as modified, **AFFIRMED**, in conformity with the written Opinion of this Court of even date.

A true copy of this Court's Opinion and Judgment is enclosed.

Respectfully submitted,

Debra K. Autrey, Clerk

By _____
Deputy

cc: Ms. Barbara Duncan (DELIVERED VIA E-MAIL)
Hon. David Brabham (DELIVERED VIA E-MAIL)

184



FILED
GREGG COUNTY, TEXAS

AUG 1 5 2014

O'CLOCK_____M
BARBARA DUNCAN, DISTRICT CLERK
BY_____ ,DEPUTY

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00051-CR

---

MICHAEL PERRY, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 42,139-A

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Witnesses described Michael Perry's intoxication at his residence one evening and Perry's violent anger at his niece, Alanna McKinney—also a resident of the Perry household—after McKinney locked herself inside her room in an apparent effort at self-protection from Perry. Witness reports included these actions by Perry when faced with the locked door: repeatedly yelling, "Bitch, open the door," kicking down the door, advancing toward McKinney with a knife in hand, threatening to stab her, struggling with her, and punching her repeatedly. Perry, who had various prior convictions, was convicted by a Gregg County jury of one count of assault family violence with prior family violence and one count of aggravated assault with a deadly weapon, the knife.[1] He appeals on a number of grounds.

We modify the trial court's judgment by removing attorney fees, but otherwise affirm the judgment. We reach that conclusion for the following reasons:

1. Sufficient evidence supports Perry's convictions.

2. Perry was not subjected to double jeopardy with the two charges.

3. Perry was not entitled to any lesser-included-offense instruction.

4. Evidence of Perry's prior offense of family violence was admissible.

5. Perry was not entitled to a mistrial based on the State's opening statement mentioning his prior family violence conviction.

6. Admitting McKinney's accusatory statement through another witness was not error.

---

[1] Perry received enhanced sentences of sixty years' imprisonment and was fined $10,000.00 on each count. He was also ordered to pay $324.00 in court costs and $5,100.00 in attorney fees.

2

7. No error was preserved regarding the claimed breach of agreement regarding the knife.

8. No error was preserved regarding the lack of a jury instruction regarding the knife.

9. Perry's sentences were not constitutionally excessive.

10. No ineffective assistance of counsel was shown.

11. Attorney fees must be removed from the judgment.

We explain these conclusions in that order.

*1.   Sufficient Evidence Supports Perry's Convictions*

In evaluating legal sufficiency of the evidence, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Perry was guilty of both assault family violence with a prior conviction of family violence and aggravated assault with a deadly weapon. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

3

1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* As previously stated, under count I, the State was required to prove that Perry (1) intentionally, knowingly, or recklessly, (2) caused bodily injury to McKinney, (3) that McKinney was a member of Perry's household, and (4) that Perry was previously convicted of assaulting a family member. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2) (West Supp. 2014); TEX. FAM. CODE ANN. § 71.005 (West Supp. 2014). Under count II, the State was required to prove that Perry (1) intentionally, knowingly, or recklessly, (2) threatened McKinney with imminent bodily injury, and (3) used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2014), § 22.02(a)(2) (West 2011).

Perry is McKinney's uncle. They lived together in the same house with McKinney's grandmother, Perry's mother, and McKinney's friend, Dawn Ayers. On the day of the incident, McKinney and Ayers invited their friend, Oajuntae Dominique Johnson, and Ayers' boyfriend, Chase Jermaine Neal, to hang out in McKinney's room. The party continued late into the night.

Johnson, Ayers, and Neal testified that Perry (1) had a history of violence fueled by intoxication, (2) was intoxicated that night, and (3) kept coming into McKinney's room in an attempt to include himself in their conversation.[2] According to Johnson, McKinney locked the

---

[2]Johnson and Neal testified that Perry was in possession of pills of some kind.

4

door to her room because Perry was repeatedly asking the group for crack and because Johnson and McKinney were aware of Perry's propensity for violence when intoxicated.

By Johnson's account, Perry returned five minutes after the door was locked, became angry that McKinney had locked the door, and yelled, "Bitch, open the door; bitch, open the door." Johnson, Ayers, Neal, and McKinney testified that Perry, who was holding a knife, kicked down the door after McKinney failed to open it. The witnesses' accounts of how Perry was holding the knife differed. According to Johnson, Perry advanced toward McKinney with a knife, "like he was fixing to stab [McKinney] with it," and said, "Bitch, I'm fixing to stab you." Neal demonstrated how Perry held the knife, and the State described the demonstration as "not down but kind of maybe at his waist." Ayers initially said she could not recall how Perry held the knife, but stated during cross-examination that the knife was by Perry's side. She was unsure of how Perry was holding the knife because her attention was diverted when Perry and McKinney began fighting.

Johnson and Neal testified that McKinney grabbed Perry's hand and wrestled for the knife while Perry was punching her in the ribs. Ayers and Neal testified that Perry and McKinney were fighting each other and that Perry was punching McKinney forcefully. McKinney succeeded in getting the knife away from Perry. Perry next put McKinney in a headlock, and the fight continued. Ayers could not describe where the blows landed because "[t]hey were punching each other so many times."

5

Neal testified that he broke up the fight, that Johnson picked up the house telephone to call the police, and that Perry hit Johnson in her face, causing her to hang up the telephone.[3] Johnson then ran outside to call the police from her cell phone. Officer Nikki Jean Williams with the Longview Police Department testified that she pulled up at the house to find "a white male walking away from the house and a black female pointing and saying, 'That's him, that's him." Johnson testified that she told the responding police officer what happened, pointed to Perry as a suspect, and watched as Perry was arrested.

Williams knew that a knife had been involved in the incident and restrained Perry for her safety. According to Williams, Perry was intoxicated and agitated. After handing Perry over to another officer, Williams began taking the witnesses' statements. Williams testified that McKinney was shaking, upset, and "was almost at one point hysterical." While in this state of excitement, McKinney told Williams that Perry kicked down the door, came at her with a knife, and hit her approximately eight times in the head.

At trial, McKinney told a different story than the one recalled by her friends. During a jailhouse call, McKinney told Perry that she would try to help him with her testimony in any way that she could. McKinney kept her promise by attempting to testify in Perry's favor and stating, "I don't want my uncle [d]oing 25 to life." She claimed that her grandmother did not approve of Neal and that Perry broke the door to her room in an effort to force Neal to leave the house. McKinney claimed that Perry did not attack her and held the knife by his side instead. As

---

[3]Neal testified that an unnamed friend, who was also at the gathering, left before police arrived because "he couldn't be around all that stuff that was going on."

6

promised to Perry in the jailhouse conversation, McKinney testified that Perry could have used the knife to open the door.

Although McKinney denied feeling threatened with the knife, she testified that she grabbed Perry's hand that was holding the knife, that Perry had her in a headlock, that they struggled, and that a hole in the wall resulted from their wrestling. The State asked why McKinney grabbed Perry's hand if she did not feel threatened and if Perry had not advanced toward her or any of her friends, and McKinney simply responded, "I don't know." McKinney also could not remember whether Perry was hitting her during the struggle and claimed that the incident affected her only emotionally, not physically.[4]

Contradicting McKinney's testimony, Johnson testified that she saw scratches on McKinney's face, a little knot on the back of her head, and that McKinney told her that she was in pain. Johnson believed that Perry's blows would have resulted in pain. Williams also testified that McKinney claimed to be in pain from the attack. According to Williams, "there was a slight red mark on [McKinney's] face," and McKinney "said [that,] during the course of the assault[,] her lip got busted." Williams photographed McKinney's face after the attack. The photographs were displayed for the jury, but Williams testified that she could not see any scratch on McKinney's face due to her severe acne and that it did not appear that her lip was swollen although injury to the lip was visible. McKinney testified that the injury to her lip could have been a fever blister.

---

[4]McKinney testified that, although Perry had not done anything wrong, he packed his backpack and was about to leave when the police arrived.

Citing to McKinney's testimony that she was not hurt, Perry argues that the evidence was insufficient to establish family violence because the State failed to prove that bodily injury was caused.[5] Perry also argues that Johnson's testimony supported McKinney's claim. Johnson testified that, although Perry hit her while she was calling the police, the blow did not hurt her.

However, Johnson also testified that she would have been in physical pain if she had sustained the blows McKinney suffered during the fight. Several witnesses testified to, and photographic evidence suggested, facts that supported findings that McKinney experienced pain.

The jury was well aware of McKinney's promises to Perry to testify in his favor. Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Pierson v. State*, 398 S.W.3d 406, 421 (Tex. App.—Texarkana 2013), *aff'd*, 426 S.W.3d 763 (Tex. Crim. App. 2014); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). As the judge of witness credibility, the jury was free to reject McKinney's testimony and believe Johnson's account. Viewing all of the evidence in a light most favorable to the verdict, we find that the evidence was legally sufficient to prove that Perry, who was previously convicted of assault family violence, intentionally, knowingly, or recklessly caused bodily injury to McKinney, a family household member.

Perry advances two arguments with respect to the aggravated assault count. First, Perry argues that the evidence was insufficient to establish that he threatened McKinney with imminent bodily injury because McKinney claimed that she was not threatened by the knife and

---

[5]Perry's prior conviction for family violence was admitted at trial. Perry admits that McKinney was a member of his household and that he was previously convicted of assaulting a family member. *See* TEX. PENAL CODE ANN. § 22.01(b)(2); TEX. FAM. CODE ANN. § 71.005.

8

some evidence showed that he did not hold the blade in her direction. Second, Perry argues that the evidence did not establish that the knife was a deadly weapon.

Although all of the witnesses testified that Perry was angry and came through the door with a knife, witness testimony on the position of the knife in Perry's hands varied. Ayers, who initially claimed to be distracted and unsure of how Perry held the knife, testified during cross-examination that the knife was at Perry's side. Neal's demonstration to the jury indicated that Perry held the knife "not down but kind of maybe at his waist." However, Johnson testified that Perry advanced toward McKinney with a knife, "like he was fixing to stab [McKinney] with it," and said, "Bitch, I'm fixing to stab you." The evidence, including McKinney's testimony, established that McKinney grabbed the hand in which Perry was holding the knife and held it up during the fight until Perry eventually dropped the knife.

A steak knife was admitted for demonstrative purposes after witnesses testified that the knife was similar to the one used by Perry during the incident. William Jennings, with the Gregg County Sheriff's Office, testified that a knife is capable of causing death or serious bodily injury and was considered a deadly weapon.[6] Because a knife is not a deadly weapon per se, the State was required to prove that the knife, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See Blanson v. State*, 107 S.W.3d 103, 105 (Tex. App.— Texarkana 2003, no pet.); *Jackson v. State*, 913 S.W.2d 695, 697 (Tex. App.—Texarkana 1995, no pet.). To meet this burden, the State was required neither to introduce the knife nor to show that the knife actually inflicted injury. *Jackson*, 913 S.W.2d at 698. Instead, the jury was free to

---

[6]The record does not clarify whether Jennings was shown the demonstrative knife. It appears that Jennings generally testified that a knife is a deadly weapon.

9

consider the facts of the case, including Perry's words, in deciding whether the knife was a deadly weapon.

There was a consensus among the witnesses at trial that Perry possessed a propensity for violence when intoxicated. Unable to control himself in his intoxicated state, Perry kicked down the door to McKinney's room simply because he had been locked out. Photographs depicting the extensive damage to the door were shown to the jury. Despite McKinney's testimony, the damage to the door suggests that Perry did not wield the knife simply to open the lock on the door. Johnson testified that Perry advanced toward McKinney with the knife after declaring that he would stab her. McKinney claimed at trial that she was not threatened with the knife. Yet, she felt compelled to grab Perry's hand in an attempt to prevent being injured by the knife, and Williams testified that McKinney "was almost at one point hysterical."

The evidence of Perry's declaration of his intention to stab McKinney with the steak knife demonstrated that the knife, in the manner of its use or intended use, was capable of causing death or serious bodily injury. Therefore, viewing the evidence in the light most favorable to the verdict, we find the evidence legally sufficient to support the jury's determination that Perry intentionally or knowingly threatened McKinney with imminent bodily injury and exhibited a deadly weapon during the assault.

Because we find the evidence legally sufficient to establish the jury's findings on both counts of the State's indictment, we overrule this point of error.

10

2.    *Perry Was Not Subjected to Double Jeopardy with the Two Charges*

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 14 of the Texas Constitution protect individuals from being tried and/or punished twice for the same offense. U.S. CONST. amend. V, TEX. CONST. art. I, § 14; *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Stephens v. State*, 806 S.W.2d 812, 814–15 (Tex. Crim. App. 1990). The double jeopardy guarantee against multiple punishments for the same offense is designed, in part, to prevent a sentencing court from prescribing greater punishment than the Legislature intended. *McCrary v. State*, 327 S.W.3d 165, 171–72 (Tex. App.—Texarkana 2010, no pet.) (citing *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex. Crim. App. 1992)). The prohibition against double jeopardy is also designed to protect an accused individual from the "embarrassment, expense and ordeal" of multiple trials for the same offense, "compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that[,] even though innocent[,] he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88 (1957). Conversely, "[a]n accused may be punished for two offenses that would be regarded as the same offense if the Legislature has manifested its intention that he should be." *McCrary*, 327 S.W.3d at 172 (citing *Littrell v. State*, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008)).

"The 'same elements' test first articulated by the United States Supreme Court in *Blockburger v. United States* is used to determine if two convictions constitute 'multiple punishment' under the Double Jeopardy Clause." *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "The

11

195

applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions[,] the test to be applied to determine whether there are two offenses or only one[] is whether each provision requires proof of a fact which the other does not."[7]  *Id.*

Thus, when the same conduct violates more than one distinct penal statute and each statute requires proof of a fact that the other does not, it is presumed that the two offenses are not the same and that the Legislature intended to authorize multiple punishments.  *McCrary*, 327 S.W.3d at 172 (citing *Hunter*, 459 U.S. at 366; *Blockburger*, 284 U.S. at 304); *see Phillips v. State*, 787 S.W.2d 391, 394 (Tex. Crim. App. 1990).  But, "if all the elements of one statutory offense are contained within the other, it is presumed that the two offenses are the same and that the Legislature did not intend to authorize punishment for both."  *McCrary*, 327 S.W.3d at 172 (citing *Whalen v. United States*, 445 U.S. 684, 693–94 (1980)).

Here, Perry's convictions arose from the same conduct, and the State alleged that the same conduct violated two distinct penal statutes.  Thus, we must examine whether the Legislature intended to authorize multiple punishments for the offenses alleged in the State's indictment based on the language of the indictment.  *Garfias*, 424 S.W.3d at 61.  Count I of the State's indictment alleged that Perry, who had previously been convicted of assaulting a family member, again committed the offense of assault family violence by hitting and intentionally, knowingly, or recklessly causing bodily injury to household member McKinney.  Count II of the indictment alleged that Perry intentionally or knowingly threatened McKinney with imminent

---

[7]A multiple-punishments claim can arise either in "the lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X)" or "when the same conduct is punished under two distinct statutes where the Legislature only intended for the conduct to be punished once."  *Langs*, 183 S.W.3d at 685; *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

12

bodily injury by holding the blade of a knife—a deadly weapon—in her direction. Perry argues that his convictions for assault family violence with a prior conviction and aggravated assault with a deadly weapon subjected him to multiple punishments for the same offense.

Under count I, the State was required to prove (1) that Perry intentionally, knowingly, or recklessly, (2) caused bodily injury to McKinney, (3) that McKinney was a member of Perry's household, and (4) that Perry was previously convicted of assaulting a family member. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2); TEX. FAM. CODE ANN. § 71.005. Under count II, the State was required to prove that Perry (1) intentionally, knowingly, or recklessly, (2) threatened McKinney with imminent bodily injury and (3) used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). Whereas count I required proof that injury was caused and that Perry was previously convicted of assaulting a family member, count II did not require such proof. Whereas count II required proof that Perry used or exhibited a deadly weapon in threatening McKinney with imminent bodily injury, count I did not require a deadly-weapon finding and instead required proof that injury was caused, not merely that it was threatened. Because each count required proof of facts that the other did not, we presume that the two offenses are not the same and that the Legislature intended to authorize punishments under both. *See McCrary*, 327 S.W.3d at 172; *Phillips*, 787 S.W.2d at 394.

While the *Blockburger* test establishes a presumption, it is only the starting point of our double-jeopardy analysis. *Garfias*, 424 S.W.3d at 58. We must consider

> whether [the] offenses are in the same statutory section; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the

13

offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes.

*Id.* at 59 (citing *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008); *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)). We also look to the allowable unit of prosecution under the statutes. *See id.* ("One other factor reviewing courts should consider when making an 'elements' analysis is the determination of the allowable unit of prosecution for the offenses in question. Although such a determination is a necessary step when a multiple-punishments claim deals with two offenses from the same statutory section, we have stated that, even in an 'elements' analysis, such a determination can be indicative of legislative intent.").

Here, the State's alleged offenses are contained within separate statutory sections. As alleged,[8] (1) the offenses are not phrased in the alternative, (2) assault family violence and aggravated assault with a deadly weapon, although both assaultive offenses, are not named similarly, (3) assault family violence is a third degree felony, whereas aggravated assault is a second degree felony, (4) the focus or gravamen of the family violence count was on the actual harm inflicted to a victim in the same household, whereas the aggravated assault offense count focused on threatening conduct with a deadly weapon, and (5) the unique elements of count I requiring bodily injury and a prior conviction of family violence cannot be considered the same as the unique elements of count II requiring threat with a deadly weapon. *See* TEX. PENAL CODE

---

[8]"What the State could have charged . . . does not factor into a reviewing court's determination, and cannot serve as the basis of a double-jeopardy violation." *Garfias*, 424 S.W.3d at 62.

14

ANN. §§ 22.01(a), (b); 22.02(a), (b); *Garfias*, 424 S.W.3d at 60. In the absence of express legislative intent, the focus or gravamen of an offense best describes the allowable unit of prosecution. *Garfias*, 424 S.W.3d at 61. As in *Garfias*, because the focus or gravamen of the alleged offenses differs, we find that the unit-of-prosecution determination indicates that the Legislature intended to allow Perry's multiple punishments. *See id.*

Where, as here, "the Legislature specifically authorizes multiple punishments under two statutes, even if those two statutes proscribe the same conduct, 'a court's task of statutory construction is at an end[,] and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.'" *McCrary*, 237 S.W.3d at 172 (quoting *Hunter*, 459 U.S. at 368–69). We find that Perry was not subjected to double jeopardy prosecutions for, convictions of, or punishments for assault family violence with a prior conviction for family violence and aggravated assault with a deadly weapon. *See Childress v. State*, 285 S.W.3d 544, 549–550 (Tex. App.—Waco 2009, pet. ref'd) (concluding that the Legislature intended to treat dating violence assault and aggravated assault as separate offenses). Consequently, we overrule this point of error.

3. *Perry Was Not Entitled to any Lesser-Included-Offense Instruction*

Our review of alleged jury-charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Initially, we determine whether an error occurred, and then "determine whether sufficient harm resulted from the error to require reversal." *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d

15

157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaff'd by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

The assault statute sets out three separate and distinct assaultive crimes: bodily-injury assault, assault by threat, and offensive-contact assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1)–(3); *Landrian v. State*, 268 S.W.3d 532, 536, 540 (Tex. Crim. App. 2008). During the charge conference, Perry asked that the court include, as lesser-included offenses, assault by threat and offensive-contact assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(2)–(3). Perry argues that the trial court's failure to include these lesser-included offenses was erroneous.

Before being required to submit a lesser-included charge, the court must conclude (1) the requested charge is for a lesser-included offense of the charged offense and (2) there is some evidence that, if the defendant is guilty, he or she is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006) (citing *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005); *Campbell v. State*, 149 S.W.3d 149, 153 (Tex. Crim. App. 2004)).

An offense is a lesser-included offense if:

> (1)     it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2)     it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3)     it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4)     it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

16

Count I of the indictment alleged that Perry caused McKinney bodily injury by hitting her with his hand, that McKinney was a member of the household, and that, previously, Perry had been convicted of family violence.[9] As submitted to the jury, count II alleged assault by threat, plus the use or exhibition of a deadly weapon. "[T]he pleadings approach is the sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction." *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). Thus, the first step involves a question of law that does not depend on the evidence to be produced at trial. *Id.* at 535–36. We look to the allegations in the indictment to ascertain whether Perry was entitled to the requested lesser-included offenses.

Perry requested submission of offensive-contact assault as a lesser-included offense. *See* TEX. PENAL CODE ANN. § 22.01(a)(3). Offensive-contact assault requires a finding that a person "intentionally or knowingly caused physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01(a)(3). In proving either under count I that Perry hit and caused bodily injury to McKinney, or under count II that Perry threatened bodily injury with a deadly weapon, the State was not required to prove that Perry knew or should have reasonably believed that McKinney would regard the action as offensive or provocative. *See McKithan v. State*, 324 S.W.3d 582, 591 (Tex. Crim. App. 2010). Therefore, offensive-contact assault would not be established by proof of the same or less than all the facts required to establish the commission of

---

[9]Only a bodily-injury assault can be elevated from a misdemeanor to a third degree felony on a finding that the assault was committed by a household member and that the defendant was previously convicted of assault family violence. *See* TEX. PENAL CODE ANN. § 22.01(b)(2). Thus, the goal in requesting assault by threat and offensive-contact assault charges was to allow the jury to make a determination that, if Perry was guilty, he was guilty only of a misdemeanor.

17

the offense charged. *Id.* (concluding that offensive-contact assault was not a lesser-included offense of bodily-injury assault). Accordingly, offensive-contact assault was not a lesser-included offense of the charged offenses, and the trial court was not required to submit an offensive-contact assault charge. *See id.* (interpretation that offensive-contact assault was lesser-included offense of bodily-injury assault would undermine Legislature's intent to place three distinct criminal offenses in Section 22.01(a)).

Next, we address whether assault by threat is a lesser-included offense of the charged offenses. For guidance, we look to *Hall* and *McKithan*. In *Hall*, the Texas Court of Criminal Appeals found that aggravated assault by threat was not a lesser-included offense of murder because murder required an act that caused death, while the aggravated assault required evidence of a threat of imminent bodily injury to another. *Hall*, 225 S.W.3d at 536. As stated by *McKithan*, "*Hall*, therefore, decided that shooting and killing a person with a gun is not, in a step-one lesser-included-offense analysis, functionally equivalent to threatening that person with imminent bodily injury by displaying a gun." *McKithan*, 432 S.W.3d at 593 n.26. The State was not required to prove, in *Hall*, that imminent bodily injury was threatened even though the State's evidence may have shown assault by threat. *Id.* By analogy, assault by threat required proof that Perry threatened McKinney with imminent bodily injury, whereas assault causing bodily injury does not have elements of either a "threat" or "imminent bodily injury." Therefore,

18

202

assault by threat was not a lesser included charge under count I, since it required proof of more facts, not the same or fewer.[10]

Unquestionably, however, assault by threat is a lesser-included offense of the State's aggravated assault charge under count II. The key distinction between assault by threat, as requested by Perry, and aggravated assault by threat, as charged, is that an aggravated assault charge requires the State to establish that Perry used a deadly weapon during the commission of the assault, whereas a charge of simple assault by threat does not. *See* TEX. PENAL CODE §§ 22.01(a)(2), 22.02(a)(2). Therefore, we move to step two of the analysis.

We determine whether assault by threat is a valid rational alternative to the charged aggravated assault offense by determining whether the evidence could allow a jury to rationally conclude that, if Perry was guilty at all under count II, Perry was guilty only of assault by threat. *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000). "[I]n determining whether the second prong has been met, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003).

Here, there must be some evidence suggesting that Perry did not use or exhibit a deadly weapon in the commission of the assault. Every witness present during the incident testified that Perry was holding a steak knife when he kicked down McKinney's door. While some witnesses

---

[10]We previously ruled on this issue in *Moore v. State*, No. 06-08-00070-CR, 2008 WL 4613843, at *2 (Tex. App.— Texarkana Oct. 20, 2008, no pet.) (mem. op., not designated for publication). Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

19

testified that Perry held the knife to his side after his entry, each witness confirmed that Perry continued to wield the knife during a portion of the altercation with McKinney and that McKinney grabbed the hand in which Perry was holding the knife, presumably to protect herself from injury.[11] Therefore, there was no evidence from which a rational jury could find that Perry did not use or exhibit a deadly weapon during the commission of the assault. Accordingly, the trial court was not required to submit a charge on simple assault by threat to the jury.

There was no error in the denial of Perry's requested assault by threat and offensive-contact assault jury charge submissions.

*4.*      *Evidence of Perry's Prior Offense of Family Violence Was Admissible*

Perry argues the trial court erred in admitting, during the guilt/innocence phase, a judgment demonstrating that he was previously convicted for family violence. At trial, Perry objected to the introduction of this previous judgment on the ground that it eviscerated his presumption of innocence. Perry also stipulated that he had committed the prior offense in an effort to remove the State's need for the prior conviction. After the State argued that the prior conviction was an element of the offense, the trial court overruled Perry's objection and admitted the judgment of conviction for family violence.

A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion if the decision to exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on

---

[11]We have already determined that a steak knife, when wielded during an altercation, is, in the manner of its use or intended use, capable of causing death or serious bodily injury.

20

204

reh'g); *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd). So long as decisions fall within that zone, we may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

On appeal, Perry argues that the trial court erred in admitting the judgment because the prior conviction was not an element of the offense. Perry is incorrect. There are two principal ways in which a prior offense can be used by the State, either as a sentence enhancement during the punishment phase of trial or as a so-called "jurisdictional enhancement" that raises the degree of the offense. *See, e.g., Harris v. State*, 204 S.W.3d 19, 24 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). This prior offense fulfilled the latter role, as a jurisdictional enhancement. Perry's previous conviction for assault family violence raised the level of his assault against McKinney from a class A misdemeanor to a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2). Because the prior conviction raised the level of the offense, it was a jurisdictional element of the offense that required a finding from the jury. *See Luna v. State*, 402 S.W.3d 849, 850 (Tex. App.—Amarillo 2013, no pet.); *Sheppard v. State*, 5 S.W.3d 338, 339–40 (Tex. App.—Texarkana 1999, no pet.) (citing *Gant v. State*, 606 S.W.2d 867, 871 n.9 (Tex. Crim. App. 1980)). Thus, no abuse of discretion in admitting the conviction has been shown.

21

5.     *Perry Was Not Entitled to a Mistrial Based on the State's Opening Statement Mentioning His Prior Family Violence Conviction*

During opening statement, the State told the jury, "We're also going to prove to you that he has a prior conviction. And during that I think that you're going to hear that the prior was against his sister." The trial court sustained Perry's generic objection to the statement. The court further instructed, "Ladies and gentlemen, the prior is only for jurisdictional purposes only, and you won't allow that to affect your decision other than to establish that there was a prior conviction if there was one." Perry, who failed to state the legal basis of his objection, then moved for a mistrial, which the court denied.

On appeal, Perry argues that the trial court erroneously denied his motion for mistrial. A trial court's ruling denying a motion for mistrial is reviewed for an abuse of discretion. *Duke v. State*, 365 S.W.3d 722, 727 n.9 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)). Perry's argument is based on the erroneous belief that the prior conviction was not admissible during guilt/innocence. Because, as explained above, the prior conviction was admissible during guilt/innocence, the trial court did not err in overruling Perry's motion for mistrial.[12]

---

[12]Perry stipulated to the existence of the prior conviction for family violence. Perry complains, for the first time on appeal, that the State referenced the victim of the prior conviction. There are several methods to proving prior convictions, including introducing testimony of the facts and circumstances of the prior conviction, which can include the name of the victim. *See Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986).

22

*6.    Admitting McKinney's Accusatory Statement Through Another Witness Was Not Error*

Over Perry's hearsay objection, the State was allowed to elicit testimony from Officer Williams that, on the scene in the immediate aftermath of the incident, McKinney told Williams that Perry had kicked the door down, had come at McKinney with a knife, had held a knife at her, had hit McKinney about eight times in the head, and had thus caused McKinney to feel pain on the side and back of her head. Williams testified that McKinney was shaking, crying, and "almost at one point hysterical." The State argued that McKinney's statements to Williams, made in this state of excitement, were admissible based on the excited-utterance exception to the hearsay rule.[13] Perry now complains that the court's ruling was in error.

"The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion."[14] *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A reviewing court should not reverse unless a clear abuse of discretion is shown. *Id.*

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *see Zuliani*, 97 S.W.2d at 595; *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). The basis for the excited-utterance exception is "a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily

---

[13]The State also argued that Williams' recollection of McKinney's statements to her impeached McKinney's testimony that she was not in any physical pain and did not feel threatened by Perry.

[14]"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). For hearsay to be admissible, it must fit into an exception provided by a statute or the Texas Rules of Evidence. TEX. R. EVID. 802.

23

loses the capacity for *reflection* necessary to the fabrication of a falsehood and the 'truth will come out.'" *Zuliani*, 97 S.W.3d at 595 (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972) (emphasis added)).

On appeal, Perry argues that McKinney's statements were not excited utterances because McKinney had an opportunity for calm reflection while she waited for police to arrive. He adds that McKinney first had the opportunity to talk to Johnson and that, while McKinney could be heard in the background of the 9-1-1 call, it did not appear that she was upset or hysterical.

The critical determination when deciding whether to apply the excited-utterance exception is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *Id.* at 596. If the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection," abuse of discretion in admitting the statement cannot be shown. *Id.*

Despite Perry's assertions that McKinney had the opportunity to calm down, the evidence showed that she had not. As suggested by McKinney's shaking, crying, and declarations of pain to Williams and Johnson, the attack was a startling event. Perry was still on the premises when Williams arrived. Williams, who interviewed McKinney shortly after the 9-1-1 call was made, testified that McKinney was in an excited state during the interview. McKinney herself stated that she was "mad and upset that night" when she was speaking to Williams. Based on this evidence, the trial court found that McKinney was still dominated by the emotions produced by Perry's attack.

24

Because the trial court's decision to admit McKinney's statements to Williams under the excited-utterance exception to the hearsay rule is supported by the record, no abuse of discretion has been shown. *See Marsh*, 343 S.W.3d at 478 (quoting *Montgomery*, 810 S.W.2d at 391). We overrule Perry's complaint on this point.

7.    *No Error Was Preserved Regarding the Claimed Breach of Agreement Regarding the Knife*

Perry also argues that the State committed prosecutorial misconduct when it introduced a knife to be used for demonstrative purposes because, in doing so, it violated an agreement regarding the suppression of the knife. Because the parties' agreement was allegedly violated, Perry argues that the trial court erred in admitting the demonstrative knife. Our review of the record reveals that Perry has failed to preserve these points.

Perry filed a generalized motion to suppress any evidence obtained during an illegal search or seizure. That motion was never heard or ruled on by the court. The record memorializes the events and alleged agreements as follows:

> [The State]:    Okay. We . . . were scheduled for a Motion to Suppress yesterday. It did not go through. I didn't know if we want to put something on the record.
>
> THE COURT:    Y'all have an agreement on that?
>
> [Defense counsel]:    We do, Your Honor. Since it's my motion I don't mind stating what I understand the agreement to be. We had a Motion to Suppress evidence that was scheduled for hearing yesterday afternoon at 3 o'clock. Specifically, . . . what the Motion to Suppress involved, there was an immediate detention of the defendant by the officer when she arrived at the scene that we're going to hear the evidence about today . . . .
> At some point a backpack that allegedly the defendant had was searched and there was a steak knife that was found in the backpack. And it was taken into evidence and there was some indication that that potentially could have been used

25

as evidence in this case. And our basis for the Motion to Suppress was we feel like it was inappropriately seized and the backpack was inappropriately searched. . . . After we selected the jury on Monday, January -- February 25th, [the State] called me on my cell phone as I was headed home and [it] indicated that they didn't want to agree to the Motion to Suppress. However, they would agree not to ask about the knife. They would also -- and I assume the search of the backpack, that was the only thing that was found. And they would not try to introduce the steak knife at trial or refer to it in any way. In return they asked that I not say anything in argument or ask the police officer about, "Well, did you find a knife," or argue to the jury, "Where is the knife?"

And I agreed to that. I agree to it still. I visited with Mr. Perry about, that yesterday, and he's fine with that. Obviously, we can still ask questions about whatever weapon the witnesses described and make appropriate arguments about that, but I certainly have no problem with upholding the agreement that we made.

. . . .

[The State]: That's correct, Your Honor. We are agreeing not to, with the police officer, go into the search of the backpack or the fact that the knife was found in the backpack. We will go into questions in regards to the knife with the witnesses. And also just for -- before we get into it, we do have a knife that we plan on using for demonstrative purposes only, asking the witnesses if it appears to be similar to the knife that they saw that particular night.

Perry argues that the State committed prosecutorial misconduct when it "blatantly undid the agreement with counsel on important discovery and . . . was less than candid with the trial court in [its] reasons for doing so." Perry's point of error does not complain of any action by the trial court. This is because Perry did not raise and did not secure a ruling on this ground of alleged prosecutorial misconduct. To preserve a complaint for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see*

26

210

TEX. R. APP. P. 33.1(a). Because Perry did not present his complaints to the trial court, the issue of prosecutorial misconduct is not preserved for our review.[15]

Perry did, however, complain of the use of the demonstrative knife. Once Perry was informed of the State's intent to use the demonstrative knife, the following discussion occurred, indicating Perry's objection:[16]

> [Defense counsel]: I don't know that I've seen that knife.
>
> [The State]: You haven't.
>
> . . . .
>
> [Defense counsel]: If I may add, this is the first time I've seen this particular knife. I don't know where that knife came from. I wonder if that can be placed on the record?
>
> THE COURT: That's not a piece of evidence found in connection with this case?
>
> [The State]: No. Although it is -- I can tell the Court that it's exact -- similar except it's missing one little silver piece in the handle. It came from our Investigator Hall Reavis' home. He looked at the one and said he had one just like it. He brought it yesterday from home. We plan on using it.
>
> Your Honor, I've already spoke to the witnesses telling them not to mention anything about the search of the backpack if they even did know. I spoke to the officer. But I have shown them this and asked them if it looked similar to -- similar in size, shape and color to the one that they saw Mr. Perry had that particular night.

---

[15]In any event, the transcript above demonstrated that the State agreed only to refrain from questioning the arresting officer about the knife found in the backpack, from offering the actual knife used in the assault, and from introducing evidence that a knife was found in Perry's backpack. Perry's comments indicated agreement that the parties could question witnesses about the knife for the purposes of describing the knife and how it was used. The State indicated its intention to use the demonstrative knife and ask whether it was similar to the one used by Perry during the incident.

[16]The transcript demonstrates that Perry failed to suggest that the State's intended use of the demonstrative knife would violate any agreement between the parties.

27.

THE COURT: Well, that's really not part of the agreement. You could lodge an objection if you wish to at an appropriate time, correct?

[Defense counsel]: And I will, Your Honor. I will do that . . . .

THE COURT: I think it's good to place all that on the record, but it is a separate issue.

[The State]: Yes. But I just want to let him know before we get into trial.

The discussion ended without either an expression of the legal basis of the objection to the demonstrative knife or a ruling. Then, during Johnson's direct examination by the State, the following objections and arguments were presented:

Q. . . . Okay. I'm going to show you what's been marked State's Exhibit 1 for demonstrative purposes. Does this -- even though this is not the one, does this appear to be similar in nature that he had when he came in the room?

A. Yes, ma'am.

Q. And can you hold that and show us how he was holding the knife when he came in the room?

A. He was holding it like-he was going to stab --

THE COURT: Hold on . . . .

[Defense counsel]: Judge, I'm going to object to this this is the knife -- this knife was provided just before court this morning. We object that's improper notice of the intended use of that matter. Further, if she's going to ask her to display it to the jury, it's not even been offered at this point.

THE COURT: I'm going to overrule the first part of your objection. I think we need to get it offered for demonstrative purposes first if we're going to use it.

[The State]: State would offer State's Exhibit 1 for demonstrative purposes only.

28

212

[Defense counsel]:     We make the same objection.

THE COURT:     Overruled.

After the demonstrative knife was admitted, Ayers, Neal, and McKinney also testified, over objection, that the demonstrative knife was similar to the knife Perry used during the assault.

Perry's objection to the admission of the knife at trial was only that he had not been given prior notice of its use and that the State was showing the exhibit to the jury even though it had not been admitted. On appeal, however, Perry argued that the trial court erred in admitting the demonstrative knife because (1) the ruling had the effect of revoking the parties' agreement and (2) the demonstrative knife should not have been used because the original knife was available. The point of error on appeal must comport with the objection made at trial. *See Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005); *Wilson*, 71 S.W.3d at 349. Because Perry's complaints on appeal were not asserted below, they do not comport with his objections at trial, and nothing is preserved for our review. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

We overrule Perry's points of error complaining of the State's use and the trial court's admission of the demonstrative knife because he has failed to preserve them.[17]

---

[17]It is noted, however, that this use of the knife is what was explicitly mentioned when the agreement was stated on the record.

29

8.      *No Error Was Preserved Regarding the Lack of a Jury Instruction Regarding the Knife*

Citing to *Miskis v. State*, Perry argues that an instruction to the jury limiting the purpose for which they could consider the demonstrative knife was mandatory. *Miskis v. State*, 756 S.W.2d 350, 352 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). In relevant part, *Miskis* stated,

> An object, which is not an exact replica of the original used in the commission of a crime, may be admissible if: . . . the jury is instructed that the object is not the object used in the commission of the crime, and is to be considered by the jury solely as evidence that demonstrates or illustrates what the object used in the offense looks like.

*Id.* In support of the jury instruction requirement, *Miskis* cited to *Simmons v. State*, 622 S.W.2d 111, 114 (Tex. Crim. App. 1981). However, our review of *Simmons* fails to uncover any announcement that a court is required, *sua sponte*, to provide a limiting instruction on the use of demonstrative evidence in the jury charge. *See Onwukwe v. State*, 186 S.W.3d 81, 85 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Of course, a trial court should give a limiting instruction when requested. *Id.* But here none was requested. Because Perry did not ask the trial court to give a limiting instruction, he cannot now complain of a lack of a jury instruction about the demonstrative knife. *See* TEX. R. EVID. 105(a); *Onwukwe*, 186 S.W.3d at 85; *see also* TEX. R. APP. P. 33.1(a). We overrule this point of error.

30

*9.* *Perry's Sentences Were Not Constitutionally Excessive*

Perry argues that the trial court erred in denying his motion for new trial, which argued that his sentences constituted cruel and unusual punishment because they were disproportional to the offenses committed. *See* U.S. CONST. amend. VIII; TEX. CONST. art. 1, § 13.

The Legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd). "Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual." *Williamson v. State*, 175 S.W.3d 522, 524 (Tex. App.—Texarkana 2005, no pet.) (citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973)). It is undisputed that Perry's enhanced sentences are within the allowable range of punishment. However, "a prohibition against grossly disproportionate punishment survives under the Eighth Amendment to the United States Constitution apart from any consideration of whether the punishment assessed is within the range established by the Legislature." *Id.*; *see Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.—Texarkana 2006, no pet.) (citing U.S. CONST. amend. VIII; *Solem v. Helm*, 463 U.S. 277, 290 (1983); *see generally Harmelin v. Michigan*, 501 U.S. 957 (1991)).

The claim of disproportionate sentencing is derivative of the proscription by the Eighth Amendment of cruel and unusual punishment and "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned'" to both the offender and the offense. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd) (quoting *Atkins v. Virginia*, 536 U.S. 304, 311 (2002)). The prohibition against grossly

31

disproportionate sentences is applied "only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Harmelin*, 501 U.S. at 1001) (Kennedy, J., concurring)).

To address Perry's complaint, we first make an initial threshold comparison of the gravity of the offenses to the severity of the sentences. *Mullins*, 208 S.W.3d at 470. Then, "only if that initial comparison create[s] an inference that the sentence was grossly disproportionate to the offense should there be a consideration of . . . (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *Id.* (citing *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Dunn v. State*, 997 S.W.2d 885, 892 (Tex. App.—Waco 1999, pet. ref'd); *Lackey v. State*, 881 S.W.2d 418, 420–21 (Tex. App.—Dallas 1994, pet. ref'd)).

Perry assaulted a household family member and threatened her with a deadly weapon. Perry was convicted of third and second degree felonies, which were both enhanced by two prior felony offenses. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Pursuant to Section 12.42(d), Perry was to be punished by imprisonment for life, or for any term of not more than ninety-nine years or less than twenty-five years. *Id.* In addition to his prior misdemeanor conviction for assault family violence, the State presented evidence that Perry had previously been convicted of (1) six felony offenses,[18] including delivery of marihuana, attempted assault on a public servant, two counts of unauthorized use of a motor vehicle, possession of a controlled substance, theft of property in an amount of $1,500.00 or more but less than $20,000.00, and

---

[18]Three of the six felony offenses were state jail felonies.

32

tampering with physical evidence, and (2) seventeen misdemeanor offenses, including assault by kicking, DWI, evading detention, theft, theft of service, three counts of driving while license suspended, possession of marihuana, failure to identify, two counts of resisting arrest, four counts of criminal trespass, and criminal mischief. Perry's sentence fell in the middle of the range of imprisonment allowed. Considering the gravity of Perry's offenses and the record in this case, which included Perry's extensive criminal history, we determine that nothing demonstrates or raises an inference that the sixty-year sentences were grossly disproportionate to the offenses or that this is an exceedingly rare and extreme case. Accordingly, Perry's sentences did not constitute cruel and unusual punishment.[19]

*10. No Ineffective Assistance of Counsel Was Shown*

Perry argues that his counsel was ineffective because he (1) failed to pursue Perry's motion to suppress the knife based on the State's agreement, (2) did not request a limiting instruction with respect to the demonstrative knife, and (3) failed to hire an investigator to reveal the identity of the unidentified man who witnessed the altercation but left before officers arrived.

To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). Failure to make either one of these required

---

[19]The record also included two Gregg County District Court judgments recording convictions by juries for aggravated assault with a deadly weapon with enhanced sentences. The defendant in the first case received a sentence of fifty years' imprisonment, and the defendant in the second case received a sentence of seventy-five years' imprisonment.

33

showings defeats an ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

We begin our analysis with the rule that any allegation of ineffectiveness of counsel must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). From the record, which does not include an explanation of counsel's reasoning, Perry bears the burden of proving by a preponderance of the evidence that counsel was ineffective.[20] *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Rarely will a reviewing court be provided a record on direct appeal that allows for a comprehensive evaluation of the merits of an ineffective assistance of counsel claim. *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id.* at 813–14.

With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess the strategy of Perry's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

---

[20]Although the trial court heard Perry's motion for new trial, Perry presented no complaint or evidence relating to ineffective assistance.

34

From the record, it appears that counsel did, in fact, schedule a hearing on the motion to suppress. The hearing was cancelled after the State agreed to the motion, which was designed to suppress the actual knife and the fact that officers found the knife in Perry's backpack. Thus, Perry received the relief he requested, and it was perfectly reasonable for counsel to conclude that no hearing was required in light of the agreement.

Next, counsel would have been entitled to an instruction about the demonstrative knife had it been requested. *See* TEX. R. EVID. 105(a). But the failure of defense counsel to request a limiting instruction is not, by itself, ineffective assistance. *Agbogwe v. State*, 414 S.W.3d 820, 832 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Ali v. State*, 26 S.W.3d 82, 88 (Tex. App.— Waco 2000, no pet.). When the knife was offered, and each time the knife was shown to a witness, the State stated that the demonstrative knife was not the actual knife used. Counsel could have concluded that the instruction would have been cumulative of the State's representations. It was reasonable for counsel to believe that the jury did not have to be further instructed that the demonstrative knife was not the actual knife and that it was being used for demonstrative purposes only.[21]

Perry also argues that his counsel was ineffective because he failed to hire an investigator to identify and locate the unnamed witness. The record has no indication, however, that the identity of the unnamed witness was unknown to counsel. Perry could have easily revealed the man's name to his counsel. There is also no evidence that counsel failed to interview the unnamed person. It is possible that counsel did not ask for an investigator because the testimony

---

[21]Perry fails to argue how the failure to request a limiting instruction harmed him.

35

of the man would not be favorable to Perry. "[A] claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed absent a showing of what the interview would have revealed that reasonably could have changed the result of the case." *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

We can visualize reasonably sound possible motivations behind counsel's failure to continue with a hearing on an agreed motion to suppress, request a cumulative limiting instruction, and seek the appointment of an investigator in the absence of any suggestion that information gathered would be helpful to Perry's case. Therefore, Perry has not met the first *Strickland* prong, and his point of error complaining of ineffective assistance is overruled.

*11.    Attorney Fees Must Be Removed from the Judgment*

A claim of insufficient evidence to support court costs and court-appointed attorney fees is reviewable on direct appeal. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). Perry complains of the trial court's assessment of the $10,000.00 fines on each count and order to pay $324.00 court costs and $5,100.00 in attorney fees. The State concedes that Perry is indigent and that the record has no finding by the trial court that he had financial resources or was otherwise able to pay the appointed attorney fees. *See Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013).

We have previously held that court costs may be recovered from indigent defendants. *Allen v. State*, 426 S.W.3d 253, 258–59 (Tex. App.—Texarkana 2013, no pet.). Additionally, while the Texas Code of Criminal Procedure requires a trial court to determine whether a defendant has financial resources that enable him or her to offset in part or in whole the cost of

36

220

appointed counsel, the Legislature has not preconditioned the collection of fines on a defendant's ability to pay. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2014); *Beshirs v. State*, No. 06-12-00108-CR, 2013 WL 1750890, at \*3 (Tex. App.—Texarkana Apr. 24, 2013, no pet.) (mem. op., not designated for publication); *Johnson v. State*, No. 12-12-00263-CR, 2013 WL 2286077, at \*2 (Tex. App.—Tyler May 22, 2013, no pet. h.) (mem. op., not designated for publication).[22]

A trial court has the authority to order the reimbursement of court-appointed attorney fees only if "the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g). "'[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees'" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (quoting *Mayer*, 309 S.W.3d at 556).

Here, the assessment of attorney fees was erroneous and should be removed. *See generally Mayer*, 309 S.W.3d 552; *Shelton v. State*, No. 06-13-00049-CR, 2013 WL 4506984, at \*1 (Tex. App.—Texarkana Aug. 22, 2013, no pet.) (mem. op., not designated for publication); *Taylor v. State*, No. 02-12-00106-CR, 2013 WL 978842, at \*1 (Tex. App.—Fort Worth Mar. 14, 2013, pet. struck) (mem. op., not designated for publication). We sustain Perry's last point of error and modify the trial court's judgment by deleting the assessment of attorney fees.

---

[22]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo*, 98 S.W.3d at 794.

We modify the trial court's judgment by deleting the assessment of attorney fees and affirm the judgment, as modified.

Josh R. Morriss, III
Chief Justice

Date Submitted:     April 8, 2014
Date Decided:       August 15, 2014

Do Not Publish

38

222



# THE STATE OF TEXAS
## MANDATE

FILED
GREGG COUNTY, TEXAS

FEB 16 2015

O'CLOCK
BARBARA DUNCAN, DISTRICT CLERK
BY_____ DEPUTY

TO THE 188TH DISTRICT COURT OF GREGG COUNTY, GREETINGS:

Before the Court of Appeals for the Sixth Court of Appeals District of Texas, on the 15th day of August, A.D. 2014, the cause upon appeal to revise or reverse your Judgment was determined; and therein our said Court made its order in these words:

Michael Perry, Appellant                         No. 06-13-00051-CR

v.                                               Trial Court No. 42,139-A

The State of Texas, Appellee

As stated in the Court's opinion of this date, we find there was partial error in the judgment of the court below. Therefore, we modify the trial court's judgment to delete the assessment of attorney fees. As modified, the judgment of the trial court is affirmed.

We note that the appellant, Michael Perry, has adequately indicated his inability to pay costs of appeal. Therefore, we waive payment of costs.

WHEREFORE, WE COMMAND YOU to observe the order of our said Court in this behalf, and in all things to have it duly recognized, obeyed, and executed.

WITNESS, the Hon. Josh R. Morriss, III, Chief Justice of our said Court of Appeals, with the seal thereof annexed, at the City of Texarkana, this the 13th day of February, A.D. 2015.

DEBRA K. AUTREY, Clerk

*Debbie Autrey*

223

THE STATE OF TEXAS          §

COUNTY OF GREGG           §

I, Adalia Richmond, CLERK of the District Courts, Gregg County, Texas, do hereby certify that the above and foregoing 223 pages contain a true and correct copy of all proceedings to this Cause No. 42139-A

Styled:     STATE OF TEXAS

VS

MICHAEL DEAN PERRY

As shown by Index page 1 hereof.

GIVEN UNDER MY HAND AND THE SEAL OF SAID COURT at office in Longview, Texas, this 8th day of October, 2015.

Barbara Duncan, District Clerk

By _____, Deputy
   Adalia Richmond